SEYFARTH SHAW LLP
Aaron Belzer (SBN 238901)
abelzer@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

SEYFARTH SHAW LLP
Kristine R. Argentine (*pro hac vice* admitted)
kargentine@seyfarth.com
Paul Yovanic, Jr. (*pro hac vice* admitted)
pyovanic@seyfarth.com
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Attorneys for Defendant
LOS ANGELES REGIONAL FOOD BANK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATASSIA TIMOTHEE, TOMMY DIEP, ESPERANZA REYES, MARIAELENA BURCIAGA and STACY PENNING, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., SACRAMENTO FOOD BANK AND FAMILY SERVICES, LOS ANGELES REGIONAL FOOD BANK, CENTRAL CALIFORNIA FOOD BANK and SAN FRANCISCO FOOD BANK d/b/a SAN FRANCISCO-MARIN FOOD BANK,<br><br>Defendants. | Case No. 3:25-CV-05106-LB<br><br>**DEFENDANT LOS ANGELES REGIONAL FOOD BANK'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6) AND MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(F) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF**<br><br>Date:          February 5, 2026<br>Time:          9:30 a.m.<br>Courtroom:  B-15th Floor<br>Judge:         Hon. Laurel Beeler<br><br>Date Action Filed: June 17, 2025 |

**NOTICE OF MOTION AND MOTION**

TO THE HONORABLE COURT, PLAINTIFFS, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 5, 2026 at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom B -15th Floor of the above-entitled court located at the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, CA, Defendant Los Angeles Regional Food Bank (hereinafter "LAFB"), by and through its undersigned counsel, will and hereby does move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Class Action Complaint of Plaintiffs (Dkt. # 1) filed against it and, in the alternative, to strike certain class allegations contained therein pursuant to Federal Rule of Civil Procedure 12(f). This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in support thereof that follows; the proposed order filed concurrently herewith; the pleadings, records, and papers on file in this action; oral argument; and any other matters properly before the Court.

LAFB asks the Court to decide whether Plaintiff Diep has standing to pursue a claim on behalf of Plaintiffs and the proposed class against LAFB; whether Plaintiffs have stated any claim against LAFB upon which relief can be granted; and whether Plaintiffs' class allegations should be stricken.

DATED: October 20, 2025

Respectfully submitted,

SEYFARTH SHAW LLP

By: _/s/ Aaron Belzer_
Aaron Belzer
Attorneys for Defendant
Los Angeles Regional Food Bank

## TABLE OF CONTENTS

**Page**

PLAINTIFFS' CLASS ACTION COMPLAINT ............................................................................. 1

LEGAL STANDARDS .................................................................................................................. 2

ARGUMENT .................................................................................................................................. 3

I.    OVERARCHING BASES FOR DISMISSAL OF CLAIMS AGAINST LAFB .......................... 3

    A.    Plaintiffs Have No Reasonable Expectation of Privacy in the Information Allegedly Transferred Via the Pixel from the LAFB Website Because the Data is Not Confidential, Private, or Sensitive Information. ......................................................... 3

    B.    Plaintiffs Consented to the Use of the Pixel on the LAFB Website and Facebook's Collection of their Data Through the Pixel. ............................................................. 6

II.    THE CLAIMS AGAINST LAFB MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(1) BECAUSE PLAINTIFF DIEP HAS SUFFERED NO CONCRETE HARM ........................................................................................................................................ 8

    A.    Plaintiffs Failed to Plausibly Allege a Privacy Harm. .......................................................... 9

    B.    Plaintiffs Do Not Have Standing to Assert Privacy Violations Where They Consented to the Collection of Information. ......................................................... 9

III.    PLAINTIFFS' CLAIMS AGAINST LAFB SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 8 AND 12(B)(6) FOR FAILURE TO STATE PLAUSIBLE CLAIMS. .......... 10

    A.    Plaintiffs Failed to Satisfy Rule 8 and Plead Facts Sufficient to Show that the Claims Against LAFB Are Not Time-Barred. ................................................................. 10

    B.    Plaintiffs Failed to State a Claim under the CIPA (Count I). ........................................... 11

        1.    Plaintiffs Failed to Plead a Violation of Section 631(a) by LAFB. ...................... 11

            a.    Plaintiffs Failed to Allege that Meta Intercepted Diep's Data. ................. 11

            b.    Plaintiffs Do Not Allege the Interception of Content. ............................. 12

            c.    Plaintiff Diep Fails to Plead that Meta Read or Attempted to Read his Communications with the LAFB Website. ............................................... 14

        2.    Plaintiffs Failed to Plead a Violation of Section 632(a) by LAFB. ...................... 15

        3.    Plaintiffs Failed to Plead a Violation of Section 635 by LAFB. .......................... 15

        4.    Plaintiffs Failed to Plead a Violation of Section 638.51 by LAFB. .................... 16

    C.    Plaintiffs Failed to State Claims Against LAFB for Intrusion Upon Seclusion (Count III) and California Constitutional Right to Privacy (Count IV)............................ 17

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT;
MOTION TO STRIKE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

320935429v.3

D.      Plaintiffs Failed to State a Claim Against LAFB for Negligence (Count V). .................. 18

IV.     PLAINTIFFS' CLASS ALLEGATIONS AGAINST LAFB MUST BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(F)....................................................................................... 20

CONCLUSION ……………………………………………………………………………………….22

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT;
MOTION TO STRIKE AND MEMORANDUM OF POINTS LAND AUTHORITIES IN SUPPORT THEREOF

320935429v.3

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ahringer v. LoanDepot, Inc.*,
715 F. Supp. 3d 1274 (C.D. Cal. 2024) ...................................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................3, 13

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ........................................................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................3, 12

*Beltran v. Drs. Med. Ctr. of Modesto*,
2025 WL 1635467 (E.D. Cal. June 9, 2025) .............................................................................13

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......................................................................................10

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. April 5, 2023) ...............................................................................9

*Calip v. M.E.I.C.*,
2015 WL 5996365 (N.D. Cal. Oct. 15, 2015).............................................................................10

*Cramer v. Consol. Freightways, Inc.*,
209 F.3d 1122 (9th Cir. 2000) .......................................................................................................6

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......................................................................................12

*Garcia v. Enter Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .........................................................................................6

*In re Google Android Consumer Priv. Litig.*,
2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)............................................................................18

*In re Google Assistant Priv. Litig*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......................................................................................15

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. 2013) ..........................................................................................15

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......................................................................................16

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. March 5, 2024)..............................................................................6, 13

iii

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT;
MOTION TO STRIKE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

320935429v.3

*Hubbard v. Google LLC*,
  2024 WL 3302066 (N.D. Cal. July 1, 2024)................................................................5, 20

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022) .........................................................................5, 9

*In re iPhone Application Litigation*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012).......................................................................5, 18

*James v. Walt Disney Co.*,
  701 F. Supp. 3d 942 (N.D. Cal. 2023) ............................................................................21

*Javier v. Assurance IQ*,
  2021 WL 940319 (N.D. Cal. March 9, 2021)............................................................6, 7, 10

*Johnson v. Shasta Corp.*,
  2022 WL 789018 (N.D. Cal. Feb. 24, 2022), *report and recommendation adopted*,
  2022 WL 783969 (N.D. Cal. Mar. 14, 2022)......................................................................3

*Kariguddaiah v. Wells Fargo Bank*,
  2010 WL 2650492 (N.D. Cal. July 1, 2010)......................................................................7

*Khamooshi v. Politico LLC*,
  786 F. Supp. 3d 1174 (N.D. Cal. 2025) ..................................................................9, 16, 20

