**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
DANIEL E. SACHS (SBN 361027)
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiffs***

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATASSIA TIMOTHEE, TOMMY DIEP, ESPERANZA REYES, MARIAELENA BURCIAGA, and STACY PENNING on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., SACRAMENTO FOOD BANK AND FAMILY SERVICES, LOS ANGELES REGIONAL FOOD BANK, CENTRAL CALIFORNIA FOOD BANK, and SAN FRANCISCO FOOD BANK d/b/a SAN FRANCISCO-MARIN FOOD BANK,<br><br>Defendants. | Case No. 3:25-cv-05106-LB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS THE COMPLAINT [DKT. NO. 46]**<br><br>Judge: Hon. Laurel Beeler<br>Date: March 26, 2026<br>Time: 9:30 a.m.<br>Dept.: Courtroom B, 15th Floor |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..............................................................................................................iii

STATEMENT OF ISSUES TO BE DECIDED .........................................................................1

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................1

    I.      PLAINTIFFS ALLEGE META RECEIVED THEIR INFORMATION (Applies to ECPA; CIPA § 631(a), clause three; CIPA § 632; Invasion of Privacy; and Unjust Enrichment) .......................................................................................................1

    II.     PLAINTIFFS ALLEGE META'S INTERCEPTION WAS INTENTIONAL (Applies to ECPA; CIPA § 631; CIPA § 632, and Invasion of Privacy) ................................4

    III.   PLAINTIFFS ALLEGE THEY DID NOT CONSENT TO META'S EAVESDROPPING (Applies to All Claims *except* CIPA §§ 635 & 638.51) ........................8

    IV.   PLAINTIFFS ALLEGE META VIOLATES ECPA & CIPA ...............................................11

        A.    Meta Intercepted the "Contents" of Plaintiffs' Communications While "in Transit" (Applies to ECPA; and CIPA §§ 631 & 632) ...............................................11

        B.    Meta's Pixel Constitutes a Device (Applies to CIPA §§ 632 & 635) ........................16

        C.    Meta "Uses" Pixel to Eavesdrop on Plaintiffs (Applies to CIPA §§ 632 & 638.51) ...........................................................................................................17

        D.    None of Meta's Remaining Arguments Warrant Dismissal of Plaintiffs' CIPA Claims .............................................................................................................18

            i.     CIPA Section 632 .........................................................................................18

            ii.    CIPA Section 635 .........................................................................................19

            iii.   CIPA Section 638.51 ....................................................................................20

        E.    Meta's Conduct Falls Within the Crime-Tort Exception to ECPA's Consent Defense ..........................................................................................................21

i

V.    PLAINTIFFS ALLEGE CLAIMS FOR VIOLATION OF THEIR CALIFORNIA COMMON LAW AND CONSTITUTIONAL PRIVACY RIGHTS....................................22

VI.    PLAINTIFFS ALLEGE META WAS UNJUSTLY ENRICHED ......................................25

CONCLUSION...........................................................................................................................25

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS THE COMPLAINT

## TABLE OF AUTHORITIES

**Cases**

*Alch v. Super Ct.*,
165 Cal. App. 4th 1412 (2008)......................................................................................................23

*Alexandria Real Estate Equities, Inc. v. RUNLABS (UK) Ltd.*,
2019 WL 4221590 (N.D. Cal. Sep. 5, 2019)...................................................................................1

*Augustine v. Lenovo (U.S.), Inc.*,
2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) .............................................................................8, 10

*B.K. v. Eisenhower Med. Ctr.*,
2024 WL 2037404 (C.D. Cal. Apr. 11, 2024)................................................................................22

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) ....................................................................................19

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........................................................................................21

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ......................................................................................4, 10

*Burroughs v. Operating Eng'rs Loc. Union No. 3*,
686 F.2d 723 (9th Cir. 1982).........................................................................................................17

*Calhoun v. Google LLC*,
113 F.4th 1141 (9th Cir. 2024).......................................................................................................11

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ..........................................................................22

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .........................................................................................14

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023).................................................................................13

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ............................................................................................7

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..........................................................................................8

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025)........................................................................6, 11, 12

iii

*Doe v. Meta Platforms, Inc.*,
   690 F. Supp. 3d 1064 (N.D. Cal. 2023) ...............................................................................passim

*Doe v. Microsoft Corp.*,
   2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)................................................................25

*Doe v. Tenet Healthcare Corp.*,
   789 F. Supp. 3d 814 (E.D. Cal. 2025)..............................................................................14, 24

*Drummer v. CoStar Grp., Inc.*,
   2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) ....................................................................3, 21

*Esparza v. Gen Digital Inc.*,
   2024 WL 655986 (C.D. Cal. Jan. 16, 2024).........................................................................13

*Flanagan v. Flanagan*,
   27 Cal. 4th 766 (2002)..........................................................................................................20

*Frasco v. Flo Health, Inc.*,
   2025 WL 2680068 (N.D. Cal. Sep. 17, 2025).....................................................................5, 7

*Fregosa v. Mashable, Inc.*,
   2025 WL 2886399 (N.D. Cal. Oct. 9, 2025).........................................................................18

*Gabrielli v. Haleon US Inc.*,
   2025 WL 2494368 (N.D. Cal. Aug. 29, 2025)..........................................................21, 22, 24

*Gabrielli v. Motorola Mobility LLC*,
   2025 WL 1939957 (N.D. Cal. July 14, 2025).......................................................................24

*Gaige v. Exer Holding Co., LLC*,
   2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......................................................................4, 24

*Gershzon v. Meta Platforms, Inc.*,
   2023 WL 5420234 (N.D. Cal. Aug. 22, 2023).................................................................passim

*Gladstone v. Amazon Web Servs., Inc.*,
   739 F. Supp. 3d 846 (W.D. Wash. 2024)........................................................................passim

*Gray v. Luxottica of Am., Inc.*,
   2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) ...................................................................13, 15

*Greenley v. Kochava, Inc.*,
   684 F. Supp. 3d 1024 (S.D. Cal. 2023) .............................................................................13, 25

*Griffith v. TikTok, Inc.*,
   697 F. Supp. 3d 963 (C.D. Cal. 2023)..................................................................................18

iv

*Hammerling v. Google LLC,*
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ......................................................................24

*Hart v. TWC Prod. & Tech. LLC,*
    526 F. Supp. 3d 592 (N.D. Cal. 2021) ......................................................................23

*Heerde v. Learfield Commc'ns, LLC,*
    741 F. Supp. 3d 849 (C.D. Cal. 2024).....................................................................15

*Hill v. Nat'l Collegiate Athletic Ass'n,*
    7 Cal. 4th 1 (1994).............................................................................................22, 23

*In re Carrier IQ, Inc.,*
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) .....................................................................16

*In re Facebook, Inc. Internet Tracking Litig.,*
    956 F.3d 589 (9th Cir. 2020).............................................................................22, 25

*In re Facebook, Inc., Consumer Priv. User Profile Litig.,*
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .....................................................................22

*In re Google Assistant Priv. Litig.,*
    546 F. Supp. 3d 945 (N.D. Cal. 2021) .....................................................................25

*In re Google Inc. Cookie Placement Consumer Priv. Litig.,*
    806 F.3d 125 (3d Cir. 2015)......................................................................................12

*In re Google Inc. St. View Elec. Commc'ns Litig.,*
    794 F. Supp. 2d 1067 (N.D. Cal. 2011) ...................................................................17

*In re Google Location Hist. Litig.,*
    428 F. Supp. 3d 185 (N.D. Cal. 2019) ...............................................................10, 17

*In re Google Location Hist. Litig.,*
    514 F. Supp. 3d 1147 (N.D. Cal. 2021) ...................................................................24

*In re iPhone Application Litig.,*
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................23

*In re Meta Pixel Healthcare Litig.,*
    647 F. Supp. 3d 778 (N.D. Cal. 2022) .....................................................................10

*In re Meta Pixel Tax Filing Cases,*
    724 F. Supp. 3d 987 (N.D. Cal. 2024) ...............................................................11, 25

*In re Meta Pixel Tax Filing Cases,*
    793 F. Supp. 3d 1147 (N.D. Cal. 2025) .........................................................16, 18, 20

v

*In re Toys R Us, Inc., Priv. Litig.*,
  2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)...................................................................................21

*In re Tracht Gut, LLC*,
  836 F.3d 1146 (9th Cir. 2016)...........................................................................................................10

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017).....................................................................................13, 23

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................................................12

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014)...........................................................................................................12

*Jackson v. LinkedIn Corp.*,
  744 F. Supp. 3d 986 (N.D. Cal. 2024) ...............................................................................................3

*James v. Walt Disney Co.*,
  701 F. Supp. 3d 942 (N.D. Cal. 2023) .......................................................................................16, 17

*Javier v. Assurance IQ, LLC*,
  2021 WL 940319 (N.D. Cal. Mar. 9, 2021)......................................................................................10

*Javier v. Assurance IQ, LLC*,
  2022 WL 1744107 (9th Cir. May 31, 2022) ......................................................................................8

*L.B. v. LinkedIn Corp.*,
  2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)............................................................................passim

*Libman v. Apple, Inc.*,
  2024 WL 4314791 (N.D. Cal. Sep. 26, 2024)...................................................................................16

*Lloyd v. Facebook, Inc.*,
  2023 WL 1802415 (N.D. Cal. Feb. 7, 2023)..................................................................................9, 11

*Lynch v. Express Scripts Holding Co.*,
  2025 WL 2224419 (N.D. Cal. Aug. 5, 2025).....................................................................................11

*M.G. v. Therapymatch, Inc.*,
  2024 WL 4219992 (N.D. Cal. Sep. 16, 2024)...................................................................................19