*King v. Hard Rock Cafe International (USA), Inc.*,
  2025 WL 1635419 (E.D. Cal. June 9, 2025) ....................................................................13

*Krantz v. Old Copper Co., Inc.*,
  --- F. Supp. 3d ---, 2025 WL 2326840 (C.D. Cal. Aug. 11, 2025) .....................................21

*L.B. v. LinkedIn Corp.*,
  2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)............................................................6, 7, 14

*Lakes v. Ubisoft, Inc.*,
  777 F. Supp. 3d 1047 (N.D. Cal. 2025) .............................................................................6

*Lemus v. Rite Aid Corp.*,
  613 F. Supp. 3d 1269 (C.D. Cal. 2022) ...........................................................................20

*Love v. Ladder Fin., Inc.*,
  2024 WL 2104497 (N.D. Cal. May 8, 2024).....................................................................14

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..........................................................5, 17, 19, 20

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021).............................................................................11

*Mikulsky v. Bloomingdale's, LLC*,
  713 F. Supp. 3d 833 (S.D. Cal. 2024)...............................................................................13

*Mikulsky v. Noom, Inc.*,
  682 F. Supp. 3d 855 (S.D. Cal. 2023)................................................................................4

iv

*Opperman v. Path, Inc.*,
   205 F. Supp. 3d 1064 (N.D. Cal. 2016) ................................................................................6

*Pareto v. FDIC*,
   139 F.3d 696 (9th Cir. 1998) ..............................................................................................13

*Popa v. Microsoft Corporation*,
   2025 WL 2448824 (9th Cir. 2025) .......................................................................................9

*R.C. v. Walgreen Co.*,
   733 F. Supp. 3d 876 (C.D. Cal. 2024) .......................................................................18, 19, 20

*Ramos v. Gap*,
   2025 WL 2144837 (N.D. Cal. July 29, 2025).......................................................................16

*Revitch v. New Moosejaw, LLC*,
   2019 WL 5485330 (N.D. Cal. 2019) .....................................................................................5

*Rodriguez v. Autotrader.com, Inc.*,
   762 F. Supp. 3d 921 (C.D. Cal. 2025) ..................................................................................9

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ..............................................................................................2

*Sanders v. Apple, Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................................21

*Sandoval v. Ali*,
   34 F. Supp. 3d 1031 (N.D. Cal. 2014) .................................................................................22

*Scott v. Breeland*,
   792 F.2d 925 (9th Cir. 1986) ................................................................................................2

*Smith v. Facebook, Inc.*,
   262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ............4, 6, 15

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..............................................................................................................2

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187
   (9th Cir. 2001)......................................................................................................................1

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .............................................................................................10

*Stevens v. TD Bank, N.A.*,
   2025 WL 1779164 (D.N.J. June 27, 2025)...........................................................................12

*Todd v. Sacramento County*,
   2021 WL 4263060 (E.D. Cal. Sept. 20, 2021).....................................................................22

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).........................................................................................................3, 8

v

*Vasconcellos v. Sara Lee Bakery*,
   2013 WL 4014520 (N.D. Cal. Aug. 5, 2013) ...............................................................................10

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1043 (N.D. Cal. 2018) ......................................................................................20

*Williams v. What If Holdings*,
   2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ...........................................................................11

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..........................................................................................17

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ...................................................................................5, 13

*Yunker v. Pandora Media, Inc.*,
   2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)............................................................................18

*In re Zynga Privacy Litigation*,
   750 F.3d 1098 (9th Cir. 2014) ....................................................................................................12

**California Cases**

*Aviles v. Liveramp, Inc.*,
   2025 WL 487196 (Cal. Super. Jan. 28, 2025) ............................................................................16

*Casillas v. BOP LLC*,
   2025 WL 2161288 (Cal. Super. June 18, 2025) ..........................................................................16

*Casillas v. Transitions Optical, Inc.*,
   2024 WL 4873370 (Cal. Super. Sep. 09, 2024)...........................................................................16

*Folgelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011) .................................................................................................5, 17

**California Statutes**

Cal. Civ. Proc. Code
   § 335.1.........................................................................................................................................10
   § 340............................................................................................................................................10

Cal. Penal Code
   § 631(a) ...................................................................................................................................2, 11
   § 632............................................................................................................................................15
   § 632(a) ...................................................................................................................................2, 15
   § 635.................................................................................................................................2, 15, 16
   § 638..........................................................................................................................................2, 16
   § 638.50(b) ..................................................................................................................................16
   § 638.51...................................................................................................................................16, 17
   § 638.51(a) ..................................................................................................................................16
   § 638.51(b)(5) .............................................................................................................................16

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT;
MOTION TO STRIKE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
320935429v.3

**Other Authorities**

California Constitution.................................................................................................................6, 10, 18, 21

Fed. R. Civ. P. 8.........................................................................................................................................10, 11

Fed. R. Civ. P. 12(b)(1)..................................................................................................................................2, 8

Fed. R. Civ. P. 12(b)(6)..................................................................................................................................3, 10

Fed. R. Civ. P. 20(a)(2).......................................................................................................................................22

Fed. R. Civ. P. 23(d)(1)(D) ................................................................................................................................20

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT;
MOTION TO STRIKE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
320935429v.3

## MEMORANDUM OF POINTS AND AUTHORITIES

### PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs filed their Class Action Complaint on June 17, 2025 against four unaffiliated California-based food banks (collectively the "Food Banks") and Meta Platforms, Inc. ("Meta"). (*See* Dkt. # 1, ("Compl.").) In their Complaint, Plaintiffs allege the following about LAFB, which, at this stage, must be taken as true.[1] LAFB is a non-profit organization founded in 1977 that serves low-income families and persons facing food insecurity in Los Angeles County. (Compl. ¶ 41.) In connection with its operations, LAFB operates the website *www.lafoodbank.org*, which includes resources such as maps to locate food banks and food distribution centers; links to apply to food assistance-related programs; access to LAFB's terms and conditions and policies; and information about becoming a donor. (*Id*. ¶ 42.)

The Complaint alleges that, as of the date of filing, the Food Banks' websites incorporated the Meta Tracking Pixel ("Pixel"). (*Id*. ¶¶ 2, 6, 85.) Through the Pixel, Plaintiffs contend that Meta collects information "such as visited websites and users' interactions with content, allowing Meta to build detailed profiles." (*Id.* ¶ 4.) Plaintiffs further contend generally that, "Meta intercepts each page a user visits, what buttons they click, as well as specific information they input into the website and what they searched." (*Id.* ¶ 72.) However, Plaintiffs do not allege that the Pixel was configured to do any of these things on the LAFB website specifically. Rather, with respect to LAFB, Plaintiffs contend that the Pixel tracks "when users browse the food bank locator interactive map or visit a food distribution location's listing" (i.e., browsing information) and that it transmits "sensitive information, when filling out a form to determine [] eligibility for CalFresh on the LAFB website, or when making appointments to determine program eligibility." (*Id.* ¶ 85.) Plaintiffs allege that Meta can contemporaneously take collected information, combine it with personally identifiable information (PII), and "connect the information to the specific users' Facebook or Instagram profile." (*Id.* ¶ 5.) Plaintiffs allege that when one visits the LAFB website, a pop-up appears on the bottom left of the page providing users with the option to consent to or decline cookies (including the Pixel) and that users can navigate to the LAFB privacy policy to learn more about "what LAFB does with a user's sensitive information." (*Id.* ¶ 43). Plaintiffs allege that "whether a user

---

[1] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

1

allows cookies, *declines them*, or does not interact with the pop-up at all, the Pixel starts tracking and transmitting information to Meta." (*Id.*) (emphasis in original).