*Martinez v. Choose Your Horizon, Inc.*,
  2025 WL 2498138 (N.D. Cal. Sep. 1, 2025)........................................................................................3

*Mata v. Zillow Grp., Inc.*,
  2024 WL 5161955 (S.D. Cal. Dec. 18, 2024).............................................................................13, 14

vi

*Meta Platforms, Inc. v. Nguyen*,
  2023 WL 8686924 (N.D. Cal. Nov. 21, 2023)................................................................................9

*Mitchell v. Sonesta Int'l Hotels Corp.*,
  2024 WL 4471772 (C.D. Cal. Oct. 4, 2024).................................................................................16

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
  2017 WL 6387764 (N.D. Cal. Dec. 14, 2017)...............................................................................17

*Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*,
  214 F. Supp. 3d 808 (N.D. Cal. 2016) .........................................................................................21

*Price v. Carnival Corp.*,
  2024 WL 221437 (S.D. Cal. Jan. 19, 2024)..................................................................................12

*Price v. Carnival Corp.*,
  712 F. Supp. 3d 1347 (S.D. Cal. 2024) ........................................................................................16

*Riganian v. LiveRamp Holdings, Inc.*,
  791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......................................................................................23

*Rojas v. HSBC Card Servs. Inc.*,
  20 Cal. App. 5th 427 (2018)......................................................................................................4, 5

*SCC Acquisitions, Inc. v. Super. Ct.*,
  243 Cal. App. 4th 741 (2015).....................................................................................................24

*Shah v. Cap. One Fin. Corp.*,
  768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......................................................................................14

*Shah v. Fandom, Inc.*,
  754 F. Supp. 3d 924 (N.D. Cal. 2024) .....................................................................................8, 10

*Shulman v. Grp. W Prods., Inc.*,
  18 Cal. 4th 200 (1998)................................................................................................................22

*Smith v. Google, LLC*,
  735 F. Supp. 3d 1188 (N.D. Cal. 2024) ..............................................................................6, 11, 13

*St. Aubin v. Carbon Health Techs., Inc.*,
  2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)................................................................................15

*Sussman v. Am. Broad. Cos., Inc.*,
  186 F.3d 1200 (9th Cir. 1999)....................................................................................................22

*Tanner v. Acushnet Co.*,
  2023 WL 8152104 (C.D. Cal. Nov. 20, 2023)..............................................................................13

vii

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS THE COMPLAINT

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
516 F.3d 1290 (Fed. Cir. 2008) ........................................................................................ 16

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ............................................................................. 9

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ............................................................................................ 19

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) .............................................................................. 16

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ............................................................................... 14

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023)........................................................................... 14, 15

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025)..................................................................... 24

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) .......................................................................... 15, 16

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......................................................................... 16, 17

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)............................................................................. 20

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........................................................... 2, 19, 20

**Statutes**

18 U.S.C. § 2510(8) .......................................................................................................... 12

18 U.S.C. § 2511(1)(a)................................................................................................... 4, 12

18 U.S.C. § 2511(2)(d) ...................................................................................................... 21

18 U.S.C. § 2520.............................................................................................................. 12

Cal. Penal Code § 631(a) ............................................................................................. passim

Cal. Penal Code § 632........................................................................................................ 17, 18

viii

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS THE COMPLAINT

Cal. Penal Code § 632(a) ...............................................................................................................4

Cal. Penal Code § 635.................................................................................................4, 18, 19, 20

Cal. Penal Code § 635(a) .............................................................................................................2

Cal. Penal Code § 637.7..............................................................................................................17

Cal. Penal Code § 637.7(a) .........................................................................................................17

Cal. Penal Code § 637.7(d) .........................................................................................................17

Cal. Penal Code § 638.51.......................................................................................................17, 18

Cal. Penal Code § 638.51(a) ......................................................................................................2, 4

**Rules**

N.D. Cal. Civ. L.R. 7-2(b) .............................................................................................................1

N.D. Cal. Civ. L.R. 7-4(a)(3)........................................................................................................1

**Other Authorities**

Black's Law Dictionary (8th ed. 2004)........................................................................................17

ix

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS THE COMPLAINT

**STATEMENT OF ISSUES TO BE DECIDED[1]**

1.    Whether Plaintiffs sufficiently allege that Meta received their information, that Meta's interception was intentional, and that they did not consent to Meta's eavesdropping, and otherwise state claims against Meta for violation of the Electronic Communications Privacy Act ("ECPA") and California Invasion of Privacy Act ("CIPA") by meeting the technical requirements for pleading those claims.

2.    Whether Plaintiffs plausibly state claims for violation of their California common law and Constitutional privacy rights.

3.    Whether Plaintiffs plausibly allege Meta was unjustly enriched.

**INTRODUCTION**

Without Plaintiffs' knowledge or consent, Meta intentionally uses its Pixel software to intercept their confidential communications with various Food Bank websites, including personally identifying information ("PII") and sensitive location, financial, and medical information. Meta stores this information on its servers and uses it to build detailed profiles of Plaintiffs, to target them with predatory advertising, and to sell their information to third-party advertisers. For this ongoing invasion of their privacy, Plaintiffs bring claims against Meta for violations of ECPA and CIPA Sections 631(a), 632(a), 635, and 638, and for common law and Constitutional invasion of privacy, and unjust enrichment. Meta's Motion, Dkt. No. 46 ("Mot."), provides no salient reason to dismiss those claims.

**ARGUMENT**

**I.    PLAINTIFFS ALLEGE META RECEIVED THEIR INFORMATION (Applies to ECPA; CIPA § 631(a), clause three; CIPA § 632; Invasion of Privacy; and Unjust Enrichment)**

Meta's assertion that Plaintiffs' claims fail because they do "not plausibly plead that the food banks . . . actually used Pixel code to improperly share any data with Meta," Mot. at 8-9, deserves short shrift. Meta is wrong about the requirements of some claims,[2] and otherwise ignores Plaintiffs' abundant allegations of

---

[1] In violation of N.D. Cal. Civ. L.R. 7-2(b) and 7-4(a)(3), Meta's Motion fails to include a notice of motion and statement of issues within its 25-page brief, effectively expanding its briefing beyond the limit imposed under L.R. 7-2(b), and depriving Plaintiffs a fair opportunity to respond. *See Alexandria Real Estate Equities, Inc. v. RUNLABS (UK) Ltd.*, 2019 WL 4221590, at *1 n.1 (N.D. Cal. Sep. 5, 2019) (Koh, J.) (explaining that a violation of L.R. 7-2(b) results in a brief "exceed[ing] the applicable 25-page limit," and admonishing defendant that "[f]uture briefs that fail to comply . . . will be stricken").

[2] Not all of Plaintiffs' claims require Meta to have *received* Plaintiffs' communications. CIPA Section

1

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS THE COMPLAINT

its receipt and use of their data. Plaintiffs allege each Food Bank "uses the Pixel" to "track[] and intercept[] user interactions," Compl. ¶¶ 84-87. This means "Meta intercepts each page a user visits, what buttons they click, as well as specific information they input into the website, and what they searched." *Id.* ¶ 72. Moreover, "Pixel sends each of these pieces of information to Meta in real time with users' PII." *Id.* Thus, "[a]s a result of the Food Bank Defendants' incorporation of the Pixel . . . Meta intercepted[] Plaintiffs' and other Class Members' interactions . . . including communications containing their sensitive personal and financial information, and in the case of SFMFB, medical information," *id.* ¶ 88; *see also id.* ¶ 30 ("Unbeknownst to Plaintiffs, the Food Bank Defendants allowed Meta to intercept this data, revealing their sensitive financial conditions, and Meta then associated the data with Plaintiffs' Meta accounts and other personal information to target them with advertisements."). "Meta stores this data . . . and discloses, shares, and sells this data to other third parties for profit." *Id.* ¶ 5; *see also id.* ¶¶ 72, 88.

The specific information each Plaintiff conveyed, which Meta intercepted, stored, and sold for profit, is also alleged. "All Plaintiffs individually electronically communicated their intent to receive nutrition assistance" to each of the Food Banks. *Id.* ¶ 29. Each also "accessed the 'Find Food' map, which included entering [their] home address[es]." *See id.* ¶ 24; *see also id.* ¶¶ 25-28. Plaintiff Stacy Penning also "answer[ed] multiple questions related to his location, age, disability status, mobility status, and urgency of his need for food assistance." *Id.* ¶ 28; *see also id.* ¶ 198 (Mr. Penning "indicate[d] whether he is 'an adult living with disabilities' and/or 'ha[s] a disability that makes it difficult to leave home to get food.'"). Plaintiff Esperanza Reyes additionally, "visited the CalFresh website through the . . . Food Bank website," *id.* ¶ 26, and Plaintiff Mariaelena Burciaga "used the website to help determine her eligibility for CalFresh, which included answering multiple questions to determine the severity of her financial hardship," *id.* ¶ 27. Finally, Plaintiff Tommy Diep "made calls to the . . . Food Bank through its website and entered his personal

---

631(a)'s second clause imposes liability on those who "read or *attempt[ ] to read*" communications, Compl. ¶ 127 (emphasis added) (quoting Cal. Penal Code § 631(a)). Section 635 prohibits "intentionally manufactur[ing] . . . [or] sell[ing] . . . any device which is primarily or exclusively designed or intended for eavesdropping," *id.* ¶ 151 (quoting Cal. Penal Code § 635(a)), regardless whether ever put to such use. *See Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *8 (N.D. Cal. Dec. 30, 2024) ("CIPA § 635 does not require the intent that the device *would* be used unlawfully, just that it *could* be." (citation omitted)). And CIPA Section 638 prohibits not only the "use" of a "pen register" or "trap and trace device," but also their "installation." *See* Compl. ¶ 156 (citing Cal. Penal Code § 638.51(a)). Thus, even if Plaintiffs did not allege Meta's receipt of their data, that would not mean Plaintiffs' entire "complaint fails," *see* Mot. at 7.

information into the website in order to receive emails from the Defendant." *Id.* ¶ 25.