Plaintiff Diep is the only Plaintiff alleged to have visited LAFB's website. He alleges that he "visited the [LAFB] website on many occasions and used the website to access the 'Find Food' map, which included entering his home address." (*Id.* ¶ 25.) He also alleges that he "made calls to the [LAFB] through its website and entered his personal information into the website in order to receive emails" from LAFB. (*Id.*) The Complaint **does not** allege when Plaintiff Diep visited the LAFB website or what selection he made with respect to the LAFB cookie banner. The Complaint also does not allege that the Pixel was on the LAFB website when Diep visited or that it was configured to fire with respect to any of the actions Diep took on the website except "brows[ing] the Food Bank locator interactive map." (*Id.* ¶ 85.) The Complaint generally alleges that "all Plaintiffs possessed and were logged into their Meta accounts, on the same browser, before accessing the Food Bank Defendants' websites." (*Id.* ¶ 79.)

Based on these barebones allegations regarding Plaintiff Diep's interactions with the LAFB website and alleged browsing of the food bank locator, Plaintiffs assert four causes of action against LAFB, including: violations of the California Invasion of Privacy Act Cal. Penal Code § 631(a) Clause Four, § 632(a), § 635, and § 638 (First Cause of Action); Invasion of Privacy – Intrusion upon Seclusion (Third Cause of Action); Invasion of Privacy Under California's Constitution (Fourth Cause of Action) and Negligence (Fifth Cause of Action). (Compl., generally.)

### LEGAL STANDARDS

A complaint may be dismissed if the plaintiff lacks standing to bring suit under Rule 12(b)(1). *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A plaintiff, as "the party seeking to involve the jurisdiction of the federal court[,] has the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). To assert standing pursuant to Article III, one must establish: (1) injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Injury in fact means "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.*

2

Under Article III, "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* (emphasis in original).

Dismissal under Federal Rule 12(b)(6) is appropriate either where the plaintiff's complaint lacks a cognizable legal theory or if it fails to plead sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Notably, "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). And "where the plaintiff's inferences would contradict the well-pleaded factual allegations, the Court cannot accept them." *Johnson v. Shasta Corp.*, 2022 WL 789018, at *3 (N.D. Cal. Feb. 24, 2022), *report and recommendation adopted*, 2022 WL 783969 (N.D. Cal. Mar. 14, 2022).

## ARGUMENT

### I. OVERARCHING BASES FOR DISMISSAL OF CLAIMS AGAINST LAFB

**A. Plaintiffs Have No Reasonable Expectation of Privacy in the Information Allegedly Transferred Via the Pixel from the LAFB Website Because the Data is Not Confidential, Private, or Sensitive Information.**

Throughout their Complaint, Plaintiffs characterize the browsing data allegedly collected by the Pixel on the LAFB website as "confidential information" and "sensitive financial information." But, in fact, the data regarding Plaintiff Diep's use of the LAFB website (the only Plaintiff that alleges to have used the LAFB website) is none of these things. Rather, the information allegedly collected[2] regarding Plaintiff Diep is the fact that he looked up publicly available information on a public website; that he browsed the Find Food map; that he called LAFB; and that he was interested in receiving email newsletters from LAFB. (Compl. ¶ 25.) None of this information is confidential or sensitive and none of this

_____

[2] For purposes of this Section, LAFB assumes that Plaintiffs have alleged that the Pixel collects the interactions that Plaintiff Diep had with the LAFB website. But, in fact, Plaintiffs fail to allege what was collected or how the Pixel collected information with respect to Diep's interactions. In fact, Plaintiffs do not even allege that the Pixel existed on the LAFB website at the time Diep visited. (*Infra* III(A)-(B).)

3

information reveals anything regarding Plaintiff Diep's financial status or nutritional needs. While Plaintiff Diep alleges that his use of the "Find Food" map on LAFB's website "communicated [his] intent to receive nutrition assistance" (compl. ¶ 29), it did no such thing because the "Find Food" map is not specific to Plaintiff Diep but, rather, is generally available information that anyone anywhere with an internet connection can access. That a person conducted a search related to local food banks in no way indicates that the person requires "nutrition assistance," that the person intends to visit a food bank himself as a customer, or anything else specific about that person. Further, the Complaint does not actually allege that the Pixel captured Plaintiff Diep's request for information; just that he browsed the "Find Food" page.

Similar arguments that searching publicly available information somehow indicates something personal about the user have been firmly rejected by the Ninth Circuit. In *Smith v. Facebook, Inc.*, for instance, the Northern District of California dismissed a complaint filed by Facebook users alleging privacy law and Wiretap Act violations arising out of the use of Facebook social plugins on certain healthcare organizations' websites that resulted in the transmission of users' browsing activity to Facebook. 262 F. Supp. 3d 943, 948 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). The district court held, and the Ninth Circuit affirmed, that the web browsing information collected—including that plaintiffs had visited web pages about treatment options, specific doctors, and specific health conditions—was not sensitive medical information because "[t]he data show[ed] only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history." *Smith*, 745 F. App'x at 9. Similarly here, the fact that Plaintiff Diep viewed publicly available information about a food bank location cannot, in and of itself, reveal anything about him personally and is not confidential or private.

Further, while Diep alleges that he entered his email address and home address while using the website—even if Plaintiff alleged that such specific information was captured by the Pixel (which he did not)—courts have repeatedly found that this type of basic contact information is not sensitive information that, if revealed, would implicate a protected privacy interest. *See, e.g., Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (finding that disclosure of "basic contact information, such as . . . email address or phone number . . . does not bear a close relationship to harms traditionally recognized as

4

providing a basis for lawsuits in American courts"); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) ("the Court is hard pressed to conclude that basic contact information, including one's email address, phone number, or Facebook or Zynga username, is private information."); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 989 (2011) (similar).

Once Plaintiff Diep's conclusory allegations regarding "confidential information" or information regarding his "financial status" are dispensed with, Plaintiffs' allegations amount to nothing more than an inference that LAFB shared with Meta that fact that Diep browsed LAFB's website. But nothing about one's browsing of publicly available information on a commercial website is private or sensitive in a way that would implicate any privacy interest protected under the law. *See Hubbard v. Google LLC*, 2024 WL 3302066, *7 (N.D. Cal. July 1, 2024) (noting that "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much"). Indeed, in California, there is a "presumption that Internet communications do not reasonably give rise to" an expectation of confidentiality. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, *3 (N.D. Cal. 2019) (collecting cases). Many courts have held that no invasion of privacy results from tracking of one's internet browsing because users have no expectation of privacy in such information and/or because tracking online browsing activity is a common online practice and, as such, is not "highly offensive." *See, e.g., Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021), (no protected privacy interest in browsing data from a retailer's website, including "keystrokes and clicks; pages viewed; . . . [and] IP address and physical location . . ."); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1016 (N.D. Cal. 2012) (no reasonable expectation of privacy in plaintiffs' "personally identifiable browsing histories," LinkedIn ID, and the URL of their LinkedIn profile page); *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1048-50 (N.D. Cal. 2012) (no reasonable expectation of privacy in basic device and contact information shared with third party application). All of Plaintiffs' privacy claims against LAFB—and Plaintiff Diep's standing to pursue a claim in this Court—are dependent on whether confidential or private information was shared such that there was a reasonable expectation of privacy. Because there can be no such expectation here, Plaintiffs' claims must be dismissed, as discussed herein.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT;
MOTION TO STRIKE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
320935429v.3

**B.        Plaintiffs Consented to the Use of the Pixel on the LAFB Website and Facebook's Collection of their Data Through the Pixel.**

Additionally, all of Plaintiffs' privacy claims against LAFB (for violation of CIPA, invasion of privacy, violation of California Constitution) are premised on a lack of consent by Plaintiffs to the use of the technology in question. That is because consent generally defeats privacy claims since "a party that consents to having information collected has no reasonable expectation of privacy." *Javier,* 2021 WL 940319 at *2.[3] Therefore, these claims against LAFB must be dismissed if Plaintiff Diep consented to the use of the Pixel. Here, Plaintiffs' allegations establish that LAFB and Meta clearly put Plaintiffs on notice of the use of this technology through their disclosures and privacy policies such that there is a reasonable inference that Plaintiff Diep admittedly knew about and consented to the use of tracking technologies, including the Pixel, at the time he used the LAFB website.

Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim. *See Garcia v. Enter Holdings, Inc.,* 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015). In order to find that continued use of a website in the face of the disclosure of online data collection practices constitutes consent, "the disclosures must explicitly notify users of the practice at issue and must have only one plausible interpretation." *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, *4 (N.D. Cal. Oct. 10, 2025). The relevant question, therefore, is: "Would a reasonable user who viewed the defendant's disclosures have understood that it was collecting the information at issue?" *Id.* (cleaned up). Courts consistently hold that disclosures on a website can establish consent to online data collection practices so as to defeat wiretapping and other related privacy claims. *See Smith,* 745 F. App'x at 8 (consent defeated wiretapping claims where the relevant "[t]erms and [p]olicies contain[ed] numerous disclosures related to information collection on third-party websites"); *Hammerling v. Google, LLC*, 2024 WL 937247 (9th Cir. March 5, 2024) (Google's disclosures precluded plaintiffs' privacy claims); *Garcia,* 78 F. Supp. 3d at 1135–37 (dismissing CIPA claim where app provider's terms and privacy policy established consent to the alleged disclosures); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1059–60 (N.D. Cal. 2025) (dismissing

---

[3] *See also Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (user consent is a defense under CIPA); *Cramer v. Consol. Freightways, Inc.,* 209 F.3d 1122, 1130, n.9 (9th Cir. 2000) (explaining that a claim under Cal. Penal Code "Section 635 requires proof that the plaintiff was 'injured by the eavesdropping equipment, which in turn also depends on consent'").

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT;
MOTION TO STRIKE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
320935429v.3

plaintiff's VPPA claim where the defendant's cookie banner, account creation, and checkout consent flow established consent).

First, despite Plaintiffs' conclusory and general allegations here that they did not consent to the use of the Pixel on the Food Banks' websites (compl. ¶ 85), other allegations directly contradict such an assertion and establish that Plaintiff Diep was on notice of and consented to the use of tracking technologies on the LAFB website. *Kariguddaiah v. Wells Fargo Bank,* 2010 WL 2650492, at *4 (N.D. Cal. July 1, 2010) (allegations that are contradicted by the documents incorporated into the pleadings need not be accepted as true). Here, Plaintiffs plead that LAFB's website displayed a pop-up upon accessing the website (compl.¶ 43) which clearly disclosed the use of tracking pixels, such as the Meta Pixel, and that such technology would be used to "serve personalized ads or content":

**We value your privacy**

We use cookies to enhance your browsing experience, serve personalized ads or content, and analyze our traffic. By clicking "Accept All", you consent to our use of cookies.

| Customize | Reject All | Accept All |

Accordingly, Plaintiffs admit that a user, such Diep, is on notice at the time he accesses the LAFB website that tracking technologies are used to "serve personalized ads or content" and that by continuing to use the website, he consented to the use of such technology. Because LAFB unambiguously disclosed that it is collecting browsing data and other information for marketing to users—the precise conduct at issue here—and because Diep does not allege that he rejected the use of cookies on the website, Plaintiffs' privacy claims are defeated. *LinkedIn,* 2025 WL 2899514, at *4 (dismissing claims against website operator where cookie banner provided notice of the technology in question); *Javier,* 2021 WL 940319, at *2 (dismissing the plaintiff's CIPA claim on the basis of consent through the disclosure).

Second, Plaintiffs specifically allege that all Plaintiffs, including Diep, were Facebook and/or Instagram account holders at the time they accessed the Food Banks' websites. (Compl. ¶ 79.) By virtue of being Facebook and/or Instagram account holders, Plaintiffs necessarily consented to Meta's Privacy Policy and Cookie Policy. Defendant Meta asserts this argument in its Motion to Dismiss as a basis to

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT;
MOTION TO STRIKE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
320935429v.3

dismiss the claims against Meta, but Plaintiffs' consent to Facebook's disclosed Policies and Practices related to the collection of data on third party websites is equally applicable to Plaintiffs' claims against the Food Bank Defendants, including LAFB.[4] Thus, Plaintiffs' consent to the use of the Pixel through LAFB's and Facebook's disclosures are fatal to Plaintiffs' claims against LAFB.

## II. THE CLAIMS AGAINST LAFB MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(1) BECAUSE PLAINTIFF DIEP HAS SUFFERED NO CONCRETE HARM.

Plaintiffs' claims against LAFB arise from its alleged use of code supplied by co-Defendant Meta on its website to "intercept" their alleged "communications" with the website. However, only Plaintiff Diep is alleged to have visited LAFB's website, and he has failed to allege that he suffered any concrete injury as a result of the use of the Pixel and, therefore, lacks standing to pursue his claims in this Court.

Plaintiff Diep is alleged only to have "used the website to access the 'Find Food' map, which included entering his home address"; to have "ma[de] calls to the [LAFB] through its website"; and to have "entered his personal information into the website in order to receive emails from the Defendant." (Compl. ¶ 25.) Plaintiffs also generally allege that LAFB "allowed Meta to intercept this data, revealing their sensitive financial conditions." (*Id.*, ¶ 30.) Therefore (and despite that they did not allege the Pixel was on the LAFB website at the time Diep visited), Plaintiffs ask this Court to infer that, through LAFB's use of the Pixel, Meta learned that Diep: 1) visited the LAFB's website and the "Find Food" map; 2) entered an address; 3) made calls to LAFB; and 4) entered his unspecified "personal information." However, even if these allegations are taken as true, such does not give rise to a concrete privacy injury because Plaintiff Diep does not have any privacy interest in this information and because he otherwise consented to the collection and sharing of his information in this way.

"To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm." *TransUnion LLC*, 594 U.S. at 427. Certain intangible harms, such as "disclosure of private information," can constitute concrete injuries; however, the U.S. Supreme Court "has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement

---

[4] LAFB incorporates by reference Meta's argument that Plaintiffs consented to the collection of their browsing data and identifiers through the Pixel on the various Food Banks' websites by virtue of being Facebook account holders.

8

whenever a statute grants a person a statutory right." *Id*. at 426. Therefore, to establish that Plaintiff suffered an injury in fact, it is not enough to allege the bare elements of a statutory violation; Plaintiff must allege an actual concrete harm "that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 2025 WL 2448824, *4 (9th Cir. 2025). With respect to an alleged privacy injury, that is the type of harm that would historically have given rise to a common law claim for either  intrusion upon seclusion or public disclosure of private facts. *Id*. "Whether the right to privacy is implicated depends on the sort of information revealed. . . . [T]he information must be sufficiently personal or sensitive that its disclosure is harmful." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926-927 (C.D. Cal. 2025). Plaintiffs here cannot plausibly allege that LAFB disclosed any such private or sensitive information about Diep.