Rather than alleging "hypothetical information that Pixel *could* be used to transmit," *see* Mot. at 8, Plaintiffs thus allege the Food Banks *in fact* installed Pixel, which sent all website interactions to Meta in real time, including the specific interactions each Plaintiff alleges. *See* Compl. ¶¶ 24-30, 72, 84-88, 160. Meta used this information "to improve its personalized content delivery, advertising network, and machine-learning algorithms, including by improving its ability to identify and target users." *Id.* ¶ 80; *see also id.* ¶¶ 66-79. That is why "after visiting the Food Bank Defendants' websites, Plaintiffs received several targeted advertisements related to their sensitive financial information or status." *Id.* ¶ 30; *see also id.* ¶ 100 (Plaintiffs "were repeatedly targeted with ads directed at exploiting their financial hardships after visiting the Food Bank Defendants' websites."). These targeted advertisements underscore the plausibility of Plaintiffs' allegation that Meta received and used their data.[3] *Cf. L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (receiving "targeted advertising after interacting with the challenged websites . . . strengthen[s] the inference that [defendant] learned about Plaintiffs from reading their communications").

Meta argues "nothing plausibly links those alleged ads" Plaintiffs received "to Meta or the Pixel," since "Plaintiffs do not allege they saw the advertisements on Facebook or Instagram," and "the [C]omplaint does not specify who served these ads or whether they were based on data allegedly collected from the food bank sites . . . ." *See* Mot. at 9 (citation omitted). But just because the court in *Martinez v. Choose Your Horizon, Inc.*, noted the plaintiffs alleged they "received advertisements . . . *via Facebook*," *see* Mot. at 9 (quoting 2025 WL 2498138, at *2 (N.D. Cal. Sep. 1, 2025)), does not mean that is required. Here, it was not until "after visiting the Food Bank Defendants' websites," that "Plaintiffs received several targeted advertisements related to their sensitive financial information or status." *See* Compl. ¶ 30. Particularly when

---

[3] Only the third clause of CIPA Section 631(a) requires Plaintiffs allege "Meta used or attempted to use" their communications, *see* Compl. ¶ 136; *id.* ¶ 127. For Plaintiffs' other claims, it is sufficient that Meta intercepted their private information. *Requiring* Plaintiffs to allege they received targeted advertisements would improperly impose a "use" requirement into all of Plaintiffs' claims and eliminate the lesser "attempt[] to use" standard in Section 631(a)'s third clause. *See Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) ("allegations regarding the manner in which the Insight Tag operates are sufficient to plausibly allege that LinkedIn at least 'read' or 'learned' the information"); *Drummer v. CoStar Grp., Inc.*, 2025 WL 3190656, at *4 (C.D. Cal. Oct. 22, 2025) ("the harm Plaintiffs allege—the surreptitious collection and transmission of their economically valuable IP addresses for purposes of targeted tracking—is not dependent on whether they actually received targeted advertisements").

3

combined with Plaintiffs' other allegations, this is sufficient to infer the ads came from Meta as a result of receiving sensitive data from Plaintiffs' interactions with the Food Bank websites. *See Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *2 (C.D. Cal. Mar. 2, 2025) (rejecting argument plaintiff could not "establish traceability because . . . he could have received targeted advertisements from other websites" where he alleged "he used Defendant's Website, which resulted in Defendant's Tracking Technologies disclosing Plaintiff's medical information and Facebook ID to Meta" and "Defendant's disclosures led to him receiving targeted advertisements related to the very conditions he had searched" (record citations omitted)).

## II.    PLAINTIFFS ALLEGE META'S INTERCEPTION WAS INTENTIONAL (Applies to ECPA; CIPA § 631; CIPA § 632, and Invasion of Privacy)[4]

To state claims under ECPA and CIPA Sections 631(a) and 632(a), Plaintiffs must allege Meta "intentionally" intercepted their communications. *See* Cal. Penal Code §§ 631(a), 632(a); 18 U.S.C. § 2511(1)(a). Invasion of privacy and intrusion upon seclusion claims also require Meta's conduct be "intentional[ ]," *see Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ["*Brown II*"] (citation omitted). Plaintiffs allege so repeatedly. *See* Compl. ¶¶ 69, 81-83, 135-37, 150, 152, 165, 167-68, 172, 184.

"[T]he intent element . . . requires a showing of Meta's 'affirmative desire' to intercept communications." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023) ["*Meta Platforms*"]. Interception "is intentional if the person using the recording equipment does so . . . *with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation.*" *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 859 (W.D. Wash. 2024) (citing *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018)). "Whether a person possesses the requisite intent . . . is generally a question of fact." *Id.* (citation omitted).

Here, Plaintiffs allege that, "*[b]y design*, Meta receives the content of website communications as the website user enters or generates the information." Compl. ¶ 69 (emphasis added); *see also id.* ¶ 152 ("The Pixel is a device primarily or exclusively designed to eavesdrop upon others' communications because its purpose is to act [as] an invisible add-on to a website, with the intent to collect users' private information for its own use and personal gain, without users' knowledge."). Yet "Meta has no way to limit

---

[4] Because the intent needed to show a violation of CIPA Sections 635 and 638 differs from these causes of action, Meta's arguments regarding those sections are addressed below, in Sections IV.D.ii-iii.

or prohibit the use of data collected through the Pixel given its open systems and advanced algorithms." *Id.* ¶ 81. Further, "Meta knows that . . . sensitive information is nevertheless being shared with Meta, and usually does not take enforcement actions against companies . . . for good reason: the sensitive information about Plaintiffs and other users is highly valuable." *Id.* ¶ 82. In line with this, "Meta has not taken action against any of the Food Bank Defendants despite knowing they are collecting and sharing sensitive user information . . . ." *Id.* ¶ 83. Additionally, "Meta knew that the Food Bank Defendants did not have opt-in or opt-out options for cookies on their websites," *id.* ¶ 137. Thus, Meta's "purpose was and is to intentionally and undetectably intercept contents of Plaintiffs' and Class Members' electronic communications of PII and sensitive financial and medical information," *id.* ¶ 168; *see also id.* ¶¶ 135-36, 150, 165, 172, 184.

The Court should find that "[a]t this stage, intent has been adequately alleged." *See Meta Platforms*, 690 F. Supp. 3d at 1076 (ECPA); *id.* at 1079 (CIPA); *L.B.*, 2025 WL 2899514, at *13 ("Plaintiffs have adequately alleged intent" because their "allegations create a reasonable inference that the purpose of the Insight Tag is for LinkedIn to collect confidential data from users in violation of their privacy rights"); *Gladstone*, 739 F. Supp. 3d at 860 ("Plaintiff has adequately pled that Defendant acted intentionally and willfully" under CIPA Sections 631 and 632 by "alleg[ing] that Amazon Connect is designed for the purpose of recording and analyzing communications between its customers"). Further bolstering the propriety of that conclusion, a CIPA case involving Meta's mobile app tracking technology, Meta SDK, recently went to trial. After the jury was presented evidence Meta "knew that it was receiving personal health information of individuals via SDK," Meta was found liable. *See Frasco v. Flo Health, Inc.*, 2025 WL 2680068, at *18 (N.D. Cal. Sep. 17, 2025). The court found there was "more than enough evidence to reasonably conclude that Meta recorded users' communications with the Flo App 'with the purpose or desire of recording a confidential conversation,' or 'with the knowledge to a substantial certainty that [its] use of the [software] will result in the recordation of a confidential conversation.'" *Id.* (quoting *Rojas*, 20 Cal. App. 5th at 435).

Meta nevertheless maintains Plaintiffs' allegations are insufficient for two reasons. First, it argues that since "Meta made its Pixel code generally available and received information the food banks chose to send," Plaintiffs "fail to allege any affirmative act by Meta to obtain data from the food banks," Mot. at 14 (emphasis omitted); *see also id.* at 2. Second, relying on materials outside the pleadings, Meta argues Plaintiffs cannot allege intent because "Meta's Business Tools Terms . . . prohibit developers from sending

5

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS THE COMPLAINT

any 'sensitive' information, including 'health' or 'financial' information, or any other information the food banks lacked the right to send," *id.* at 2; *see also id.* at 4-5, 14-16. Both arguments have been repeatedly rejected, and this Court should reach the same conclusion.

To start, the Court should not consider Meta's Business Tools Terms. *See* Pl. RJN Opp. at 5; *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *11 & n.4 (N.D. Cal. Aug. 22, 2023) (declining to consider extrinsic documents on issue of consent). But even considering them, Meta's argument fails.

In "another privacy case involving [Meta's] tracking pixel technology, Judge Orrick addressed Meta's [second] argument[:] that intent was not sufficiently pled because 'Meta seeks to avoid receiving sensitive information by contractually forbidding developers from sending it[.]'" *L.B.*, 2025 WL 2899514, at *12 (quoting *Meta Platforms*, 690 F. Supp. 3d at 1076). As here, the plaintiffs "argued that the policy did not reflect Meta's true intentions." *See id.* (citation omitted); Compl. ¶¶ 82-83. "Judge Orrick agreed and found that intent had been adequately alleged, because '[w]hat Meta's true intent is, what steps it actually took to prevent receipt of health information . . . turn on disputed questions of fact that need development on a full evidentiary record.'" *Id.* (quoting *Meta Platforms*, 690 F. Supp. 3d at 1076). Likewise, in *Doe v. GoodRx Holdings, Inc.*, the court denied defendant's "motion to dismiss for lack of sufficient allegations of intent" because

> while Meta . . . may instruct developers not to send protected health information, if, once received, Meta . . . make[s] no effort to prevent the uploading of that information into [its] data repositories, take no steps to filter it out once the data is uploaded to [its] servers, or simply proceed[s] to monetize that information knowing developers were sending sensitive health information in violation of instructions against it, a jury may find such acts indicative of intent.