### A.    Plaintiffs Failed to Plausibly Allege a Privacy Harm.

As discussed above in Section I(A), none of the information allegedly transmitted to Meta through use of the Pixel on the LAFB website constitutes private or confidential information. And because Plaintiff Diep failed to allege the disclosure of any information by LAFB that is traditionally protected under the common law, he has not suffered an injury in fact and lacks standing to pursue his claims in this Court. *See Popa*, 2025 WL 2448824, *5 (dismissing the plaintiff's claim for lack of standing where the plaintiff did not explain "how the tracking of her interactions" with a publicly available website "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law"); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (dismissing plaintiffs' claim for lack of standing because they had no protected privacy interest in their IP addresses); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (dismissing claim for lack of standing because disclosure of "basic contact information, including one's email address, phone number, or . . . username" did not constitute a concrete injury); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D. Cal. April 5, 2023) (similar).

### B.    Plaintiffs Do Not Have Standing to Assert Privacy Violations Where They Consented to the Collection of Information.

Likewise, as described in Section I(B), Plaintiffs (Diep in particular) consented to the use of the

9

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT;
MOTION TO STRIKE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

320935429v.3

Pixel on the LAFB website for advertising purposes, both through LAFB's and Meta's disclosures and policies. Where a party expressly consents to the conduct complained of, he cannot have an expectation of privacy and so cannot suffer a privacy injury. *Javier v. Assurance IQ,* 2021 WL 940319, at \*2 (N.D. Cal. March 9, 2021) (finding consent generally defeats privacy claims since "a party that consents to having information collected has no reasonable expectation of privacy").

## III. PLAINTIFFS' CLAIMS AGAINST LAFB SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 8 AND 12(B)(6) FOR FAILURE TO STATE PLAUSIBLE CLAIMS.

### A. Plaintiffs Failed to Satisfy Rule 8 and Plead Facts Sufficient to Show that the Claims Against LAFB Are Not Time-Barred.

Plaintiffs' claims against LAFB must also be dismissed because Plaintiffs do not allege when Plaintiff Diep used the LAFB website. Rule 8 requires that a complaint "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Fed. R. Civ. P. 8. This includes pleading when the alleged misconduct took place in order to establish that a plaintiff's claims are not time barred. *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Calip v. M.E.I.C.*, 2015 WL 5996365, at \*6 (N.D. Cal. Oct. 15, 2015). Plaintiffs have not done that here.

Again, because only Plaintiff Diep visited LAFB's website, any claims against LAFB are dependent on Diep's allegations regarding his interactions with the LAFB website. In the Complaint, Plaintiff Diep alleges only that he "has visited the [LAFB] website on many occasions," but he does not allege when those visits occurred. (Compl. ¶ 25.) Thus, there is no basis upon which to determine whether the claims against LAFB are time-barred. Each of Plaintiffs' claims against LAFB is subject to either a one- or two-year statute of limitations. *See* Cal. Civ. Proc. Code § 340 (CIPA claim is one year); Cal. Civ. Proc. Code § 335.1 (invasion of privacy claims under the California Constitution or common law and general negligence is two years). Therefore, Diep must allege that he visited the website within the last year or two to establish that his claims are timely. Courts often dismiss claims under Rule 8 when plaintiffs fail to allege when the actionable misconduct occurred. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020) (dismissing the plaintiff's CIPA, CCFA and CCCL claims based on his failure to plead when the misconduct occurred); *Vasconcellos v. Sara Lee Bakery*, 2013 WL 4014520, at \*2 (N.D.

Cal. Aug. 5, 2013) (claims were "insufficiently pled" based on failure to allege when the misconduct occurred). Accordingly, all four claims against LAFB should be dismissed for failure to satisfy Rule 8.

### B.    Plaintiffs Failed to State a Claim under the CIPA (Count I).

Plaintiffs' CIPA claims against LAFB are also woefully inadequate in several respects that provide a basis to dismiss some or all of the First Cause of Action against LAFB.

### 1.    Plaintiffs Failed to Plead a Violation of Section 631(a) by LAFB.

Plaintiffs failed to state a CIPA 631(a) claim against LAFB because (1) Plaintiffs fail to allege that the Pixel was utilized on the LAFB website at the time Diep visited the website or that Diep's data was specifically transferred to Meta; (2) even if Plaintiff had properly alleged that Diep's data was transferred via the Pixel, the data at issue does not constitute content; and (3) Plaintiffs failed to allege that Meta read or attempted to read Diep's data.

Under CIPA Section 631(a), there are "three distinct and mutually independent patterns of [unlawful] conduct: [1] intentional wiretapping [of any telegraph or telephone], [2] wilfully (sic) attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Williams v. What If Holdings,* 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (internal citation omitted); *see also* Cal. Penal Code § 631(a). Section 631(a) further recognizes a fourth basis for liability for anyone "who aids, agrees with, employs, or conspires with any person . . . to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Mastel v. Miniclip SA,* 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting Cal. Penal Code § 631(a)).

### a.    Plaintiffs Failed to Allege that Meta Intercepted Diep's Data.

Plaintiffs' specific allegations as to Diep and the LAFB website are scarce. Plaintiffs allege that Diep visited the LAFB website "on many occasions" but do not allege that the Pixel was on the LAFB website at the time of any of those visits. (Compl. ¶ 25.) Plaintiffs, elsewhere in the Complaint, allege that "LAFB *uses* the Pixel on its website, which tracks and intercepts when users browse the food bank locator interactive map or visit a food distribution location's listing, . . . and when filling out a form." (*Id*., ¶ 85)

11

(emphasis added). But Plaintiffs do not allege during what time LAFB used the Pixel or that Diep engaged in the majority of the activities that the Pixel allegedly tracked.

Plaintiffs further generally allege that "the Food Bank Defendants allowed Meta to intercept this data, revealing their sensitive financial conditions" but do not allege what "this data" specifically is with respect to Diep or how the Meta pixel was configured on the LAFB website to collect particular data from users such that it revealed financial information. (*Id.*, ¶ 30.) Regardless, any connection between these general allegations and Diep's interactions with the LAFB website are simply too conclusory and tenuous to plausibly state a CIPA claim against LAFB. *Bell Atlantic,* 550 U.S. at 555; *Stevens v. TD Bank, N.A.*, 2025 WL 1779164, at *4 (D.N.J. June 27, 2025) (dismissing complaint where the plaintiff "fail[ed to] connect the Pixel's functionality in the abstract to him individually"); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) (finding plaintiffs "fail[ed] to use precise language when describing the type of information that is allegedly transmitted" and where they alleged how websites "could configure and use the products" instead of alleging how the websites "actually" used the tracking technology in question).

### b.    Plaintiffs Do Not Allege the Interception of Content.

Second, Plaintiffs' vague allegations about Diep's interactions with the LAFB website are insufficient to establish that Meta intercepted "content" as is required to state a CIPA claim. Under the CIPA, the "content" of a communication means "a person's intended message to another" as distinguished from "record information," such as name, address, or "subscriber number or identity." *In re Zynga Privacy Litigatio*n, 750 F.3d 1098, 1106 (9th Cir. 2014). In the context of the use of the Pixel, the transmission to Meta of the webpage address one visited is "record information," not "content." *Id.* at 1107. And, even if the fact that a person visited a webpage might reveal certain information about that person, a webpage URL is still not content. *Id.* at 1108. Rather, the Ninth Circuit has held that "[u]nder some circumstances, a user's request to a search engine for specific information could constitute a communication" such as where a URL contains that search term and the URL is transmitted to a third party *Id*. at 1108-1109.