2025 WL 2052302, at *8-9 (N.D. Cal. July 22, 2025) ["*GoodRx Holdings*"] (citing *Meta Platforms*, 690 F. Supp. 3d at 1076). And "[i]n a similar case against Google, Judge Pitts found the same." *L.B.*, 2025 WL 2899514, at *12 (citing *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) ("policy documents suggest[ing] that Google did not actually want to receive personally identifiable information and expressly prohibited developers from transmitting such data . . . presents a question of fact")); *see also Gladstone*, 739 F. Supp. 3d at 860 ("the Court is not convinced that Defendant's inclusion of a catch-all provision requiring its customers to comply with the law generally is enough to satisfy its legal obligations under CIPA" (citation modified)).

Meta's case is an outlier. *See* Mot. at 15-16 (citing *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS THE COMPLAINT

(N.D. Cal. 2024)). In *Doe I*, "the complaint acknowledge[d] that Google *repeatedly* told developers not to send personally identifiable information through use of its source code," and "warned [healthcare providers] that they must not use its source code in ways that would result in HIPAA-covered information being sent to Google." 741 F. Supp. 3d at 840 (emphasis added). "Judge Chhabria noted that differences in the allegations could explain his divergence from Judge Orrick's earlier ruling in *Doe v. Meta Platforms, Inc.*" *L.B.*, 2025 WL 2899514, at *12 (citing *Doe I*, 741 F. Supp. 3d at 841). Yet even considering *Doe I* to be an "apparent split in authority," the "majority rule" is to "decline[] to hold that" a defendant's agreements or policies "are entirely dispositive of its intent at the pleadings stage." *See id.*, at *13.

Evidence in the *Frasco* trial further underscores the plausibility of allegations Meta intentionally intercepted Plaintiffs' confidential communications. The "evidence established" that the intercepted "data was quite valuable to Meta[]," which "did not restrict or eliminate the acquisition of personal data for this very reason." *Frasco*, 2025 WL 2680068, at *19. "The evidence indicated that Meta was far from oblivious to the personal data it was obtaining," leading the jury to "conclude that Meta's [a]ctions speak louder than words," *id.*, at *19-20 (citation modified). There was "sufficient evidence at trial that Meta knew it was getting data it shouldn't be getting, and it did not implement its own measures to stop that," which "[a] rational jury could credit . . . over Meta's statements to app developers." *Id.*, at *20.

Courts have likewise rejected Meta's "argu[ment] that plaintiffs have failed to plausibly allege that Meta . . . 'purposefully and deliberately and not as a result of accident or mistake[]' . . . intercept[ed] their sensitive health information," simply because a complaint "acknowledges that third-party web developers, not Meta, choose whether to install Pixel and also set parameters on what information to send to Meta." *See Meta Platforms*, 690 F. Supp. 3d at 1076 (internal citation omitted) (finding intent sufficiently alleged). "[C]ontrary to Meta's assertions, the complaint alleges far more than inadvertent receipt of information," *see Gershzon*, 2023 WL 5420234, at *11 (rejecting argument plaintiff did "not allege that Meta intended to wiretap a conversation without his consent. . . . because third parties decide whether to install the Meta Pixel, and Meta tells third parties not to send it any information unless it has the legal right to do so").

Plaintiffs allege Pixel "is primarily or exclusively designed or intended for eavesdropping," Compl. ¶ 151, is installed on the Food Banks' websites, *id.* ¶¶ 84-87, and transmits confidential communications to Meta, *id.* ¶¶ 6-7, 83-88; and allege Meta is aware it is receiving these confidential communications, yet has

taken no action to stop their transmission because the data is highly valuable to Meta, *id.* ¶¶ 82-83, 137. "These allegations, along with the other detailed allegations in the complaint, are sufficient and non-conclusory, and whether Meta in fact acted willfully is a question of fact to be resolved on a factual record." *See Gershzon*, 2023 WL 5420234, at *11 (sufficient where plaintiff alleged "Meta designed the Meta Pixel 'to maximize the private information it transmits,' that the Pixel is installed on the DMV website, that personal information and communications are transmitted to Meta via the Pixel on the DMV website, that Meta is aware that this information is being transmitted, and that 'Meta intended to learn, and did learn, some meaning of the content in the communications . . . .'" (record citation omitted)).

**III.    PLAINTIFFS ALLEGE THEY DID NOT CONSENT TO META'S EAVESDROPPING (Applies to All Claims _except_ CIPA §§ 635 & 638.51)**

Meta "bears the burden to establish consent and, on a motion to dismiss, [is] required to show that the allegations of the complaint established consent as a matter of law." *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024) ["*Fandom*"]; *see also Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024) ("On a motion to dismiss, the burden of proof to show consent rests with defendants." (citing *Meta Platforms*, 690 F. Supp. 3d at 1077-78)). Meta has not carried its burden here.

Plaintiffs repeatedly allege they "did not consent to the interception or disclosure of their confidential communications, including sensitive financial and medical information, to Meta." Compl. ¶ 89; *see also id.* ¶¶ 2, 6, 84, 88, 90-94, 125, 135-37, 145, 147, 150, 160, 166, 172, 185, 190-91, 199, 201, 204, 206. "These allegations are plausible and sufficient at this stage of litigation." *Gershzon*, 2023 WL 5420234, at *9; *see also Augustine v. Lenovo (U.S.), Inc.*, 2023 WL 4938050, at *2 (S.D. Cal. Aug. 2, 2023) (plaintiffs "sufficiently plead[] that [they] did not consent to the recording [at issue]." (citing *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (plaintiff met his pleading burden by alleging "he did not provide express prior consent"))). Instead, Meta's interception was "[u]nbeknownst to [them]," Compl. ¶ 30. Moreover, Meta's interception began the moment each Plaintiff visited a Food Bank website, since "[n]one of the Food Bank Defendants required an opt-in or opt-out for the Pixel's data collection by Plaintiffs or other users before it began tracking and intercepting user data." *Id.* ¶ 90; *see also id.* ¶ 137. And Plaintiffs "had no way of knowing . . . Meta was intercepting[] their user data . . . because the software is, almost always, inconspicuously incorporated in the background." *Id.* ¶¶ 91, 146; *see also id.* ¶ 92 (discussing

8

Meta's "*undisclosed* conduct" (emphasis added)). Plaintiffs "could not consent to Defendants' conduct when they were unaware their confidential communications, PII, sensitive health/disability information, and/or sensitive financial information would be . . . intercepted by Meta." *Id.* ¶ 94. Plaintiffs thus "clearly allege[] that they were not aware and did not consent to" Meta's interception of their confidential communications. *See Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1180 (N.D. Cal. 2024).

Improperly relying on materials outside the Complaint, as well as factual findings by other courts with different records in front of them, Meta argues it obtained Plaintiffs' consent via Facebook and Instagram's "Terms of Service (and incorporated policies)," claiming "[t]hose contracts disclose the practices of which Plaintiffs now complain." Mot. at 10-11; *see also id.* at 3-4. The Court should not consider Meta's extensive terms and policies at this juncture. *See* RJN Opp. at 3-7; *Gershzon*, 2023 WL 5420234, at *11 & n.4. Even if it did, despite submitting more than 400 pages of extraneous documents, Meta has not come close to carrying its burden of establishing Plaintiffs' consent to its "interception . . . of their confidential communications, including sensitive financial and medical information," Compl. ¶ 89.

First, Meta attaches multiple versions of each document, but fails to establish which is applicable to which Plaintiff (if any). *See generally* Mot. at 10-13. Then Meta improperly relies on other courts' decisions—not facts alleged in Plaintiffs' Complaint—for its extra-pleading assertion that Plaintiffs were "required to 'agree' to the Terms of Service (and incorporated policies) 'to create a Facebook [or Instagram] account.'" Mot. at 10 (quoting *Lloyd v. Facebook, Inc.*, 2023 WL 1802415, at *1 (N.D. Cal. Feb. 7, 2023), and citing *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *2 (N.D. Cal. Nov. 21, 2023)). Meta provides no analysis of those cases, nor demonstrates they considered the same policies. *See id.* at 10-11. And Meta only discusses the current versions, *see id.* at 3-4, 10-11, baldly claiming "[t]he[] policies contained materially identical language throughout the past two years from the filing of the Complaint," *see id.* at 3 n.2.[5] Thus Meta does not meet its burden of demonstrating Plaintiffs' consent.

Second, Meta's consent defense fails because its policies do not disclose the "specific conduct" challenged here. *See Fandom*, 754 F. Supp. 3d at 931-32 ("[C]onsent is 'generally limited to the specific

---

[5] Meta notes Plaintiffs allege a one-year class period, Mot. at 3 n. 2 (citing Compl. ¶ 109) but concedes that "two years . . . [is] the longest statute of limitations for any of Plaintiffs' claims" against it, *see id.* (citations omitted). Plaintiffs' proposed one-year class period was an inadvertent error—it should have been two years—but Plaintiffs have reserved the right to clarify this in the future anyway. *See* Compl. ¶ 109.