Here, Plaintiff Diep alleges only that he "accessed the Find Food map, which included entering his home address," "made calls to the Los Angeles Regional Food Bank through its website," and "entered his personal information into the website in order to receive email communication." (Compl. ¶ 25.) Diep

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT;
MOTION TO STRIKE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
320935429v.3

does not, however, allege what, if any, of this information was captured by the Pixel: while he alleges that he entered his address and other information on the website, he does not allege that Meta, for instance, intercepted the content of the information he typed in (as opposed to, for instance, just a pageview or URL of the "Find Food" page). *Ashcroft*, 556 U.S. at 678 (allegations must be factually plausible, not speculative or inferential, to survive dismissal); *Pareto v. FDIC,* 139 F.3d 696, 699 (9th Cir. 1998).

Further, the Complaint generically pleads that the Pixel collects page views, button clicks, and information "input into the website" (compl. ¶ 72) and that, on the LAFB website specifically, it tracks when a user "browses the food bank locator interactive map" or "visit[s] a food distribution location's listing" (Compl. ¶ 85). But this too, is merely record information and not content. *Hammerling*, 615 F. Supp. 3d at 1092–93 ("URLs are record information when they only reveal a general webpage address and basic identification information, but when they reproduce a person's personal search engine queries, they are contents."); *Yoon,* 549 F. Supp. 3d at 1082 (finding that "keystrokes, mouse clicks, pages viewed" and computer and device information were not "contents" of a communication under the CIPA).[5]

Finally, the Complaint contains generic allegations that Meta "intercepts transmissions a user makes, including their sensitive information, when filling out a form to determine their eligibility for CalFresh on the LAFB website, or when making appointments to determine program eligibility." (Compl. ¶ 85.) But there are no allegations that Plaintiff Diep himself (or any other Plaintiff) engaged in these activities on the LAFB website. Further, Plaintiffs do not allege what specific information would be collected by the Pixel from these types of interactions or how the Pixel could be configured to capture such "sensitive information." *See King v. Hard Rock Cafe International (USA), Inc.*, 2025 WL 1635419, *4 (E.D. Cal. June 9, 2025) (dismissing the plaintiff's CIPA claim because "Plaintiff's FAC is devoid of any allegation describing her search queries" that the Meta pixel allegedly intercepted); *Beltran v. Drs. Med. Ctr. of Modesto*, 2025 WL 1635467, *11 (E.D. Cal. June 9, 2025) (Plaintiffs had not sufficiently alleged the interception of "content" where "Plaintiffs' complaint d[id] not specify or describe the searches Plaintiffs conducted on the Website."). Plaintiffs do not allege the interception of "content" and so cannot state a CIPA claim against LAFB.

---

[5] *See also Mikulsky v. Bloomingdale's, LLC,* 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("button clicks, mouse movements, scrolling, . . . page navigation," etc. were not "content" under the CIPA).

13

*c.*        *Plaintiff Diep Fails to Plead that Meta Read or Attempted to Read his Communications with the LAFB Website.*

Plaintiffs' CIPA 631(a) claim against LAFB fails for the additional reason that Plaintiffs failed to allege Meta "read or attempted to read" any alleged "contents" of the alleged "communications," which is an element of their claim under CIPA 631(a). As an initial matter, Plaintiffs' allegation that "Meta, willfully and without consent of Plaintiffs and other Class Members, read or attempted to read or lean the contents or meaning . . . of communications with the Food Bank Defendants' websites (Compl. ¶ 136) is merely a conclusory recitation of an element of the claim and, thus, is not entitled to a presumption of truth. *LinkedIn,* 2025 WL 2899514, at *16.

Additionally, while Plaintiffs generally allege that Meta used the data collected to help build user profiles so that Meta's customers can target users with advertisements (compl. ¶¶ 70, 136), this does not establish that Meta "read or attempted to read" any information it allegedly collected. Nowhere do Plaintiffs allege that Plaintiff Diep was served with any targeted advertisements *from Meta* following his visits to the LAFB website *relating to content he allegedly viewed on that website*. In a recent decision involving similar allegations about tracking pixels, the court in *L.B. v. LinkedIn Corp.* held that the plaintiffs failed to sufficiently allege that LinkedIn read or attempted to read the alleged contents of any communications between the plaintiffs and the websites where its pixel was used. 2025 WL 2782588, at *16. The plaintiffs there, like Plaintiffs here, alleged that the defendant "organized their communications data into metrics to be used for advertising," but the court held that it was not reasonable to infer from that allegation that the defendant would "read or attempt to read" the communication because the plaintiffs had not presented a "coherent story" regarding how LinkedIn might have read the contents. *Id*. The same reasoning applies here. While, "[e]xacting detail of [the defendant]'s data processing is not necessary . . . Plaintiffs must plead additional facts to support the inference that [the defendant] specifically read, attempted to read, or learned the contents of Plaintiffs' communications when using such information to fuel their advertising analytics." *Id*.; *see also Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024) (dismissing the plaintiffs' CIPA claim because they alleged "no coherent story of how or why [the defendant] would learn such granular information about users of one of its customers' sites"). Plaintiffs' CIPA claim fails as a matter of law and Count I against LAFB must be dismissed against LAFB.

14

**2.      Plaintiffs Failed to Plead a Violation of Section 632(a) by LAFB.**

Plaintiffs further assert that Defendants violated Section 632(a) of the CIPA by recording Plaintiffs' confidential communications with the LAFB website without their consent. (Compl. ¶¶ 145-150.) "Section 632 prohibits unauthorized electronic eavesdropping on confidential conversations." *In re Google Inc.*, 2013 WL 5423918, *15 (N.D. Cal. 2013), *citing Flanagan v. Flanagan,* 27 Cal. 4th 766, 769 (2002). A conversation is "confidential" under Section 632 "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *In re Google Assistant Priv. Litig*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (internal citations omitted).

For the reasons discussed in detail above, nothing about Plaintiff Diep's use of the LAFB website was confidential or revealed confidential information. The type of information allegedly captured by the Pixel on the LAFB website—browsing information, button clicks, and general contact information—have been repeatedly rejected by Courts as information that is confidential or that is otherwise accompanied by a reasonable expectation of privacy. (*Supra* Section I(A).) Plaintiff Diep also consented to the use of the tracking technologies at issue on the LAFB website and so can have no expectation of privacy. (*See supra* Section I(B).) *See Smith*, 262 F. Supp. 3d at 955. Thus, Plaintiffs' CIPA Section 632(a) claim against LAFB is defeated by Plaintiffs' failure to plausibly allege that the Pixel captured confidential information.

**3.      Plaintiffs Failed to Plead a Violation of Section 635 by LAFB.**

Plaintiffs' claim that LAFB violated CIPA Section 635 likewise should be dismissed. Section 635 provides a cause of action in favor of one who suffers an injury caused by a person who "manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another . . . ." Cal. Penal Code § 635. Plaintiffs' conclusory allegations state that "[t]he Pixel is a device primarily or exclusively designed to eavesdrop upon others" and that Meta "furnishes" the Pixel to the Food Bank Defendants" and therefore that "***Meta*** is liable to Plaintiffs and other Class Members . . . for each time ***Meta*** violated this section of CIPA." (Compl. ¶¶ 151-155) (emphasis added). Thus, despite that the CIPA claim (Count I) is asserted against all Defendants, there is no allegation with respect to Section 635 that any of the Food Bank Defendants engaged in violative conduct.

15

Moreover, because Plaintiffs were allegedly harmed by the *use* of the alleged eavesdropping device in question, rather than its mere possession in violation of Section 635—and because Plaintiffs have otherwise failed to sufficiently plead that LAFB's use of the Pixel violates the CIPA for the reasons discussed above—Plaintiffs' Section 635 claim against LAFB is derivative of Plaintiffs other CIPA claims and must fail with those claims. *Ramos v. Gap*, 2025 WL 2144837, *8 (N.D. Cal. July 29, 2025); *Graham v. Noom*, 533 F. Supp. 3d 823, 835 (N.D. Cal. 2021).