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS THE COMPLAINT

conduct authorized.'" (quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021))). As Meta acknowledges, to establish consent, "the disclosures must 'explicitly notify' users of the practice at issue." *Meta Platforms*, 690 F. Supp. 3d at 1078 (quoting *Brown II*, 685 F. Supp. 3d at 926); *see also* Mot. at 12 ("disclosures must 'specifically indicate' the particular types of data at issue to establish consent where 'sensitive' data is involved" (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022)); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 190 (N.D. Cal. 2019) ["*Google Location*"] ("Consent is only effective if the person alleging harm consented to the particular conduct, or to substantially the same conduct and if the alleged tortfeasor did not exceed the scope of that consent." (quotation omitted; citation modified)). "[C]ourts consider 'whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization.'" *GoodRx Holding*, 2025 WL 2052302, at *9 (quoting *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024)). If "the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Defendant's] favor at the motion to dismiss stage." *See McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789-90 (N.D. Cal. 2019) ["*Facebook*"]). Consent thus often involves "factual disputes [that] are not suitable for resolution at this stage in the proceedings." *See Augustine*, 2023 WL 4938050, at *2 (citation omitted).

Here, none of the disclosures Meta points to "explicitly notify" Plaintiffs that their sensitive financial, health, and disability information will be collected from the Food Banks' websites. Quite the opposite: the Privacy Policy notes some information is entitled to "special protections," including "health" information. Dkt. No. 47-4 at 4 (This "*and other types of information* could have special protections under the laws of your jurisdiction." (emphasis added)). A reasonable person could plausibly conclude Meta would not collect sensitive information from their interactions with the Food Bank websites. Meta therefore cannot establish consent. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (Meta did not establish consent where its "policies notify Facebook users that Meta collects and uses their personal data," but did "not . . . . specifically indicate that Meta may acquire health data" (record citations and emphasis omitted)); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003-1004 (N.D. Cal. 2024) ["*Tax Filing*

10

*Cases I*"] ("[T]he Court cannot determine . . . that plaintiffs consented to Facebook collecting sensitive financial data simply because the complaint mentions that Meta has certain agreements in place . . . and because Meta believes that these agreements adequately disclose the collection practices at issue.").

Though they should not be considered now, Meta's Business Tool Terms *negate* a finding of consent. According to Meta, those terms "requir[e] developers to 'represent and warrant that' they 'will not share Business Tool Data with [Meta] that [they] know or reasonably should know . . . includes health, financial information or other categories of sensitive information.'" Mot. at 5 (quoting Dkt. No. 47-11, Meta's Ex. 11 at 1). There would be no need for such a disclosure if Meta had consent to collect and use such sensitive information. Reasonable consumers thus "could have plausibly understood the disclosures 'as *not* disclosing that [Meta] would engage' in the sharing of [their] sensitive" information. *See Lynch v. Express Scripts Holding Co.*, 2025 WL 2224419, at *9 (N.D. Cal. Aug. 5, 2025) (quoting *Calhoun*, 113 F.4th at 1147); *see also id.*, at *9-10 (denying "motion to dismiss on the basis of consent" where plaintiff alleged "Facebook disclosures indicate Meta 'prohibit[s] businesses and organizations from sharing sensitive information with [it], including health and financial data'" (record quotation omitted)); *see also Calhoun*, 113 F.4th at 1150 (Reasonable users reviewing Chrome privacy policy, which stated Google would *not* receive certain information, "would not necessarily understand that they were consenting to the data collection at issue.")). Meta's cases, *see* Mot. at 11-13, are "unpersuasive" and "off the mark." *See GoodRx Holdings*, 2025 WL 2052302, at *9 n.13 (distinguishing *Smith* and *Lloyd*).

## IV.    PLAINTIFFS ALLEGE META VIOLATES ECPA & CIPA

### A.    Meta Intercepted the "Contents" of Plaintiffs' Communications While "in Transit"[6] (Applies to ECPA; and CIPA §§ 631 & 632)

CIPA Section 631 imposes liability on anyone who "reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit," Cal. Penal Code § 631(a). ECPA also "impose[s] liability for the interception of certain electronic communications while they are in transit." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014); *see also* 18 U.S.C. §§

---

[6] Meta's only other argument against Plaintiffs' CIPA Section 631(a) claims misunderstands them as "invok[ing] the first clause of [that] Section," which "does not apply to the internet," *see* Mot. at 20 (citation and quotation omitted). Plaintiffs' claims, however, are brought under Section 631(a)'s second through fourth clauses.

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS THE COMPLAINT

2511(1)(a), 2520. Contrary to Meta's claims, *see* Mot. at 18-20, Plaintiffs sufficiently allege both that Meta intercepted the "contents" of their communications and that the interception occurred while "in transit."

"Contents" means "information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). While "contents" generally "does not include 'record information,' such as the '"name," "address," and "subscriber number or identity" of a subscriber or customer,' when such information is merely 'generated in the course of the communication,'" "record information may constitute 'contents' where 'the record is the subject of a communication . . . .'" *Price v. Carnival Corp.*, 2024 WL 221437, at *6 (S.D. Cal. Jan. 19, 2024) (record citation omitted) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014)); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("If an address, phone number, or URL is . . . part of the substantive information conveyed to the recipient, then by definition it is 'content.'").

Unable to assert that *all* data Plaintiffs allege it collected is "non-'contents' information," Mot. at 18, 20, Meta argues "several" cherry-picked "types of information, like 'IP addresses[]' [and] 'clicks to . . . food map[s],' . . . are not 'contents,'" *see id.* at 19 (quoting Compl. ¶¶ 159, 84, 26; case citation omitted). But those categories of information are not gathered in isolation. Meta collected them together with details that clearly *are* "contents" under the statute, such as "the user's full name, address, phone number, email address, the number of people the user purchases and prepares food for, as well as how many people in the user's household are U.S. citizens," and "whether they are currently receiving Food Stamps . . . whether they receive disability payments, whether they have less than $4,500 in their bank account, if anyone in their household is pregnant, their total income before taxes in the last thirty days, whether they are a refugee," *id.* ¶ 84, among other "sensitive personal and financial information," *id.* ¶ 88, including Plaintiffs' food insecurity and need for public assistance, *see id.* ¶ 29; *see also id.* ¶¶ 85-87. And Meta ignores that use of the food maps requires "entering [a user's] home address," Compl. ¶¶ 24-27, and clicks through to CalFresh required "answering multiple questions to determine the severity of [someone's] financial hardship," *id.* ¶ 27.

Plaintiffs' allegations "that [Meta] intercepted the[ir] 'PII, health information, and other sensitive data'" are therefore "sufficient" to allege Meta received "contents" within the meaning of CIPA. *See GoodRx Holdings, Inc.*, 2025 WL 2052302, at *15 (citations omitted); *Gershzon*, 2023 WL 5420234, at *13 (plaintiffs sufficiently alleged "contents" were communicated by alleging "Pixel [wa]s embedded on and throughout

12

the DMV website" and "Meta obtained information showing that [plaintiff] communicated with the DMV in order to apply for a disability parking placard," since "[t]his type of information is substantive and personal"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1052 (S.D. Cal. 2023) (communications "f[e]ll on the 'contents' . . . side of the line," where plaintiff "allege[d] that Defendant monitors and intercepts communications related to his personal characteristics, mode of living, purchase decisions, personal choices, app selections, spending habits, and click choices, amongst others" (record quotation, quotation marks, and alterations omitted)); *Smith*, 735 F. Supp. 3d at 1199 ("sensitive financial information about tax filings [transmitted] to Google" constituted "content").

Moreover, "[t]he boundaries of what transferred information is content under the Act is better determined on a full evidentiary record," making dismissal at this stage inappropriate. *See Meta Platforms*, 690 F. Supp. 3d at 1077; *cf. Tanner v. Acushnet Co.*, 2023 WL 8152104, at *3 (C.D. Cal. Nov. 20, 2023) (allegations "more than sufficient for pleading purposes" where "[a]lthough perhaps not all of th[e] [captured] information is 'content' under CIPA, much of what is captured certainly is").

Meta's assertion Plaintiffs do not plausibly allege it intercepted their communications "in transit" is without merit. *See* Mot. at 18, 19-20. "While a plaintiff must do more than 'merely restate[ ] the pleading requirement of real time interception', . . . the standard is not overly burdensome." *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (quoting *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024)). "For instance, allegations that communications are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Id.* (citation modified) (quoting *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024)). "[A] plaintiff need not prove their theory of interception, but rather must provide fair notice to defendants of when they believe the defendant intercepts their communications." *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *7 (C.D. Cal. Dec. 16, 2024) (citation modified) (quoting *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017)). "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant," *id.* (quoting *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023)).

Plaintiffs' allegations are more than sufficient to meet the low "in transit" standard. They allege "Meta

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS THE COMPLAINT

intercepts each page a user visits, what buttons they click, as well as specific information they input into the website, and what they searched," and "sends each of these pieces of information to Meta *in real time* with users' PII." Compl. ¶ 72 (emphasis added). This starts "[a]s soon as a user takes any action on a webpage," with Pixel "re-direct[ing] the contents of the user's communication to Meta *while the communication between the user and website provider is still occurring.*" *Id.* ¶ 68 (emphasis added); *see also id.* ¶¶ 38, 43, 55, 84-88, 135-36, 166, 168. Thus, by its very "design, Meta receives the content of website communications as the website user enters or generates the information, but before the website owner receives it." *Id.* ¶ 69.