### 4. Plaintiffs Failed to Plead a Violation of Section 638.51 by LAFB.

Finally, also as part of Count I, Plaintiffs assert a violation of CIPA Section 638.51 against all Defendants including LAFB.[6] This claim must be dismissed because Plaintiffs have failed to adequately allege that LAFB's use of the Pixel violates this CIPA Section and because Plaintiff Diep consented to the use of the Pixel. CIPA Section 638.51 prohibits the installation or use of "a pen register or a trap and trace device," Cal. Penal Code § 638.51(a), each of which is defined as a "device or process" that collects "dialing, routing, addressing, or signaling information." *Id.* § 638.50(b). Plaintiffs here allege that the Pixel is a qualifying device or process because it "gathers data including addressing information (such as IP addresses, PII and sensitive financial information)." (Compl. ¶159.) Because "PII and sensitive financial information" are not addressing information, Plaintiffs' Section 638.51 claim can be based only on their allegations related to IP address. But California state courts have found that the use of tracking pixels that capture IP address, alone, is not sufficient to give rise to a Section 638.51 claim. *See Aviles v. Liveramp, Inc.,* 2025 WL 487196, at *3 (Cal. Super. Jan. 28, 2025) (dismissing plaintiffs CIPA Section 638 claim because "Plaintiff has not alleged anything above and beyond how the internet normally works"); *Casillas v. BOP LLC*, 2025 WL 2161288, at *2 (Cal. Super. June 18, 2025) (similar); *Casillas v. Transitions Optical, Inc.,* 2024 WL 4873370, at *7 (Cal. Super. Sep. 09, 2024) (similar). *See also Khamooshi*, 786 F. Supp. 3d 1174 (no standing for claim based on collection of IP addresses).

Further, even if the Pixel is considered a pen register or trap and trace device, Section 638.51 forbids the use of such a device only if it is installed *without the user's consent*. Cal. Penal Code §

---

[6] Again, it is entirely unclear from the pleadings whether this particular CIPA claim is directed toward LAFB because the Plaintiffs specifically plead in Para. 161 that "***Meta*** is liable to Plaintiffs and Class Members. . . for each time ***Meta*** violated this section of CIPA." (Compl. ¶ 161) (emphasis added).

16

638.51(b)(5). Because Plaintiff Diep consented to the use of the Pixel and other advertising cookies, as discussed above, he has no claim. (*Supra* Section I(B).) Accordingly, to the extent this Court finds that a Section 638.51 claim has been plead against LAFB, it should be dismissed.

### C. Plaintiffs Failed to State Claims Against LAFB for Intrusion Upon Seclusion (Count III) and California Constitutional Right to Privacy (Count IV).

Plaintiffs' claims against LAFB for Intrusion Upon Seclusion (Third Cause of Action) and Violation of the California Constitutional (Fourth Cause of Action) are also fatally flawed.

"Under a claim for common law 'invasion of privacy' tort, Plaintiffs must allege: (1) intrusion into a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person." *Low*, 900 F. Supp. 2d at 1025 (citations omitted). Similarly, "California Constitution's guaranteed right to privacy [requires] '(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Folgelstrom*, 195 Cal. App. 4th at 990 (citations omitted). Whether one has a reasonable expectation of privacy under a given set of circumstances "must take into account any 'accepted community norms,' advance notice to [Plaintiff] . . ., and whether [Plaintiff] had the opportunity to consent to or reject the very thing that constitutes the invasion." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037 (N.D. Cal. 2014). "If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Id.* at 1039.

In their Complaint, Plaintiffs make conclusory allegations that they "have reasonable expectations of privacy in using the Food Bank Defendants' websites"—particularly in their "PII and sensitive financial and medical information"—and that the "disclosure" of this information to Meta "constitutes an intentional intrusion upon Plaintiffs' and Class Members' solitude or seclusion." (Compl, ¶¶ 171-172; 182-183.) But, again, the type of information at issue—namely Diep's browsing data indicating only what publicly available information he searched on the website—is not private, sensitive, or confidential. (*See supra* Section I(A).) And Diep has not alleged that the LAFB website collected any specific type of information, including medical information, from him that would otherwise be sensitive.[7]

---

[7] The allegation relating to alleged "medical information" seems to be directed at co-defendant San Francisco Food Bank. (Compl. ¶ 88.)

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT;
MOTION TO STRIKE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
320935429v.3

Further, even if Plaintiffs had pled with respect to Diep that Meta received Diep's home address, phone number, or other unspecified personal information (which they do not) (compl. ¶ 25), this information does not give rise to a protectable privacy interest (*supra* Section I(A)) and the alleged disclosure of such information to Meta under the circumstances does not constitute an egregious breach of social norms because it is routine commercial activity. *See, e.g., Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at \*15 (N.D. Cal. Mar. 26, 2013); *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at \*11 (N.D. Cal. Mar. 26, 2013); *In re iPhone*, 844 F. Supp. 2d at 1063. Because Plaintiffs allege nothing other than the routine collection of browsing data and basic digital and contact information in which Plaintiffs can have no real expectation of privacy—and because Plaintiffs consented to this collection and dissemination of information to Facebook as discussed above (*supra* Section I(B))—Plaintiffs cannot state a claim for invasion of privacy or violation of the California Constitution and Plaintiffs' Third and Fourth Causes of Action against LAFB must be dismissed.

**D.    Plaintiffs Failed to State a Claim Against LAFB for Negligence (Count V).**

Finally, Plaintiffs failed to state a claim for negligence against LAFB because Plaintiffs failed to allege the source of any claimed duty on the part of LAFB not to disclose Diep's browsing activity on a publicly-available website and because Plaintiffs failed to allege that Diep suffered any damages as a result of the alleged disclosure. Under California law, "the elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendants' conduct and resulting injuries." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 895 (C.D. Cal. 2024) (internal citations omitted).

First, Plaintiffs has failed to allege the existence of any duty on the part of LAFB not to disclose the routine browsing data of visitors to its website. Plaintiffs alleges, generally, that LAFB and the other "Food Bank Defendants" "owed to Plaintiffs and other Class Members, who trusted and believed that their data and PII would not be disclosed without their consent, a duty of care" and that, "[i]n violation of that duty, the Food Bank Defendants negligently, carelessly, recklessly or unlawfully transmitted to and permitted Meta to access Plaintiffs' and other Class Members' PII and sensitive financial and, in the case

18

of SFMFB, medical information." (Compl. ¶¶ 190-191.) Therefore, Plaintiffs appear to allege that LAFB owed Plaintiff Diep a "duty of care" not to "disclose" "[his] data and PII" without their consent. (*Id*.) While Plaintiffs suggest that this claimed duty encompasses a duty not to disclose "sensitive financial" information or "medical information" (which LAFB did not disclose, as described above), it appears also to encompass an alleged duty not to disclose any "PII" or "data" generally. (*Id*.)

But Plaintiffs cite no alleged source of such a far-reaching duty of a website operator not to disclose any "data" regarding its website users and no such duty, in fact, exists. *See Walgreen Co.*, 733 F. Supp. 3d at 897 (declining to recognize a "general duty on [the] part of entities which collect online users' information (medical or otherwise) with respect to how such information is sold or otherwise intentionally shared with third parties."). Because Plaintiffs have cited no source of any such claimed duty, they have failed to sufficiently plead that such a claimed duty exists.