Numerous courts, including those dealing with allegations regarding Meta's Pixel, "have held [such] allegations of simultaneous duplication and interception of communications [are] sufficient to plead 'interception' while 'in transit' . . . at the motion to dismiss stage." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838-39 (E.D. Cal. 2025) ["*Tenet Healthcare*"] (record citation omitted) (collecting cases); *see also*, *e.g.*, *Mata*, 2024 WL 5161955, at *6 (court could "plausibly infer that Meta intercepted his communications while 'in transit,'" from allegation that "Defendant incorporated third-party tracking technologies into its website so that 'whenever' Plaintiff watched video content, Meta obtained access" (quotations omitted)); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1131 (S.D. Cal. 2023) ("[p]laintiffs plead that communications were intercepted in transit sufficient to survive dismissal under Rule 12(b)(6)" where they "allege that without their authorization Sharp intentionally installed Meta Pixel on its website and shared user's information with Meta in real time" (record citation omitted)); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1054 (N.D. Cal. 2025) (in case involving Pixel, finding "[p]laintiffs plausibly allege that [Meta] intercepted the communications while they were in transit."). Thus, unlike in *Valenzuela v. Keurig Green Mountain, Inc.*, *see* Mot. at 18 (citing 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) ["*Valenzuela I*"]), Plaintiffs "did not simply recite that there was real time interception, [they] added detail on how it occurs (through the code . . . embed[ded] on the website)," and alleged that "[d]ata from every use event [is] collected as it happens." *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978 & n.6 (C.D. Cal. 2023) ["*Valenzuela II*"] (record citation omitted) (distinguishing *Valenzuela I*).

The Court should thus find, like others have in similar cases, that Plaintiffs sufficiently allege their communications were intercepted "in transit." *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) ("with respect to Facebook Pixel, Plaintiff's allegations are more

than threadbare recitals of a cause of action's elements" where they allege "transmission is initiated by Facebook code and concurrent with the communications with the host website"); *Gray*, 2024 WL 5689566, at *7 ("Plaintiff alleges specific facts about when the purported interception occurred and how the transmission occurred contemporaneously, not after-the-fact" where he "alleges that when a user accesses a website hosting the Meta Pixel . . . Facebook's code 'directs the user's browser to contemporaneously send a separate message to Facebook's servers . . . contain[ing] the original GET request sent to the host website, along with additional data that the Facebook Pixel is configured to collect.'" (record quotation omitted)).

Meta's claim that "Plaintiffs do not allege that Meta read or learned—*i.e.*, substantively understood—the data while it was in transit," Mot. at 20, ignores that CIPA prohibits even just "*attempt[ing]* to read, or to learn the contents" of a communication, *see* Cal. Penal Code § 631(a). In any event, Plaintiffs sufficiently allege Meta both attempted to learn and in fact learned the contents of their communications. Meta "receives the content of website communications as the website user enters or generates the information, but before the website owner receives it." Compl. ¶ 69. It is part of Meta's business model to use this information in real-time "to help build user profiles," *id.* ¶ 136, and "sell targeted advertisements," *id.* ¶¶ 44, 53; *see also id.* ¶¶ 70-71. Meta would be unable to do so without "learn[ing] the contents" of user communications to determine what information to add to user profiles and which advertisements to target to each user. "Plaintiffs, thus, allege sufficiently [Meta] attempted to learn the contents of their communications." *See Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 863 (C.D. Cal. 2024) (requirement satisfied where plaintiffs "allege Defendants intercepted the Search Terms while they were in transit to the Team Websites and redirected them . . . so that they could be utilized by Defendants"); *see also Valenzuela II*, 686 F. Supp. 3d at 977 (where plaintiff alleged "embed[ded] code . . . enables [defendant] to secretly intercept in real time, eavesdrop upon, and store transcripts of messages," and defendant's "business model is to harvest data from communications," it was "plausible [to] claim that [defendant] intercepted [plaintiff's] messages and harvested data from them, which would almost certainly constitute reading, or attempting to read").

*Williams v. DDR Media, LLC*, is not contrary. *See* Mot. at 20 (citing 757 F. Supp. 3d 989, 994-95 (N.D. Cal. 2024)). That decision was reached at *summary judgment* where "*evidence* show[ed] that the data [defendant] receives is automatically subjected to an algorithm that transforms the data into an incomprehensible 'hash' that has no inherent substantive meaning, and that [defendant] does not retain the

15

original unhashed data in its servers." *Williams*, 757 F. Supp. 3d at 995 (emphasis added). In contrast, Plaintiffs allege Meta receives personally identifiable information that it stores on its own servers for years. *E.g.*, Compl. ¶¶ 5, 71-72.

**B.    Meta's Pixel Constitutes a Device (Applies to CIPA §§ 632 & 635)**

Meta seeks dismissal of the "Wiretap Act and CIPA Section 632 and 635 claims" because those statutes "require use or manufacture of a 'device,'" which it argues "does not encompass intangible source code like the Meta Pixel." Mot. at 2; *see also id.* at 16, 17-18, 21, 23. "However, this perspective is overly circumscribed because it views the computer code in a vacuum, separate and apart from the computer that executes it." *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1361 (S.D. Cal. 2024) (citing *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023) ("It is artificial to claim that software must be viewed in isolation from the computing device on which it runs and with which it is inseparable in regard to the challenged conduct.")). "All software . . . requires hardware to execute it." *Id.* at 1361-62 (citing *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1309 (Fed. Cir. 2008)). Because "software cannot function—much less collect and transmit data at hyper-frequent intervals to a third party—without hardware to run it," *see id.* at 1362, "[t]he majority of courts to consider this issue have entertained the notion that software may be considered a device," *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 956 (N.D. Cal. 2024) (quoting *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases)); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084-87 (N.D. Cal. 2015).

A Northern District court recently rejected Meta's "CIPA challenge [regarding] whether the Pixel is a 'device' under Section 632(a) because it is a piece of software." *Meta Platforms*, 690 F. Supp. 3d at 1080. Several more have found that "decision[ ] persuasive," reaching the same conclusion. *See Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sep. 26, 2024); *see also Yockey*, 745 F. Supp. 3d at 955; *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025); *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *11 (C.D. Cal. Oct. 4, 2024); *accord Gladstone*, 739 F. Supp. 3d at 856. And other courts have recently held Meta's Pixel is a "device" under multiple provisions of CIPA. *See In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1155 (N.D. Cal. 2025) ["*Tax Filing Cases II*"]; *L.B.*, 2025 WL 2899514, at *18 ("software . . . qualifies as a 'device' for . . . Section 632").

Meta's "cases are distinguishable," *see Meta Platforms*, 690 F. Supp. 3d at 1080 (distinguishing

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017), and *Google Location*, 428 F. Supp. 3d 185); *see also* Mot. at 17. Both involve a different provision of CIPA, Section 637.7, which applies only to a "device *attached to* a vehicle or other movable thing that reveals its location or movement," Cal. Penal Code §§ 637.7(a), (d) (emphasis added). *See Moreno*, 2017 WL 6387764, at *5-6; *Google Location*, 428 F. Supp. 3d at 193-96. *Moreno* found, even "[a]ssuming that a cellphone qualifies as 'a vehicle or other movable thing,' the [challenged] App is not 'attached to' the cellphone." 2017 WL 6387764, at *5. And the *Google Location* plaintiffs "d[id] not contest" *Moreno's* holding that "[s]oftware . . . are not 'devices'" "within the meaning of Section 637.7(d)." *See Google Location*, 428 F. Supp. 3d at 193 (record citation omitted; emphasis added) (quoting *Moreno*, 2017 WL 6387764, at *5). Those "decision[s] ha[ve] no bearing on the issue here." *See L.B.*, 2025 WL 2899514, at *17 (emphasis added); *see also Yockey*, 745 F. Supp. 3d at 955 n.6; *Gladstone*, 739 F. Supp. 3d at 857.

Since Meta is wrong and software *is* fixed in tangible form, its cherry-picked definitions requiring "*tangible* equipment," are irrelevant. *See* Mot. at 17-18. And other definitions of "device" contradict Meta's: "device" can be "'[a] scheme to trick or deceive; a stratagem or artifice,'" which "underscores that a device need not be a physical or tangible thing, but rather can be intangible," *see James*, 701 F. Supp. 3d at 958-59 (quoting Black's Law Dictionary (8th ed. 2004)). "[T]he Legislature itself evinced a desire that the CIPA's statutory protections should extend across the developing field of technology." *Yockey*, 745 F. Supp. 3d at 956. Similarly, "[t]he ECPA was passed . . . to 'update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies.'" *In re Google Inc. St. View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1078 (N.D. Cal. 2011) (quotation omitted). Interpreting "device" to include software "construe[s] the statutory language in accordance with its purpose." *Yockey*, 745 F. Supp. 3d at 956 (quoting *Burroughs v. Operating Eng'rs Loc. Union No. 3*, 686 F.2d 723, 727 (9th Cir. 1982)).

## C.   Meta "Uses" Pixel to Eavesdrop on Plaintiffs (Applies to CIPA §§ 632 & 638.51)

Meta is not off the hook for "using" Pixel in violation of CIPA Sections 632 and 638.51 just because it makes Pixel "publicly available for third parties to integrate into their websites," Mot. at 21; *see also id.* at 23 (arguing "*Meta* did not 'install or use' the Pixel"). "In Meta's view, it is the [Food Bank] websites who both install and use the Pixel while Meta . . . merely uses the data that it receives from the Pixel without

using the Pixel itself." *See Tax Filing Cases II*, 793 F. Supp. 3d at 1151.

> The problem with Meta's argument is that the complaint clearly asserts that Meta uses the Pixel. Plaintiffs generally allege that Meta provides the Pixel to the [Food Banks] who then install the Pixel on their websites. The Pixel tracks user activity on those websites and, as it tracks that activity, it transmits information in real time to Meta's servers in California, where the information is stored. Indeed, the complaint is replete with allegations that Meta uses the Pixel to intercept data sent between the user and the [Food Bank] websites and transmit that data back to its own servers. It is only after Meta has received that information from the Pixel that it can use that data to provide third-party websites with Meta's analytics services.