Further, Plaintiffs fail to sufficiently plead damages as an element of their negligence claim. "Under California law, negligence claims must result in actual damages from the complained-of conduct." *Id*. (internal citations omitted). But here, Plaintiffs have not alleged that Plaintiff Diep suffered any actual damages as a result of LAFB's alleged conduct. In their Complaint, Plaintiffs allege, simply, that as a result of LAFB's claimed breach of duty, "Plaintiffs and other Class Members have sustained foreseeable harm and damages in a sum to be determined at trial." (Compl. ¶ 192.) This is wholly insufficient to plausibly establish that Plaintiff Diep suffered any actual damages. *See Low*, 900 F. Supp. 2d at 1032 (dismissing plaintiffs' negligence claim where Plaintiffs alleged only that "LinkedIn's negligent actions directly and proximately caused Plaintiffs and Class members harm").

Even if one were to scour the remainder of Plaintiffs' Complaint for any allegations that might support a claim for actual (as opposed to statutory) damages, the only conceivable harm that Plaintiffs allege is related to the claimed value of their browsing data. (*Id*., ¶¶ 102-108.) Plaintiffs allege vaguely that "there is a booming and growing economic market for consumers' personal data"; that "consumers can monetize their own PII" through third party platforms; and that "the cost of personal data for those with very low incomes—like Plaintiffs and other Class Members who seek food assistance—may be uniquely valuable." (*Id*.) But aside from alleging generally that Plaintiffs' data has value, Plaintiffs failed

19

to allege how LAFB caused any harm to them by, for instance, somehow diminishing the value of such data. *See, e.g., Hubbard*, 2024 WL 3302066 (alleging that a "market for such information exists" does give rise to an inference "that a consumer . . . could realistically participate in that market").

Courts do not recognize a general invasion of privacy as an economic harm, nor do they recognize access to and tracking of one's personal information as an economic harm unless the plaintiff can show that the value of the personal information was actually somehow diminished as a result of the complained-of conduct. *See, e.g.*, *Walgreen Co.*, 733 F. Supp. 3d at 897-898 (dismissing negligence claim when plaintiffs could not specifically plead either emotional distress damages or that their data lost economic value when it was allegedly disclosed to a third party without their consent); *Khamooshi*, 786 F. Supp. 3d at 1182-1183 (Plaintiffs' allegation that their "user data carries financial value" was insufficient to allege an economic injury for purposes of Article III standing).[8] Here, Plaintiffs failed to allege that LAFB owed any duty not to disclose Diep's browsing data and failed to allege that Diep suffered any actual damages and, therefore, their claim for negligence as to LAFB must be dismissed.

## IV. PLAINTIFFS' CLASS ALLEGATIONS AGAINST LAFB MUST BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(F).

Federal Rule of Civil Procedure 12(f) permits the Court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In the class action context, Rule 23(d)(1)(D) further authorizes the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Courts routinely strike class allegations at the pleading stage where, as here, "the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim." *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1277 (C.D. Cal. 2022).

---

[8] *Low,* 900 F. Supp. 2d at 1032 (dismissing plaintiffs' negligence claim where plaintiffs did not plead "how either Plaintiff was foreclosed from capitalizing on the value of his personal data."); *Williams v. Facebook, Inc.,* 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) (holding that the plaintiff had failed to sufficiently allege an economic harm or injury, noting that "[i]t would not be enough for plaintiffs to rely on intangible invasion of privacy allegations, for example, without any claim the information had value before Facebook harvested it, diminished in value once Facebook accessed it, or was entirely unavailable to the plaintiffs after Facebook collected it.").

Here, Plaintiff Diep seeks to represent a nationwide class of individuals who used LAFB's website during the class period. (Compl. ¶ 109.) However, only California Plaintiffs may bring claims for alleged violations of the CIPA and the California Constitution because these laws are meant to protect only California citizens. *See, e.g., Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1284–85 (C.D. Cal. 2024) (striking nationwide class allegations in claim for alleged CIPA violation and invasion of privacy under the California Constitution, even where the Defendant was based in California); *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 964 (N.D. Cal. 2023) (striking nationwide class allegations in CIPA claim). Therefore, Plaintiffs may not pursue their First and Fourth Causes of Action on behalf of the purported nationwide class and their class allegations must be stricken with respect to these claims. And to the extent that Plaintiffs also seek to pursue claims for common law invasion of privacy and negligence (their Third and Fifth Causes of Action) on behalf of their defined class, they, as California residents, lack standing to bring claims on behalf of a nationwide class whose claims would be resolved under the laws of different states. *See Krantz v. Old Copper Co., Inc.*, --- F. Supp. 3d ---, 2025 WL 2326840, at *11 (C.D. Cal. Aug. 11, 2025). Because the named Plaintiffs cannot represent class members whose claims arise under the laws of a state other than California, their class allegations must be stricken with respect to these causes of action, as well.

Moreover, Plaintiffs' proposed class is facially overbroad. The class definition includes "all persons in the United States who . . . used one of the Food Bank Defendants' websites." (Compl. ¶ 109.) This definition encompasses individuals who may have visited the website for reasons other than to seek out food services, including donors and volunteers; individuals who did not enter any personal information (or any information at all) on the website; individuals who did not have a Facebook or Instagram account; and individuals who suffered no injury under Plaintiffs' theory of their case. Plaintiffs' entire Complaint is based on allegations that their "sensitive financial information" was transferred to Meta, but the class as defined includes all users of the website and not only those who used the website to personally seek out "nutritional assistance." Courts routinely strike such overbroad class definitions. *See Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (granting motion to strike class allegations where the

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT;
MOTION TO STRIKE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
320935429v.3

class definition included "individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damages").

Additionally, Plaintiffs' claims are inherently individualized. The complaint alleges that Plaintiff Diep used the LAFB website to access the "Find Food" map, entered his home address, made calls through the website, and submitted personal information to receive emails. (*See* Compl. ¶ 25.) These allegations are specific to Plaintiff and do not establish commonality with other users who may have interacted with different parts of the website or entered different types of information (or no information at all). Courts have recognized that such individualized issues defeat class certification and warrant striking class allegations at the pleading stage. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1044 (N.D. Cal. 2014) (striking class allegations as overbroad where the class was inconsistent with plaintiffs' theory of the case).[9]

## CONCLUSION

For these reasons, Defendant Los Angeles Regional Food Bank respectfully requests that this Court grant its Motion to Dismiss in its entirety and dismiss Counts I, III, IV, and V against Los Angeles Regional Food Bank with prejudice.  In the event the Court does not dismiss all claims against Los Angeles Regional Food Bank, it requests that the Court grant its Motion to Strike all or certain aspects of Plaintiffs' class allegations.

DATED: October 20, 2025                Respectfully submitted,

SEYFARTH SHAW LLP


By:  */s/ Aaron Belzer*
Aaron Belzer
Attorneys for Defendant
Los Angeles Regional Food Bank

---

[9] The Complaint also improperly joins four individual plaintiffs asserting claims against four distinct and unaffiliated Food Bank Defendants. Each Plaintiff interacted solely with one Food Bank Defendant, and the Complaint alleges no factual or legal connection among the Defendants. *See* Compl. ¶¶ 24–28. Courts have recognized that such joinder is improper where the claims arise from unrelated transactions and involve different defendants. *See Todd v. Sacramento County*, 2021 WL 4263060, at *3 (E.D. Cal. Sept. 20, 2021) ("Plaintiff may not bring unrelated claims against unrelated parties in a single action."); *see also* Fed. R. Civ. P. 20(a)(2).

22