*See id.* at 1151-52 (citation modified); *see also* Compl. ¶¶ 5, 66-72, 78, 88. The Complaint thus "adequately alleges that Meta is using the Pixel to record and transmit that data to its servers in order to enable the Pixel's core value proposition." *Tax Filing Cases II*, 793 F. Supp. 3d at 1152; *see also Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 973 (C.D. Cal. 2023) (rejecting argument that "[p]laintiff has not alleged that [d]efendants used [TikTok's tracking technology], because individual website owners make the decision to employ the code and determine what data to disclose when they configure it"); *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *8 (N.D. Cal. Oct. 9, 2025) ("Mashable argues" it "cannot be liable because it was the third-party vendors . . . that installed and operated the trackers. This defense is also insufficient at this stage.").

Accordingly, the Court should find that, at this stage, it "is unable to resolve the parties' factual dispute about whether the websites' decisions break the causal chain from [Meta's] acts such that [Meta] [is] insulated from liability for [its] dissemination of the [Pixel] and [its] collection of the data [it] receive[s] from it." *See Griffith*, 697 F. Supp. 3d at 973 (denying motion to dismiss CIPA Section 632 claim).

**D.    None of Meta's Remaining Arguments Warrant Dismissal of Plaintiffs' CIPA Claims**

In addition to the arguments affecting several claims, addressed above, Meta makes arguments unique to Plaintiffs' claims under CIPA Sections 632, 635, and 638.51. Mot. at 20-24.

**i.    CIPA Section 632**

Meta argues Plaintiffs' CIPA Section 632 claim "fails because th[e] statute applies only to 'confidential communications,'" Mot. at 21 (quoting Cal. Penal Code § 632(c)), and Plaintiffs do not "allege an 'objectively reasonable expectation' that their actions were not being recorded," *id.* at 22. Relying on a memorandum opinion dealing with text messages, Meta claims this is because "information entered into forms on a website is, by definition, recorded," *id.* (citing *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025)). But Plaintiffs do not necessarily know what, if anything, is being recorded

18

when they interact with a website. And "[P]laintiff[s] only need[] to show a reasonable expectation that the conversation was not being simultaneously disseminated to an *unannounced second observer*," *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5 (N.D. Cal. Sep. 16, 2024) (citation modified and emphasis added), not that "nobody (including the [website]) would record the communications," *see* Mot. at 22 (quotation omitted).

"[G]iven the nature of the information collected," Compl. ¶ 92, including users' food insecurity, financial hardship, need for public assistance, and mobility and disability status, *id.* ¶¶ 24-29, which can be used to "cause individuals to face social stigma and shame" and to "target[ them] with predatory ads," *id.* ¶ 99, Plaintiffs "reasonably expected their data related to this personal and sensitive information to remain confidential," *id.* ¶ 62. "This is especially true given the Food Bank Defendants' representations that this information would remain private and confidential." Compl. ¶ 93; *see also id.* ¶¶ 39-40, 44-45, 49-55, 59-62, 146-47, 171, 173. Plaintiffs thus had an objectively reasonable expectation that their sensitive information would be kept private. *See M.G.*, 2024 WL 4219992, at *5 (since plaintiff "entered information about his mental health concerns and therapist preferences . . . it was reasonable for [him] to have an expectation of privacy").

### ii.    CIPA Section 635

"Under CIPA § 635, '[t]he crime lies in intentionally manufacturing the device, knowing that it *could be* primarily used for wiretapping. The statute does not require intent or knowledge that the device would actually be used unlawfully.'" *Yoon*, 2024 WL 5264041, at *8 (emphasis added) (quoting *United States v. Christensen*, 828 F.3d 763, 792 (9th Cir. 2015)). Pixel's "primary function is to deliver personalized advertisements to users by analyzing their browsing patterns and interactions." Compl. ¶ 67. "Meta knows . . . sensitive information is . . . being shared," *id.* ¶ 82, but "has not taken action," *id.* ¶ 83, because the information it intercepts "is highly valuable," *id.* ¶ 82. "[B]ecause collecting [Plaintiffs'] information would be helpful to Defendant and Defendant knowingly wanted to use that information . . . it is plausible that Defendant knew or intended its surveillance technology to be primarily used for wiretapping." *See Yoon*, 2024 WL 5264041, at *8. "That the Pixel is widely deployed is irrelevant to whether it could primarily be used for wiretapping." *Id.* (citing *Christensen*, 828 F.3d at 792); *see* Mot. at 22. And Meta's reliance on its Business Tools Terms is misplaced, *see* Mot. at 23, since those "policies limiting the use of the Pixel can

19

show that Defendant knew it could be used for wiretapping if used improperly as it addressed the potential for misuse." *Yoon*, 2024 WL 5264041, at *8.

Meta argues Plaintiffs do not have a private right of action to enforce CIPA Section 635 because they have not been "'directly injured' by Meta's 'manufacture' or 'furnishing' of the code." Mot. at 23 (citing *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021)). That is just a repeat of its argument it did not use Pixel. *See Yoon*, 549 F. Supp. 3d at 1085 ("Session Replay did not directly injure Yoon" because she "alleges that *Lululemon's* use of Session Replay injured her" (emphasis added; original emphasis omitted)). Here, Plaintiffs allege *Meta* used Pixel to collect their information. *See supra* Section IV.C.

### iii.    CIPA Section 638.51

Meta argues Pixel is not a pen register or trap and trace device because those things "collect[] 'dialing, routing, addressing, or signaling information' . . . 'but *not* the contents of a communication,'" Mot. at 23 (quotation omitted; emphasis added), and Plaintiffs allege Pixel collects both, *see id.* (quoting Compl. ¶ 159). Courts have rejected this interpretation of Section 632, which would create a loophole for defendants to exploit, as contrary to CIPA's purpose. "[T]here is no doubt that the California Legislature, in enacting CIPA, intended 'to protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society.'" *Tax Filing Cases II*, 793 F. Supp. 3d at 1153 (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002)). Thus, the "Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests." *Id.* (citation modified and quotation omitted).

> Given CIPA's purpose to protect Californians' privacy, it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications. Under Meta's interpretation of the statute, an entity could escape liability under CIPA's pen register provisions by combining the functionality of a wiretap with that of a pen register.

*Id.* at 1153-54. In other words, "Meta's proposed loophole would allow any entity to avoid CIPA's pen register provisions simply by employing more intrusive forms of technology." *Id.* at 1154. In light of:

> CIPA's purpose to protect Californians . . . from either wiretaps or pen registers, the better interpretation of Section 638.51 is that it defines a pen register as any device that "records dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted," but not a device that records *only* "the contents of communications."

20

*Id.* at 1154-55 (emphasis added). This Court should join the many other courts holding similarly. *See*, *e.g.*, *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *12 (N.D. Cal. Aug. 29, 2025); *Drummer*, 2025 WL 3190656, at *5 (C.D. Cal. Oct. 22, 2025). The Court should also reject Meta's assertion that "'PII' and 'sensitive financial information' are not 'addressing information,'" *see* Mot. at 24, since Plaintiffs allege this information includes users' home addresses and current locations. Compl. ¶¶ 5, 24-28, 61 84, 87.

**E.      Meta's Conduct Falls Within the Crime-Tort Exception to ECPA's Consent Defense**

Meta argues "Plaintiffs cannot state their Wiretap Act claim" because "the food banks necessarily consented to Meta's receipt of data," Mot. at 16 (record citation and citations omitted). As Meta acknowledges, however, the Act "provides that a party's consent does not defeat a wiretapping claim where a communication 'is intercepted for the purpose of committing any criminal or tortious act.'" *Id.* (quoting 18 U.S.C. § 2511(2)(d)). That applies here because "Meta intentionally intercepted the contents of Plaintiffs' and Class Members' electronic communications in which they had a reasonable expectation of privacy, for unauthorized and improper purposes," Compl. ¶ 165, including the invasion of Plaintiffs' privacy, *see*, *e.g.*, *id.* ¶¶ 98-101, 170-79, "creating customized audiences for its advertising business," Compl. ¶ 71, and selling Plaintiffs' sensitive information to third parties without their consent, *see id.* ¶ 7, 102-108. The Food Banks' consent is therefore not a defense to Plaintiffs' Wiretap Act claim. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1068 (N.D. Cal. 2021) ["*Brown I*"] ("consent is not a defense to Plaintiffs' Wiretap Act claim because their communications were allegedly intercepted for the purpose of associating their data with user profiles, which is a criminal or tortious act in violation of the Constitution"); *Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) ("subsequent disclosure of the contents of the intercepted conversations" satisfies the Act's exception); *In re Toys R Us, Inc., Priv. Litig.*, 2001 WL 34517252, at *8 (N.D. Cal. Oct. 9, 2001) (exception applied where defendant "intercepted plaintiffs' communications . . . 'to spy' on plaintiffs and collect their personal information without consent or compensation . . . 'thereby obtaining detailed, free market research and consumer analysis'" (record citation omitted)).

Meta contends the crime-tort exception cannot apply because its motivation was "to make a 'profit.'" *See* Mot. at 17 (citing Compl. ¶¶ 4, 7). But the "exception applies even when a defendant intercepts data for the purpose of financial gain." *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *6 (W.D. Wash.

21

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
Plaintiffs' Opposition to Meta's Motion to Dismiss the Complaint

Nov. 14, 2024) ("there is no bright-line rule insulating financial motives from the crime-tort exception" (citations omitted)); *see also Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("[t]he existence of [a] lawful purpose would not sanitize a tape [recording] that was also made for an illegitimate purpose"). "Indeed, the use of intercepted communications is often the criminal or tortious purpose." *Castillo*, 2024 WL 4785136, at *5 (citing *Sussman*, 186 F.3d at 1202). Because "Plaintiffs allege that [Meta] not only intercepted their data, but also used their data to generate targeted advertisements for financial gain," the crime-tort exception applies and the Food Banks' consent does not bar Plaintiffs' claims. *See id.* (citing, *inter alia*, *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 2037404, at *4 (C.D. Cal. Apr. 11, 2024)).

## V.    PLAINTIFFS ALLEGE CLAIMS FOR VIOLATION OF THEIR CALIFORNIA COMMON LAW AND CONSTITUTIONAL PRIVACY RIGHTS

"Claims for intrusion upon seclusion and invasion of privacy under the California Constitution have 'similar elements,' and courts therefore 'consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive.'" *Gabrielli*, 2025 WL 2494368, at *8 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) ["*Facebook Tracking Litig.*"]); *accord Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998) (intrusion upon seclusion); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994) (invasion of Constitutional right to privacy). "A particular class of information is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Hill*, 7 Cal. 4th at 35. The first element is thus satisfied by alleging a defendant "obtained unwanted access to data about[] the plaintiff," so long as "the plaintiff had an objectively reasonable expectation of seclusion or solitude in the . . . data source." *Shulman*, 18 Cal. 4th at 232. Moreover, "the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant." *Hill*, 7 Cal. 4th at 37.

As for the second, "determining offensiveness requires consideration of all the circumstances of the intrusion, including its degree and the intruder's motives and objectives." *Shulman*, 18 Cal. 4th at 236 (internal quotation omitted). "[C]ourts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Gabrielli*, 2025 WL 2494368, at *8 (quoting *Facebook*, 402 F. Supp. 3d at 797). Only if allegations "show no reasonable expectation of privacy" can offensiveness

22

"be adjudicated as a matter of law." *Hill*, 7 Cal. 4th at 40. Allegations of a defendant's "cavalier disregard for ordinary citizens' rights of privacy" satisfy the "highly offensive" element. *See Shulman*, 18 Cal. 4th at 236 (internal quotation omitted).

Meta argues Plaintiffs' invasion of privacy claims fail because they inadequately allege both a reasonable expectation of privacy and a sufficiently serious intrusion. Mot. at 24-25. That is wrong.

Plaintiffs allege their reasonable expectation of privacy in detail. *See generally* Compl. ¶¶ 39-40, 44-45, 49-53, 58-62, 93, 95, 171-74, 182. And as discussed above, Meta's Terms of Service—which are not even properly before the Court—do not undermine those allegations. *Cf. Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1086 (N.D. Cal. 2025) (finding defendant's "disclosures" in its privacy policy "have no effect on [plaintiffs'] reasonable expectations of privacy" (citing *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 601 (N.D. Cal. 2021) ("[T]he mere existence of a privacy policy is not dispositive because users might lack actual or constructive notice of the policy."))). And Meta's Business Tools Terms *bolster* Plaintiffs' allegations, showing that the type of information Meta allegedly intercepts includes that for which there are "well-established social norms recogniz[ing] the need to maximize individual control over its dissemination," *see Hill*, 7 Cal. 4th at 35; *see also* Compl. ¶ 82.

In addition to full names, ages, home addresses, email addresses, phone numbers, and current locations, Plaintiffs allege Meta intercepted information about health, disability, mobility, and pregnancy status; financial condition, financial hardship, and food insecurity, including bank account and tax amounts; eligibility and status of benefits; citizenship and refugee status; and family composition. *See* Compl. ¶¶ 24-29, 37, 42, 47, 54-55, 61, 84-88. These are "patently sensitive items such as medical and financial records," *see Alch v. Super Ct.*, 165 Cal. App. 4th 1412, 1427 (2008), making Meta's cases easily distinguishable. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d at 1233  (The "collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion.").

In *In re iPhone Application Litig.*, the "information allegedly disclosed," which the court found "d[id] not constitute an egregious breach of social norms" "included the unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices." 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). The "personal data" disclosed was "the user's gender, age, zip code and time zone," *see id.* at 1050. But, unlike here, nothing highly personal or sensitive was intercepted alongside this information. Similarly, in

23

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS THE COMPLAINT

*Hammerling v. Google LLC*, the plaintiffs did "not allege that the data allegedly collected by Google [wa]s sufficiently specific or personal, and its collection sufficiently harmful, to be highly offensive." 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022). That is because the information allegedly collected from Android phones "include[d] 'installation metrics' for non-Google apps, 'the average number of days users were active on any particular app,' and a users' total time spent on a non-Google app." *Id.* at 1078 (record citation omitted).

Contrary to cases involving "routine commercial behavior," *see Hammerling*, 615 F. Supp. 3d at 1090 (citations omitted), courts find allegations of the type of information intercepted here plausibly pleads a highly offensive intrusion. *See L.B.*, 2025 WL 2899514, at *20 (plaintiffs pled "highly offensive" conduct because "the data here is medically-related"); *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *14 (N.D. Cal. Oct. 16, 2025) ("some of the data at issue is or may be highly sensitive, especially 'browsing history . . . user input data . . . and/or geolocation data'" (internal record citations omitted)); *Tenet Healthcare*, 789 F. Supp. 3d at 843-44 (alleged disclosure of plaintiffs' "personal, sensitive medial information" stated claim for "highly offensive" conduct); *Gaige*, 2025 WL 559719, at *7-8 (similar); *cf. SCC Acquisitions, Inc. v. Super. Ct.*, 243 Cal. App. 4th 741, 754 (2015) ("Personal financial information comes within the zone of privacy protected by . . . the California Constitution." (quotation omitted)); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025) ["*Motorola Mobility*"] ("the Court cannot . . . conclude as a matter of law that the alleged tracking of [plaintiff's] IP address, browsing history, and user preferences is not highly offensive").

Meta also asserts Plaintiffs allege no deceptive behavior, Mot. at 25, but they allege Pixel immediately begins tracking, even before users consent to the use of cookies, Compl. ¶¶ 38, 48, and continues to track users, even when they expressly decline them, *id.* ¶ 43. "Courts have held that plaintiffs have a reasonable expectation of privacy where data is collected without their consent." *Walsh*, 2025 WL 2939229, at *14 (quoting *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021)), and "conduct is more likely to be 'highly offensive' where the defendant 'surreptitious[ly]' collects sensitive information," *Hammerling*, 615 F. Supp. 3d at 1090 (quotation omitted); *see also Gabrielli,* 2025 WL 2494368 at *9 ("highly offensive" invasion plausible where, "after [Plaintiff] rejected all cookies, [Defendant] continued to . . . . permit[] the Third Parties to track and collect Plaintiff's private communications" (record citation omitted; citation modified)). Ultimately, whether Meta's "tracking and collection practices could highly

24

offend a reasonable individual is an issue that cannot be resolved at the pleading stage," but "Plaintiffs have identified sufficient facts to survive a motion to dismiss." *See Facebook Tracking Litig.*, 956 F.3d at 606.

## VI. PLAINTIFFS ALLEGE META WAS UNJUSTLY ENRICHED

Because Plaintiffs sufficiently state CIPA, ECPA, and invasion of privacy claims, the Court should reject Meta's argument their "unjust enrichment claim fails because their other claims all fail," Mot. at 25. Meta's argument that "an unjust enrichment claim 'does not lie [because] the parties have an enforceable express contract,'" *id.* (quotation omitted), again improperly depends on facts outside the Complaint. "Meta has not established that the parties had a contract" in the first instance. *See Tax Filing Cases I*, 724 F. Supp. 3d at 1008-1009 (citation omitted). Further, "plaintiffs may plead this claim as an alternative at this juncture, even if [a] contract claim" is alleged, *Meta Platforms*, 690 F. Supp. 3d at 1086 (citation omitted). Meta's recycled consent argument, *see* Mot. at 25, should be rejected for reasons already discussed.

Finally, Meta's assertion that the Complaint does "not show that Plaintiffs retained any stake in Meta's profits," Mot. at 25 (citation omitted), is belied by allegations Plaintiffs have "equitable, legal, and financial interest[s] in their PII and sensitive financial information, and conferred an economic benefit on Meta in the form of profits resulting from the use of their . . . information to improve Meta's marketing efforts and financial position, including through targeted advertising," Compl. ¶ 205; *see also id.* ¶¶ 102-108. Plaintiffs have thus stated a claim for unjust enrichment. *See Greenley*, 684 F. Supp. 3d at 1038 (claim viable where complaint alleges plaintiff "conferred a benefit on Defendant through the use and dissemination of Plaintiff's . . . personal information"); *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *4 (W.D. Wash. Dec. 19, 2023) (plaintiff pleaded "an entitlement to Qualtrics' profits" where "she allege[d] that her personal data carries financial value[,] cite[d] to numerous articles and studies describing the growing market for personal data," and alleged "Qualtrics profited from this data and, in fact, used the data for targeted advertising" (record citation omitted)); *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 968 (N.D. Cal. 2021) (claim viable where plaintiffs "offered at least one example of the financial value of their intercepted personal information" by alleging they received targeted advertising).

## CONCLUSION

The Court should deny Meta's motion, but if the Court is inclined to grant the motion in any respect, Plaintiffs request dismissal be without prejudice and with leave to amend.

Dated: January 7, 2026                    Respectfully Submitted,

/s/ Melanie R. Monroe
**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
DANIEL E. SACHS
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiffs***

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO META'S MOTION TO DISMISS THE COMPLAINT