**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
DANIEL E. SACHS (SBN 361027)
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATASSIA TIMOTHEE, TOMMY DIEP, ESPERANZA REYES, MARIAELENA BURCIAGA, and STACY PENNING on behalf of themselves, all others similarly situated, and the general public,<br><br>      Plaintiffs,<br><br>      v.<br><br>META PLATFORMS, INC., SACRAMENTO FOOD BANK AND FAMILY SERVICES, LOS ANGELES REGIONAL FOOD BANK, CENTRAL CALIFORNIA FOOD BANK, and SAN FRANCISCO FOOD BANK d/b/a SAN FRANCISCO-MARIN FOOD BANK,<br><br>      Defendants. | Case No. 3:25-cv-05106-LB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT**<br><br>**[Dkt. No. 44]**<br><br>Judge: Hon. Laurel Beeler<br>Date: March 26, 2026<br>Time: 9:30 a.m.<br>Dept.: Courtroom B, 15th Floor |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ii

STATEMENT OF ISSUES TO BE DECIDED .......................................................................................1

INTRODUCTION ..............................................................................................................................2

FACTS ...........................................................................................................................................2

ARGUMENT ....................................................................................................................................5

    I.     PLAINTIFF HAS ARTICLE III STANDING .................................................................5

         A.     Plaintiff Alleges a Concrete Injury Traceable to Defendant........................................5

         B.     Plaintiff Has Standing to Seek Injunctive Relief..........................................................9

    II.    PLAINTIFF PLAUSIBLY STATES CLAIMS AGAINST DEFENDANT .........................11

         A.     Defendant Has Not Shown Plaintiff Consented to Meta's Eavesdropping ...............11

         B.     Plaintiff Plausibly Alleges Defendant Violates CIPA ................................................14

             i.     Defendant Violates CIPA Section 631(a), Clause Four.................................14

                  a.     Plaintiff Adequately Alleges Meta's Interception of "Contents" ......14

                  b.     Plaintiff Alleges Interception of His Communications While "in Transit" ...............................................................................................17

             ii.    Defendant Violates CIPA Section 638 .........................................................19

         C.     Plaintiff Plausibly Alleges Defendant's Intrusion Upon His Seclusion ....................21

         D.     Plaintiff Plausibly Alleges Defendant Was Negligent...............................................22

CONCLUSION................................................................................................................................25

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

**TABLE OF AUTHORITIES**

**Cases**

*Alch v. Super Ct.*,
165 Cal. App. 4th 1412 (2008) ..........................................................................................8

*Alexandria Real Est. Equities, Inc. v. RUNLABS (UK) Ltd.*,
2019 WL 4221590 (N.D. Cal. Sep. 5, 2019) ......................................................................1

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............................................................................23

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) ................................................................................8

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........................................................................11, 13

*C.M. v. United States*,
699 F. Supp. 3d 809 (D. Ariz. 2023) ................................................................................24

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ..........................................................................................10

*Camplisson v. Adidas Am., Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ..................................................................20

*Chapman v. Pier 1 Imports Inc.*,
631 F.3d 939 (9th Cir. 2011) ........................................................................................9, 10

*Corales v. Bennett*,
567 F.3d 554 (9th Cir. 2009) ............................................................................................22

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ............................................................................18

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ..........................................................................9, 10

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ..................................................................18

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ..............................................................................................9

*Dent v. Nat'l Football League*,
902 F.3d 1109 (9th Cir. 2018) ..........................................................................................23

ii

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

*Doe v. County of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024)................................................................................13

*Doe v. Eating Recovery Ctr. LLC*,
--- F. Supp. 3d ----, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025).....................................14, 15

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025).......................................................................13, 16

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .............................................................................23

*Doe v. Meta Platforms*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ...............................................................................13, 17

*Doe v. Post Acute Med., LLC*,
2025 WL 511069 (M.D. Pa. Feb. 14, 2025) ...............................................................................16

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025)..........................................................................................18

*Drummer v. CoStar Grp., Inc.*,
2025 WL 3190656 (C.D. Cal. Oct. 22, 2025)..............................................................................21

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ................................................................................17

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024).................................................................................18

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .................................................................................................................20

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ......................................................................21, 22

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025)..............................................................................11

*Garcia v. Bandai Namco Ent. Am. Inc.*,
2025 WL 2451033 (C.D. Cal. Aug. 7, 2025)...............................................................................12

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ...................................................................8, 16, 17

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......................................................................................17

*Gray v. Luxottica of Am., Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) ...................................................................18, 19

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ...................................................................................16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................................................22

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ............................................................................................................21, 22

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................................................................................9

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ...........................................................................................14, 22

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ...............................................................13, 22, 23, 24

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................................................................................................15

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................................................................................13

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ..................................................................................21

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................................................................................13

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. Mar. 25, 2024) ...............................................................23, 24

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) .............................................................................20, 21

*In re San Francisco 49ers Data Breach Litig.*,
2024 WL 3849336 (N.D. Cal. Aug. 15, 2024) .........................................................................22

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...................................................................................18

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .................................................................................................15

iv

*J'Aire Corp. v. Gregory,*
   24 Cal. 3d 799 (1979) ...................................................................................................................23, 24

*Javier v. Assurance IQ, LLC,*
   2021 WL 940319 (N.D. Cal. 2021) .............................................................................................12

*Khamooshi v. Politico LLC,*
   786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........................................................................................9

*Mata v. Zillow Grp., Inc.,*
   2024 WL 5161955 (S.D. Cal. Dec. 18, 2024)..........................................................................17, 18

*Matera v. Google Inc.,*
   2016 WL 5339806 (N.D. Cal. Sep. 23, 2016) ..........................................................................7, 10

*McCoy v. Alphabet, Inc.,*
   2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .................................................................................13

*Mikulsky v. Noom, Inc.,*
   682 F. Supp. 3d 855 (S.D. Cal. 2023)...........................................................................................8

*Mirmalek v. Los Angeles Times Commc'ns LLC,*
   2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)..............................................................................11

*Mitchener v. CuriosityStream, Inc.,*
   2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .................................................................................9

*Moody v. C2 Educ. Sys. Inc.,*
   742 F. Supp. 3d 1072 (C.D. Cal. 2024) ......................................................................................20

*Popa v. Microsoft Corp.,*
   153 F.4th 784 (9th Cir. 2025) .......................................................................................................8

*Price v. Carnival Corp.,*
   2024 WL 221437 (S.D. Cal. Jan. 19, 2024)................................................................................15

*R.C. v. Walgreen Co.,*
   733 F. Supp. 3d 876 (C.D. Cal. 2024) ........................................................................................23

*Ramos v. Gap, Inc.,*
   2025 WL 2144837 (N.D. Cal. July 29, 2025)..............................................................................17

*Romero v. Securus Techs., Inc.,*
   216 F. Supp. 3d 1078 (S.D. Cal. 2016).........................................................................................7

*Sanchez v. Cnty. of San Diego,*
   2003 WL 25655642 (S.D. Cal. Mar. 10, 2003) .............................................................................8

v

*Sanchez v. Cnty. of San Diego*,
    464 F.3d 916 (9th Cir. 2006) ...................................................................................................8

*Shah v. Cap. One Fin. Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..................................................................................19

*Shah v. Fandom, Inc.*,
    754 F. Supp. 3d 924 (N.D. Cal. 2024) ..............................................................................12, 13

*Shleffar v. Super. Ct.*,
    178 Cal. App. 3d 937 (1986) ...................................................................................................8

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) ..........................................................................................................22

*Smith v. Google, LLC*,
    735 F. Supp. 3d 1188 (N.D. Cal. 2024) ................................................................................16

*Spokeo, Inc. v. Robbins*,
    136 S. Ct. 1540 (2016) .............................................................................................................7

*St. Aubin v. Carbon Health Techs., Inc.*,
    2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)..........................................................................19

*Stasi v. Inmediata Health Grp. Corp.*,
    501 F. Supp. 3d 898 (S.D. Cal. 2020)....................................................................................24

*Sys. Prods. & Sols., Inc. v. Scramlin*,
    2014 WL 3894385 (E.D. Mich. Aug. 8, 2014).......................................................................15

*Tanner v. Acushnet Co.*,
    2023 WL 8152104 (C.D. Cal. Nov. 20, 2023).......................................................................17

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)..................................................................................................................7

*Valenzuela v. Keurig Green Mountain, Inc.*,
    674 F. Supp. 3d 751 (N.D. Cal. 2023) ...................................................................................19

*Valenzuela v. Nationwide Mut. Ins. Co.*,
    686 F. Supp. 3d 969 (C.D. Cal. 2023) ...................................................................................19

*Walsh v. Dollar Tree Stores, Inc.*,
    2025 WL 2939229 (N.D. Cal. Oct. 16, 2025)........................................................................21

*Wiley v. Universal Music Grp., Inc.*,
    2025 WL 3654085 (N.D. Cal. Dec. 17, 2025)........................................................................15

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

*Yoon v. Meta Platforms, Inc.*,
  2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ................................................................17

**Statutes**

18 U.S.C. § 2510(8) ...................................................................................................................14

18 U.S.C. § 2725(4) .....................................................................................................................8

Cal. Penal Code § 631(a) ................................................................................................1, 14, 23

Cal. Penal Code § 638.50(b) ......................................................................................................20

Cal. Penal Code § 638.50(c) .......................................................................................................20

Cal. Penal Code § 638.51 .............................................................................................................1

Cal. Penal Code § 638.51(a) .......................................................................................................20

Cal. Penal Code § 638.51(b) .......................................................................................................11

Cal. Penal Code § 638.51(b)(5) ..................................................................................................11

Cal. Welf. & Inst. Code § 10850 .............................................................................................8, 23

Cal. Welf. & Inst. Code § 10850(b).............................................................................................8

**Rules**

N.D. Cal. Civ. L.R. 7-2(b) ...........................................................................................................1

N.D. Cal. Civ. L.R. 7-4(a)(3) .......................................................................................................1

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>[1]

1.      Whether Plaintiff Stacy Penning has alleged a sufficient privacy interest for standing and to state claims where he alleges Meta intercepted sensitive information in the form of his disability status, food insecurity, and use of social services.

2.      Whether Mr. Penning has alleged a real and immediate threat of future injury sufficient to confer standing to seek injunctive relief.

3.      Whether Defendant has proven Mr. Penning consented to the specific practices he challenges, such that the Court should find his claims barred by consent.

4.      Whether the Complaint pleads a plausible violation of clause four of Section 631(a) of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a), because it adequately alleges Defendant aided Meta's interception and use of the contents of Mr. Penning's communications while they were in transit.

5.      Whether the Complaint pleads a plausible violation of CIPA Section 638, Cal. Penal Code § 638.51, because it adequately alleges Defendant installed a pen register or trap and trace device on its website without first obtaining a court order.

6.      Whether the Complaint adequately pleads a serious intrusion so as to state plausible claims for common law invasion of privacy.

7.      Where state law requires Defendant to maintain the confidentiality of Mr. Penning's information and where Defendant has further promised to maintain its confidentiality, whether Plaintiff has sufficiently alleged a duty of care and resulting injury from Defendant's breach of that duty so as to state a plausible claim for negligence against Defendant.[2]

---

[1] In violation of N.D. Cal. Civ. L.R. 7-2(b) and 7-4(a)(3), Defendant's Motion fails to include a Notice of Motion and Statement of Issues. *See Alexandria Real Est. Equities, Inc. v. RUNLABS (UK) Ltd.*, 2019 WL 4221590, at *1 n.1 (N.D. Cal. Sep. 5, 2019) (Koh, J.) (admonishing defendant, "[f]uture briefs that fail to comply . . . will be stricken").

[2] Plaintiff is no longer pursuing a claim under the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq. See* Dkt. No. 1, Compl. ¶¶ 193-202; Dkt. No. 44, SFMFB's Mot. to Dismiss ("Mot.") at 23-24.

**INTRODUCTION**

Defendant provides no salient reason for dismissal. Because Plaintiff alleges Defendant disclosed, without his consent, sensitive and confidential information about his disability status, food insecurity, and use of social services, he adequately alleges a reasonable expectation of privacy for standing and to state statutory and common law invasion of privacy claims. Plaintiff has also alleged a sufficient threat of future injury for injunctive relief standing. Given the nature of the information and Defendant's surreptitious behavior, including disclosing the information to Meta without Plaintiff's consent, Plaintiff has also alleged a sufficiently serious intrusion to state common law invasion of privacy claims. And although Defendant claims Plaintiff consented, it fails to carry its burden of showing Plaintiff consented to the specific practices challenged. Plaintiff has plausibly alleged Defendant's violation of CIPA Section 631, because he has plausibly alleged Meta's interception of the contents of his communications with Defendant while they were in transit. And Plaintiff has plausibly alleged Defendant's violation of CIPA Section 638 by alleging Pixel's installation on Defendant's website acts as a pen register or trap and trace device in violation of the statute. Finally, Plaintiff has plausibly alleged a duty of care and injury, so as to state a plausible claim of negligence against Defendant. Accordingly, the Court should deny Defendant's Motion to Dismiss.

**FACTS**

Defendant "is a non-profit organization founded in 1987 that distributes over 1 million meals each week to residents in San Francisco and Marin Counties." Compl. ¶ 56. "It is the largest distributor of food to low-income families and individuals in San Francisco and Marin Counties," delivering "groceries to over 8,500 households with 'low mobility'" in 2024. *Id.* (citation omitted). "In connection with providing access to food," Defendant operates a website providing "resources including maps to locate local food banks and food distribution centers," *id.* ¶ 57. "To search for food distribution stations on the [Defendant's] website, users are required to answer personal questions that reveal" their "location, reasons a user is seeking assistance," and "their personal health/disability status, age group, and zip code . . . ." *Id.* ¶ 61.

"In violation of" several privacy laws, however, Defendant "incorporate[s] Meta's tracking technology, the Meta Tracking Pixel ('Pixel'), on [its] website[]," which Defendant "know[s] allows Meta to contemporaneously intercept, and subsequently sell, vast quantities of users' sensitive financial and personal information . . . without their knowledge or consent." *Id.* ¶ 2; *see also id.* ¶ 6 (Defendant "ha[s]

2

incorporated the Pixel onto [its] website[],” which has “caused Plaintiff['s] and other Class Members’ confidential communications, [personally identifying information (‘PII’)], and sensitive financial information to be intercepted by and sent to Meta,” and Defendant “knew that by embedding [its] website with the Pixel, [it] w[as] permitting Meta to intercept and use Plaintiff['s] and other Class Members’ PII, including sensitive financial information.”); *id.* ¶ 63 (Defendant “intentionally incorporated the Pixel into its website, allowing Meta to intercept . . . Class Members’ data, including highly sensitive personal, medical, and financial information”).

Meta’s “primary function is to deliver personalized advertisements to users by analyzing their browsing patterns and interactions.” *Id.* ¶ 67. Thus, “[t]he vast majority of Meta’s revenue, approximately 98%, comes from advertising.” *Id.* ¶ 66. Pixel “is a snippet of code that Meta offers for free which is then embedded on a third-party website” and “tracks a user’s activity in real-time,” *id.* ¶ 68. “As soon as a user takes any action on a webpage” embedded with Pixel, its code “re-directs the contents of the user’s communications to Meta while the communication between the user and website provider is still occurring.” *Id.* As a result, “Meta receives the content of website communications as the website user enters or generates the information, but before the website owner receives it.” *Id.* ¶ 69.

With Pixel, “Meta intercepts each page a user visits, what buttons they click, as well as specific information they input into the website, and what they searched,” sending “each of these pieces of information to Meta in real time with users’ PII.” *Id.* ¶ 72. And “if a user is logged into their Facebook or Instagram account when they visit a Food Bank Defendant’s website, Meta receives third-party cookies allowing Meta to link the data . . . to the specific Facebook or Instagram user.” *Id.* ¶ 73. The data is then “used to create ‘custom audiences’ to target the user, as well as other Facebook and Instagram users who match that audience’s criteria.” *Id.* ¶ 78.

Before filing the Complaint, Plaintiff Stacy Penning “visited the San Francisco Food Bank website on several occasions and used the website to access the ‘Find Food’ map, which included answering multiple questions related to his location, age, disability status, mobility status, and urgency of his need for food assistance.” *Id.* ¶ 28. In doing so, he “communicated [his] intent to receive nutrition assistance with only the individual [Defendant] as the intended recipient[] of such communications.” *Id.* ¶ 29.

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS’ OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK’S MOTION TO DISMISS THE COMPLAINT

On Defendant's website, Pixel "tracks and intercepts user interactions, such as with its food locator, which requires the user to reveal" information such as "their zip code" and "sensitive medical information about themselves," *id.* ¶ 87. It was "[u]nbeknownst to" Mr. Penning, however, that Defendant "allowed Meta to intercept this data, revealing [his] sensitive financial condition[]," and allowing Meta to "associate[] the data with [his] Meta account[] and other personal information to target [him] with advertisements." *Id.* ¶ 30. As a result of this intrusion, "after visiting the [Defendant's website[]," Mr. Penning "received several targeted advertisements relating to [his] sensitive financial information or status." *Id.*

People who are "food insecure [are] more likely to experience poor emotional health, including depression, anxiety, and stress," which can cause them "to face social stigma and shame," putting them "in uniquely vulnerable positions within wider society, which is why those facing food insecurity are often suggested by behavioral health professionals to be treated with special dignity and discretion." *Id.* ¶ 99 (citation omitted). But Mr. Penning "was reminded of [his] hardship and further stigmatized when [he] w[as] repeatedly targeted with ads directed at exploiting [his] financial hardship[] after visiting the [Defendant's] website[]." *Id.* ¶ 100.

Although Defendant's website "contains a consent banner," *id.* ¶ 58, it is ineffective for several reasons. First, the "banner blends in with the bottom of the homepage," and "users have no options to reject cookies," so that Defendant "fails to prominently and conspicuously provide a functional disclosure and opportunity to opt out of such tracking . . . ." *Id.* And Defendant did not require Plaintiff or others to "opt-in or opt-out for the Pixel's data collection . . . before it began tracking and intercepting user data." *Id.* ¶ 90.

Moreover, Defendant's Privacy Policy "misrepresents and omits information related to how it treats user data." *Id.* ¶ 59. For example, "the policy states that it 'does not sell or rent donor names and addresses with any third parties for any reason other than if compelled by a legal action' yet remains silent about user data." *Id.* And it "further omits critical information, stating it 'will not sell or rent the information you provide to us in any way that has not been specified in our privacy policy.'" *Id.* In the section of its Privacy Policy "which purports to explain cookie use," however, Defendant "only discloses that it 'collect[s] the following information about your computer configuration: browser type, operating system, IP address, and URL of the web page you were on just prior to visiting the [Defendant's] website.'" *Id.* ¶ 60 (first alteration

4

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

in original). Defendant "further misrepresents the nature of the Pixel by claiming that '[t]his information will not reveal, nor is it associated with your personal identity.'" *Id.* (alteration in original).

Given Defendant's "representations, omissions, and the sensitivity of medical information and information pertaining to financial hardship and personal food insecurity, users like Plaintiff and other Class Members reasonably expected their data related to this personal and sensitive information to remain confidential." *Id.* ¶ 62. And Plaintiff "had no way of knowing" Defendant was "disclosing, and Meta was intercepting, [his] user data including sensitive financial . . . information, when [he] engaged with" Defendant's "website, including using the food locator maps . . . because the software is . . . inconspicuously incorporated in the background." *Id.* ¶ 91. Thus, Defendant "fail[ed] to sufficiently, accurately, and completely inform consumers, like Plaintiff and other Class Members, of the categories of their personal information collected, the purposes for such collection, and whether that information is sold or shared," including the "third parties to whom it discloses" users' "PII and sensitive financial information," *id.* ¶ 64.

## ARGUMENT

### I.     PLAINTIFF HAS ARTICLE III STANDING

#### A.     Plaintiff Alleges a Concrete Injury Traceable to Defendant

Defendant lodges both factual and facial attacks on Mr. Penning's Article III standing. *See* Mot. at 4-7. Neither warrants dismissal.

Defendant's factual attack on Mr. Penning's standing rests entirely on the declaration of Joshua R. Thomas, a web developer for Defendant. *See* Dkt. No. 44-2, Decl. of Joshua R. Thomas ("Thomas Decl.") ¶ 2; Mot. at 5-6. According to Mr. Thomas, only when a website user enters a zip code from San Francisco or Marin counties is the "search" button on the Find Food tool "enabled and the user . . . permitted to click through to the search results," thereby "submit[ting] information regarding age, disability status, mobility issues, [and] food access to" Defendant. Thomas Decl. ¶¶ 6, 8. Even if true, this does not deprive Mr. Penning of standing for two independent reasons.

First, it can be inferred from the Complaint that Mr. Penning entered a San Francisco or Marin County zip code. He "visited the San Francisco Food Bank website on *several occasions* and used the website to *access* the 'Find Food' map," Compl. ¶ 28. "Access[ing]" the map requires enabling the search button with a San Francisco or Marin County zip code, and it makes little sense to return to a website

5

multiple times if you know it will not provide access to the services one seeks. Nor does this mean Mr. Penning "lied about his home ZIP code or county of residence," as Defendant claims. Mot. at 6 n.4. The website places no requirements or restrictions that only a *home* address be used, simply asking users if they "Need Help?" and want to "Find Food."[3] Users are asked to respond by clicking on their food assistance need, with the following screen simply stating, "Please enter zip code," or "Click here if zip code is unknown," in which case the user can manually click on either "San Francisco County" or "Marin County."[4]

Further, in response to the FAQ, "Who qualifies for food from the San Francisco-Marin Food Bank?" Defendant explains, "*Anyone who considers themselves in need of food* qualifies for assistance from Food Bank programs and pantries. It is important to us that anyone who is hungry be able to access food with dignity—without having to prove their income or household circumstances."[5] Finally, that Mr. Penning used the zip code of where he worked, rather than lived, does not mean he was "no[t] harm[ed]," since, contrary to Defendant, it is still his "accurate personal information." *See* Mot. at 6 n.4. Regardless, Contra Costa County, where Mr. Penning currently resides, is immediately adjacent to both San Francisco and Marin counties, and with the other information being sent to Meta, including Mr. Penning's IP address, Compl. ¶ 60, his location is easily discernable, *see id.* ¶¶ 28, 61.

Second, even if Mr. Penning entered his Contra Costa County zip code and was thus unable to click "search," his information was still sent to Meta, and Defendant still violated his privacy when it aided Meta's interception of that information. Mr. Penning still "answer[ed] multiple questions related to his location, age, disability status, mobility status, and urgency of his need for food assistance," *id.* ¶ 28. Meta intercepted these "clicks" and "specific information" as they occurred, regardless of whether Mr. Penning ever clicked "search" afterward, *see id.* ¶¶ 5, 72, 84, since, "[b]y design, Meta receives the content of website communications as the website user enters or generates the information," *id.* ¶ 69.

Further, while Mr. Penning clearly alleges he *did* "reveal[ ] his medical history . . . when he interacted with boxes requiring him to indicate whether he is 'an adult living with disabilities' and/or 'ha[s] a disability

---

[3] https://www.sfmfoodbank.org.

[4] https://www.sfmfoodbank.org/find-food.

[5] https://www.sfmfoodbank.org/faq (emphasis added). Only the "Commodity Supplemental Food Program, which is a USDA program that is administered by the Food Bank," requires users to "verify residency in San Francisco or Marin," *id.*

6

that makes it difficult to leave home to get food,'" *id.* ¶ 198, even before reaching that page, he had already revealed his primary language and the severity of his need for food assistance,[6] with "[t]he Pixel send[ing] each of these pieces of information to Meta in real time with [his] PII." *Id.* ¶ 72. Meta's receipt of Mr. Penning's private information is confirmed by his "repeatedly [being] targeted with ads directed at exploiting [his] financial hardships after visiting the [Defendant's] website[]." *Id.* ¶ 100; *see also id.* ¶ 30.

Finally, courts that have carefully considered the issue and analyzed it under *Spokeo* have held that "CIPA violations, without more, constitute injury in fact." *See Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1088 (S.D. Cal. 2016) (citing *Matera v. Google Inc.*, 2016 WL 5339806 (N.D. Cal. Sep. 23, 2016) (Koh, J.)). In *Romero*, following the analysis set forth in *Spokeo*, as interpreted by Judge Koh in *Matera*, the court held that, "[r]ather than being a 'bare procedural violation,' a CIPA violation is 'the violation of a procedural right granted by statute . . . sufficient . . . to constitute injury in fact.'" *Id.* at 1089 (quoting *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1549 (2016)).

Defendant's facial attack fares no better. *See* Mot. at 6-7. Mr. Penning's claims are not premised on "[a] bare statutory violation," *see id.* at 6. Rather, he "answer[ed] multiple questions related to his location, age, disability status, mobility status, and urgency of his need for food assistance," which "[u]nbeknownst to Plaintiff[], the [Defendant] allowed Meta to intercept," *id.* ¶ 30, thereby revealing "highly sensitive personal, medical, and financial information," *id.* ¶ 63.[7] Contrary to Defendant's argument, disclosure of such sensitive information *does* "bear[ ] a 'close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts,'" *see* Mot. at 7 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (citation modified)), since these are "patently sensitive items," *see Alch v. Super Ct.*, 165

[6] *See* https://tinyurl.com/yzjn75xy (Defendant's form).

[7] Given Mr. Penning's allegation that he "answer[ed]" these questions, Defendant is simply wrong that the "Complaint does not allege that Penning actually checked any of the optional boxes on the Find Food Tool," *see* Mot. at 7. In any event, while perhaps not the most apt term, "interact[ing]" with a checkbox configured so that a click indicates a "yes" response, and the absence of a click indicates a "no" response, reasonably suggests Mr. Penning clicked the checkbox to indicate a "yes," since a "no" does not really involve "interact[ing]." *Compare* Compl. ¶ 198 (Mr. Penning "revealed his medical history . . . when he interacted with boxes requiring him to indicate whether he is 'an adult living with disabilities' and/or 'ha[s] a disability that makes it difficult to leave home to get food.'"), *with* Mot. at 6-7 (arguing "interact[ing] with boxes" insufficiently alleges Mr. Penning communicated his sensitive medical and financial information). If necessary, however, Mr. Penning could amend to allege more expressly that he checked the boxes to indicate his disability and limited mobility status.

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

Cal. App. 4th 1412, 1427 (2008) (referring to "medical and financial records"); *see also Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at \*5 (N.D. Cal. Aug. 22, 2023) ("information that someone has applied for a disability parking placard is 'disability information,'" which is "'highly restricted personal information,'" because "it indicates that the applicant has a disability" (quoting 18 U.S.C. § 2725(4))); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 875 (N.D. Cal. 2024) ("it would be highly offensive to a reasonable person to have one's PII in conjunction with one's confidential financial information . . . disclosed").

"[T]hose facing food insecurity," like Mr. Penning, often "face social stigma and shame" and are "targeted with predatory ads related to their financial status," Compl. ¶ 99; *see also id.* ¶ 100 (Mr. Penning was "reminded of [his] hardship and further stigmatized when [he] w[as] repeatedly targeted with ads directed at exploiting [his] financial hardships"). To help protect against this, California Welfare and Institutions Code § 10850 establishes comprehensive confidentiality protections for information concerning individuals receiving public social services. *See* Cal. Welf. & Inst. Code § 10850. With limited exceptions that maintain the confidentiality of the information, "a person shall not publish or disclose or permit or cause to be published or disclosed a list of persons receiving public social services." *Id.* § 10850(b). That Mr. Penning was seeking food assistance is thus precisely the type of information traditionally protected against disclosure. *Cf. Sanchez v. Cnty. of San Diego*, 2003 WL 25655642, at \*15 (S.D. Cal. Mar. 10, 2003) ("because the identity of the welfare applicant is information contained within the county's files, a person's identity as a welfare applicant constitutes confidential information under § 10850"), *aff'd*, 464 F.3d 916 (9th Cir. 2006); *Shleffar v. Super. Ct.*, 178 Cal. App. 3d 937, 944 n.6 (1986) ("welfare benefits . . . are confidential records protected from scrutiny" (citing Cal. Welf. & Inst. Code § 10850)).

Disclosure of Mr. Penning's sensitive financial and medical information distinguishes this case from those on which Defendant relies. *See* Mot. at 7. In *Mikulsky v. Noom, Inc.*, the "Plaintiff visited Defendant's website to 'browse[ ] for different products for sale,'" but did not even allegedly select a product for purchase, let alone one that would reveal such sensitive, confidential information as Mr. Penning revealed with his communications with Defendant here. *See* 682 F. Supp. 3d 855, 860, 864-65 (S.D. Cal. 2023). *Popa v. Microsoft Corp.* similarly involved the interception of the plaintiff's browsing of pet products, which "reveal[ed] nothing more than the products that interested" plaintiff and thus was "not the type of private information that the law has historically protected." 153 F.4th 784, 787 (9th Cir. 2025) (internal quotation

8

marks omitted). Only "basic contact information" was disclosed in both *Mitchener* and *I.C.*, and such information is "designed to be exchanged to facilitate communication and is thus available through ordinary inquiry and observation." *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (email address, phone number, or Facebook or Zynga username); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025) (name, date of birth, and address). In *Khamooshi v. Politico LLC*, "the *only* specific category of [intercepted] information that Plaintiffs identif[ied]" was "IP addresses for their devices," and although they also alleged "Defendant disclosed their 'browser and device data' and 'other identifying information,'" they "fail[ed] to provide any more detail" so that "[t]hose allegations [we]re too vague to assert a protectable privacy interest." 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (emphasis added) (citations omitted).

## B.    Plaintiff Has Standing to Seek Injunctive Relief

To have standing "[f]or injunctive relief, which is a prospective remedy, the threat of injury must be actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation modified; quotation omitted). "A plaintiff must demonstrate 'real and immediate threat of repeated injury in the future.'" *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1194 (S.D. Cal. 2024) (quoting *Chapman v. Pier 1 Imports Inc.*, 631 F.3d 939, 946 (9th Cir. 2011)). Mr. Penning has done so here.

As Defendant acknowledges, Mr. Penning alleges he "would like to use the Food Bank Defendant['s] website[] again in the future as access to local, affordable food assistance is critical to [him] but, due to Defendants' unscrupulous data collection and use, feel[s] that [he] cannot currently trust the website[] with [his] confidential information until . . . [it] no longer use Meta's, or any other tracking software," Compl. ¶ 101; *see also* Mot. at 8 (quoting Compl. ¶ 101). But, absent an injunction prohibiting use of the Pixel on Defendant's website, Mr. Penning "ha[s] no way of knowing" whether the website is using Meta's Pixel because it "act[s] [as] an invisible add-on to a website," that is "virtually undetectable." Compl. ¶¶ 91, 152, 176.

Further, Mr. Penning alleges "an injury from the ongoing use of [his] intercepted data by Defendant and [Meta]," *see D'Angelo*, 726 F. Supp. 3d at 1194. "Meta uses the data it gleans . . . to power its algorithms, providing insight into the habits of users across the internet" and "to target users with advertisements,"

9

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

Compl. ¶ 70; *see also id.* ¶ 80 ("Meta uses this data to improve its personalized content delivery, advertising network, and machine-learning algorithms, including by improving its ability to identify and target users."). This "allow[s] Meta to build detailed user profiles," and "[o]ver time," Meta "refine[s] and expand[s] the user profile, enabling it to serve highly-targeted advertisements based on a user's habits and preferences," *id.* ¶ 4; *see also id.* ¶ 136 ("Meta used or attempted to use these communications to help build user profiles, which it then sold to third-party advertisers."). Further, it can reasonably be inferred that Defendant continues to use Mr. Penning's data in providing website analytics, since "[o]nce data intercepted through the Pixel is processed, Meta makes it available through the 'Meta Pixel page' in Events Manager," *id.* ¶ 78; *see also* Mot. at 1 (Defendant uses Pixel "to more effectively provide critical food assistance and connect those in need with local food distribution services").[8] To stop Defendant's ongoing use, Plaintiff seeks "destruction of any information obtained as a result of [Defendant's] past intrusions." Compl. ¶ 179; *id.* ¶ 188.

Mr. Penning has thus "adequately alleged a 'real and immediate threat of repeated injury in the future.'" *See D'Angelo*, 726 F. Supp. 3d at 1194 (allegation that "'[e]ach unsuspecting visitor has their conversations exhaustively analyzed in combination with a vast amount of data organized into numerous attributes that Salesforce has collected about the visitor'" sufficient to "allege an injury from the ongoing use of their intercepted data" (record quotation omitted) (citing *Chapman*, 631 F.3d at 946; *Matera*, 2016 WL 5339806, at *19 (concluding that plaintiff has alleged a "real and immediate threat of repeated injury" from Google's ongoing analysis of data that was intercepted without the plaintiff's consent))); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120 (9th Cir. 2020) ("combination of continuing harm plus likelihood of future harm was sufficient for Plaintiffs to have standing to seek injunctive relief" where "Facebook was actively accessing private messages—conduct that Facebook has never claimed to have ceased," "was also still using the data from these messages," and "Facebook's ongoing retention of the data collected . . . meant that there was a risk that it would resume using the data . . . resume sharing the data with third parties, or begin using the data for some other purpose"); *cf. Brown v. Google LLC*, 685 F. Supp.

---

[8] If necessary, Plaintiffs could amend the Complaint to make this allegation more express. *See Pfeister v. RSUI Indem. Co.*, 2020 WL 5877670, at *1 (N.D. Cal. Oct. 2, 2020) (Beeler, J.) ("The court should freely give leave [to amend] when justice so requires." (quoting Fed. R. Civ. P. 15(a)(2))).

3d 909, 926 (N.D. Cal. 2023) (denying "motion for summary judgment as to plaintiffs' lack of standing to seek an injunctive remedy" because "Google's conduct has not stopped" and "Plaintiffs have demonstrated that absent an injunction, Google will continue to collect users' private browsing data for its own use without users' express consent").

Defendant asserts Penning's allegations are "conclusory" or "speculat[ive]" because, as "a resident of Contra Costa County," he does not "plausibly allege a concrete intention to use SFMFB's website again," since the website supposedly "block[s] submission" of Contra Costa zip codes. *See* Mot. at 8. But this argument is misplaced for the factual reasons already discussed, and because it ignores that Mr. Penning alleges Defendant's ongoing use of his data already collected, even if he never visits the website again.

## II.     PLAINTIFF PLAUSIBLY STATES CLAIMS AGAINST DEFENDANT

### A.     Defendant Has Not Shown Plaintiff Consented to Meta's Eavesdropping

As a threshold matter, Defendant argues "[c]onsent . . . defeats [Plaintiff's] privacy claims," because Penning "[c]ontinued [to] use . . . [its] website after being on notice of the cookie banner and the Privacy Policy," Mot. at 11-12 (quotation and citations omitted); *see also id.* at 15, 17 & n.8, 21 (addressing consent).[9] But Mr. Penning does *not* allege he was on notice; he alleges that "[a]lthough the [Defendant's] website contains a consent banner, this banner blends in with the bottom of the homepage and is ineffective as users have no option to reject cookies, only accept them," so that Defendant "fails to prominently and conspicuously provide a functional disclosure[.]" Compl. ¶ 58. Defendant's argument that the banner is "prominently display[ed]" and "conspicuous," Mot. at 11, is thus contrary to Plaintiff's allegations. And despite asking the Court to consider "the cookie banner displayed . . . on October 14, 2025," Dkt. No. 44-1, Hall Decl. ¶ 2, which it claims is "incorporated by reference into Plaintiff's Complaint," Dkt. No. 44-4, RJN

---

[9] Though Defendant claims consent "defeats any claim under § 638," Mot. at 15; *see also id.* at 17 ("consent vitiates any claim under the pen register statute"), Section 638 only provides a consent exception for a "*provider of electronic or wire communication service*," *see* Cal. Penal Code § 638.51(b)(5) (emphasis added), which Defendant does not claim to be, *see* Mot. at 15, and is not. *See Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (consent exception in "section 638.51(b) does not apply because Defendant fails to establish that it is a 'provider of electronic or wire communication service'" (quoting Cal. Penal Code § 638.51(b))); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *12 (N.D. Cal. July 14, 2025) ("Motorola has not established that it is a 'provider of electronic or wire communication service'").

11

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

at 3, the Complaint was filed in June 2025, and Defendant does not establish that the banner referenced in paragraph 58 is the same one printed in October 2025, or that it did not change during the class period.

Further, Mr. Penning does not allege he noticed or read the cookie banner or privacy policy himself, *see generally* Compl. ¶¶ 28-29, 56-65, only that "even once a user navigates to the Privacy Policy located within this banner, it misrepresents and omits information related to how it treats user data," *id.* ¶ 59. "In the section titled 'Our Commitment to Your Privacy and Security,'" Defendant "stat[es] it 'will not sell or rent the information you provide to us in any way that has not been specified in our privacy policy,'" yet "[i]n its section which purports to explain its cookie use, . . . only discloses that it 'collect[s] . . . browser type, operating system, IP address, and the URL of the web page you were on just prior to visiting the Food Bank's website.'" *Id.* ¶ 60. Defendant "further misrepresents the nature of the Pixel by claiming that '[t]his information will not reveal, nor is it associated with your personal identity.'" *Id.* Mr. Penning thus alleges that even for those few that *do* notice and navigate to the Privacy Policy, Defendant still "fails to sufficiently, accurately, and completely inform consumers, . . . of the categories of their personal information collected, the purposes for such collection, and whether that information is sold or shared, [or] the categories of third parties to whom it discloses the PII and sensitive financial information," *id.* ¶ 64. The Court should thus reject Defendant's undeveloped argument that its Privacy Policy sufficiently "discloses the use of cookies and pixels," Mot. at 12 (broadly referencing Privacy Policy in its entirety without citing or quoting any provision or language that so discloses).[10]

Thus, even if the Court considered the policy now, Defendant's consent defense fails because Defendant does not demonstrate the policy discloses the "specific conduct" challenged here. *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931-32 (N.D. Cal. 2024) ["*Fandom*"] (quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. 2021)); *Doe v. Meta Platforms*, 690 F. Supp. 3d 1064, 1078 (N.D.

---

[10] Defendant does not even try to establish that the Privacy Policy it attaches is the one that was in effect when Mr. Penning used its website, or that the policy did not change during the class period. *See generally* Mot. at 11-12; RJN at 4; Hall Decl. ¶ 3. The Court should not consider the policy under such circumstances. *Cf. Garcia v. Bandai Namco Ent. Am. Inc.*, 2025 WL 2451033, at *3 (C.D. Cal. Aug. 7, 2025) (declining to consider "various screenshots from Defendant's websites allegedly depicting" a cookie banner and privacy pop-up because it "cannot verify that the Exhibits match what Plaintiff viewed when he allegedly browsed Defendant's websites," but considering privacy policies only because defendant printed versions "from archive.org's Wayback Machine and explicitly note that they depict the Privacy Policy as they appeared on [the] particular dates" plaintiff made a purchase from the website).

12

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

Cal. 2023) ["*Meta Platforms*"] ("the disclosures must 'explicitly notify' users of the practice at issue" (quoting *Brown*, 685 F. Supp. 3d at 926))). "Consent is only effective if the person alleging harm consented to the particular conduct, or to substantially the same conduct and if the alleged tortfeasor did not exceed the scope of that consent." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 190 (N.D. Cal. 2019) (quotation omitted; citation modified). "If 'the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Defendant's] favor at the motion to dismiss stage.'" *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789-90 (N.D. Cal. 2019) ["*Facebook*"]).

Defendant does not point to anything that explicitly notifies users their sensitive personally identifiable location, financial, and health information will be collected from Defendant's website, used to create user profiles and targeted advertising, and sold to other third-parties for further use. Instead, "it misrepresents and omits information related to how it treats user data," Compl. ¶ 59, including "misrepresent[ing]" that it "will not reveal . . . [their] personal identity," *id.* ¶ 60.

"Given [Defendant's] representations, omissions, and the sensitivity of medical information and information pertaining to financial hardship and personal food insecurity, users . . . reasonably expected their data related to this personal and sensitive information to remain confidential." *Id.* ¶ 62. Defendant has thus failed to carry its burden of establishing consent as a matter of law. *See Fandom*, 754 F. Supp. 3d at 931 (Defendant "bears the burden to establish consent"); *Doe v. County of Santa Clara*, 2024 WL 3346257, at *7 (N.D. Cal. July 8, 2024) (no consent where "nothing in the provisions . . . disclose the disclosure of PII, much less [personal health information], to third parties for those third parties' own use" (citing *Meta Platforms*, 690 F. Supp. 3d at 1078)); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (no consent where "policies notify Facebook users that Meta collects and uses their personal data," but did "not . . . . specifically indicate that Meta may acquire health data" (record citations and emphasis omitted)); *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *9 (N.D. Cal. July 22, 2025) ["*GoodRx Holdings*"] (

> A reasonable user reading these broad disclosures . . . about the general use of the tracking technologies on the GoodRx Platform, when reading them together with the portions . . .

13

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

that specifically state that GoodRx will not share that data, and . . . promises . . . that GoodRx would not share its users' health information . . . would reasonably think they were not consenting to the sharing and interception of sensitive medical information. (citations omitted)).

**B.      Plaintiff Plausibly Alleges Defendant Violates CIPA**

Mr. Penning alleges Defendant violates CIPA Sections 631(a) (clause four) and 638.[11] Defendant provides no salient reason for dismissal of either claim.

### i.      Defendant Violates CIPA Section 631(a), Clause Four

It is a violation of the fourth clause of CIPA Section 631(a) to "aid[], agree[] with, employ[], or conspire[] with any person" to, "without the consent of all parties to the communication, . . . read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit . . . . or who uses, or attempts to use, in any manner, . . . any information so obtained," Cal. Penal Code § 631(a). Penning alleges Defendant "intentionally incorporated the Pixel into its website," Compl. ¶ 63, and thus "gave substantial assistance to Meta," Compl. ¶ 138, who "willfully and without the consent of" website users "read or attempted to read or learn the contents or meaning of" users' "communications with" Defendant "while the communications were in transit," and "used or attempted to use these communications to help build user profiles," *id.* ¶ 136; *see also* Opp. to Meta's Mot. at 1-16 (Plaintiffs allege Meta violated the second and third clause of CIPA Section 631(a)).

Defendant's argument that Penning's CIPA Section 631(a) claim nevertheless fails because he "do[es] not plausibly allege that contents were collected in transit without consent," Mot. at 9, is unavailing.

### a.      Plaintiff Adequately Alleges Meta's Interception of "Contents"

"Contents" means "information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8).[12] Thus, while "contents" generally "does not include record

---

[11] Defendant is mistaken that Mr. Penning asserts claims against it for violations of CIPA Sections 632 and 635. *See* Mot. at 14-15. Mr. Penning's CIPA Section 635 claim mentions only Meta. *See* Compl. ¶¶ 151-57. Though paragraphs 146-47 of Penning's Section 632 claim mention the Food Banks, they do so only in the context of addressing the confidentiality and consent elements of the claim against *Meta*; Mr. Penning's mention of Defendant in paragraph 150 was inadvertent.

[12] "According to the Ninth Circuit, the term 'contents' of a communication under CIPA has the same meaning as the parallel term in the federal Wiretap Act." *Doe v. Eating Recovery Ctr. LLC*, --- F. Supp. 3d ----, ----, 2025 WL 2971090, at *4 (N.D. Cal. Oct. 17, 2025) ["*Eating Recovery Ctr.*"] (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ["*Facebook Tracking Litig.*"]).

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

information, such as the name, address, and subscriber number or identity of a subscriber or customer, when such information is merely generated in the course of the communication," what might otherwise be "record information may constitute 'contents' where the record is the subject of a communication . . . ." *Price v. Carnival Corp.*, 2024 WL 221437, at *6 (S.D. Cal. Jan. 19, 2024) (citation modified) (record citation omitted) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) ["*Zynga*"]); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("If an address, phone number, or URL is . . . part of the substantive information conveyed to the recipient, then by definition it is 'content.'"). Thus, for example, "detailed URLs that reveal the specific document, product, or service that a user is viewing count as contents of communications." *Eating Recovery Ctr.*, 2025 WL 2971090, at *4 (citations omitted); *see also Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) ("the alleged tracking of 'website interactions,' 'user input data,' 'shopping behaviors,' and potentially 'referring URLs' could convey, among other things, what users were searching for or what they wanted to do on UMG's websites," which "would likely entail queries or clicks from users and as a result involve the 'contents' of users' communications with UMG's websites").

Information gathered by the Pixel on Defendant's website includes "highly sensitive personal, medical, and financial information," Compl. ¶ 63. Website users "communicated their intent to receive nutrition assistance," *id.* ¶ 29. Further, "[t]o search for food distribution stations . . . users are required to answer personal questions that reveal a users' location, reasons a user is seeking assistance, their personal health/disability status, age group, and zip code, all of which is intercepted by Meta." *Id.* ¶ 61. Meta also intercepts "interactions with the appointment calendar for program eligibility which includes asking for an applicant's full name, address, and zip code," as well as "the CalFresh inquiry page," which requires one's name, phone, and email. *Id.* ¶ 87.

Because users communicated this information directly to Defendant—it was not just stored record information "generated in the course of the communication," *see Price*, 2024 WL 221437, at *6, akin to "[m]etadata associated with electronic communications," *see Sys. Prods. & Sols., Inc. v. Scramlin*, 2014 WL 3894385, at *8 (E.D. Mich. Aug. 8, 2014)—the information was "contents" within the meaning of CIPA; *cf. Zynga*, 750 F.3d at 1106 ("[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information *regarding the characteristics of the message* that

is *generated in the course of the communication.*" (emphasis added)); *Doe v. Post Acute Med., LLC*, 2025 WL 511069, at *5 (M.D. Pa. Feb. 14, 2025) ("When assessing claims under wiretapping statutes, many courts distinguish between the 'contents of' a communication—i.e., the intended message conveyed by the communication—and metadata (sometimes called 'record information' or 'routing information'), which describe the characteristics of the message." (internal quotation marks and citations omitted)). Mr. Penning's allegations that Defendant aided Meta's interception of his "PII, health information, and other sensitive data" are therefore "sufficient" to allege "contents" within the meaning of CIPA. *See GoodRx Holdings*, 2025 WL 2052302, at *15 (citations omitted); *Gershzon*, 2023 WL 5420234, at *13 (plaintiffs sufficiently alleged "contents" were communicated by alleging "Pixel [wa]s embedded on and throughout the DMV website" and "Meta obtained information showing that [plaintiff] communicated with the DMV in order to apply for a disability parking placard," since "[t]his type of information is substantive and personal"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1052 (S.D. Cal. 2023) (communications "f[e]ll on the 'contents' . . . side of the line," where plaintiff "allege[d] that Defendant monitors and intercepts communications related to his personal characteristics, mode of living, purchase decisions, personal choices, app selections, spending habits, and click choices, amongst others" (record quotation, quotation marks, and alterations omitted)); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) ("sensitive financial information about tax filings [transmitted] to Google" constituted "content").

Considering each alleged website interaction standing alone, Defendant nevertheless contends "[n]one of the[] alleged interactions involve 'contents.'" *See* Mot. at 10 ("[a]ddressing each" of the "CalFresh inquiry page," "the appointment calendar" and "the Find Food Tool" "in reverse order"). But Defendant ignores that Pixel is recording every "click, as well as specific information [users] input into the website, and what they searched," Compl. ¶ 72, not just each specific communication in isolation. In any event, Defendant is wrong that users' interactions with the three items it discusses—the CalFresh inquiry page, the appointment calendar, and the Find Food Tool—are not contents. First, although Mr. Penning does not allege that he personally "input [information] into the CalFresh inquiry page," Mot. at 10, he alleges Pixel captured that information for any user who did input it, *see* Compl. ¶ 87, and Defendant raises no substantive argument against finding the information constitutes "contents," *see* Mot. at 10. Second, the information collected by the appointment calendar is not *only* "an applicant's full name, address, and zip code," Mot. at 10 (quoting

16

Compl. ¶ 87), but also "the need to seek nutritional assistance, often due to hardship such as poverty or disability," Compl. ¶ 146; *see also id.* ¶ 29, as was the case with Mr. Penning, *see id.* ¶ 28. Yet even Defendant's case on this point recognizes that "a person's name, address, and subscriber number or identity . . . may be contents when it is part of the substance of the message conveyed to the recipient," *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024) (quotation marks and citation omitted), as is the case here, *supra* pp.15-16. It was only because the name and address information collected in *Yoon* was "*not* user-generated material," but instead, "automatically generated in the course of communication," that those "form field entries" were "not contents," *see* 2024 WL 5264041, at *6 (emphasis added). Third, the Court should reject Defendant's characterization of the Find Food Tool as merely "four optional checkboxes to filter food location results," Mot. at 10, since those "boxes require[d] [Mr. Penning] to indicate whether he is 'an adult living with disabilities' and/or 'ha[s] a disability that makes it difficult to leave home to get food,'" among other information about his "location, age . . . and urgency of his need for food assistance," Compl. ¶ 28. Such "highly restricted personal information," *see, e.g., Gershzon*, 2023 WL 5420234, at *5 ("indicat[ion] that the applicant has a disability"), is a far cry from the record information in Defendant's cases, which involved "nothing more than . . . clicking on . . . URLs in . . . marketing emails," *Ramos v. Gap, Inc.*, 2025 WL 2144837, at *5 (N.D. Cal. July 29, 2025), or "simply opening a webpage," *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018).

Moreover, "[t]he boundaries of what transferred information is content under the Act is better determined on a full evidentiary record," making dismissal at this stage inappropriate. *See Meta Platforms*, 690 F. Supp. 3d at 1077; *cf. Tanner v. Acushnet Co.*, 2023 WL 8152104, at *3 (C.D. Cal. Nov. 20, 2023) (allegations "more than sufficient for pleading purposes" where "[a]lthough perhaps not all of th[e] [captured] information is 'content' under CIPA, much of what is captured certainly is" (citation omitted)).

    **b.**   **Plaintiff Alleges Interception of His Communications While "in Transit"**

Defendant's assertion that Mr. Penning's allegations that Meta intercepted his communications "in transit" "are just too conclusory to survive," Mot. at 13 (quotation omitted), is without merit. "While a plaintiff must do more than 'merely restate[] the pleading requirement of real time interception' . . . the standard is not overly burdensome." *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (quoting *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024)). "For instance,

17

allegations that communications are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Id.* (citation modified) (quoting *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024)). "[A] plaintiff need not prove their theory of interception, but rather must provide fair notice to defendants of when they believe the defendant intercepts their communications." *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *7 (C.D. Cal. Dec. 16, 2024) (citation modified) (quoting *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017)). "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant," *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023).

Mr. Penning's allegations are more than sufficient to meet the low "in transit" standard. He alleges "Meta intercepts each page a user visits, what buttons they click, as well as specific information they input into the website, and what they searched," and "sends each of these pieces of information to Meta *in real time* with users' PII." Compl. ¶ 72 (emphasis added). This starts "[a]s soon as a user takes any action on a webpage," with Pixel "re-direct[ing] the contents of the user's communication to Meta *while the communication between the user and website provider is still occurring.*" *Id.* ¶ 68 (emphasis added); *see also id.* ¶¶ 87, 135-36, 166, 168. Thus, by its very "design, Meta receives the content of website communications as the website user enters or generates the information, but before the website owner receives it." *Id.* ¶ 69.

Numerous courts, including those dealing with Meta's Pixel, "have held [such] allegations of simultaneous duplication and interception of communications [are] sufficient to plead 'interception' while 'in transit' . . . at the motion to dismiss stage." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838-39 (E.D. Cal. 2025) (record citation omitted) (collecting cases); *see also*, *e.g.*, *Mata*, 2024 WL 5161955, at *6 (court can "plausibly infer that Meta intercepted his communications while 'in transit,'" from allegation that "Defendant incorporated third-party tracking technologies into its website so that 'whenever' Plaintiff watched video content, Meta obtained access" (quotations omitted)); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1131 (S.D. Cal. 2023) ("[p]laintiffs plead that communications were intercepted in transit sufficient to survive dismissal under Rule 12(b)(6)" where they "allege that without their authorization Sharp intentionally installed Meta Pixel on its website and shared user's information with Meta in real time" (record

18

citation omitted)); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1054 (N.D. Cal. 2025) (in case involving Pixel, finding "[p]laintiffs plausibly allege that [Meta] intercepted the communications while they were in transit."). Thus, unlike in *Valenzuela v. Keurig Green Mountain, Inc.*, *see* Mot. at 18 (citing 674 F. Supp. 3d 751 (N.D. Cal. 2023) ["*Valenzuela I*"]), Plaintiff here "did not simply recite that there was real time interception, [he] added detail on how it occurs (through the code . . . embed[ded on the website])," and alleged that "[d]ata from every use event [is] *collected as it happens*." *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978-79 & n.6 (C.D. Cal. 2023) (record citation omitted) (distinguishing *Valenzuela I*).

Thus, the Court should find, like others have in similar cases, that Plaintiffs sufficiently allege their communications were intercepted "in transit." *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) ("with respect to Facebook Pixel, Plaintiff's allegations are more than threadbare recitals of a cause of action's elements" where they allege "transmission is initiated by Facebook code and concurrent with the communications with the host website" (citation modified)); *Gray*, 2024 WL 5689566, at *7 ("Plaintiff alleges specific facts about when the purported interception occurred and how the transmission occurred contemporaneously, not after-the-fact" where he "alleges that when a user accesses a website hosting the Meta Pixel . . . Facebook's code 'directs the user's browser to contemporaneously send a separate message to Facebook's servers . . . contain[ing] the original GET request sent to the host website, along with additional data that the [Meta] Pixel is configured to collect.'" (record quotation omitted)).

Finally, for the reasons explained in Plaintiffs' concurrently-filed opposition to Meta's motion to dismiss, because Meta committed a predicate violation of clauses two and three of CIPA Section 631(a), *see* Pls.' Opp. to Meta Mot. at 1-16, Defendant is wrong that Plaintiff's "aiding-and-abetting theory fails" because there is no "primary violation here by Meta," *see* Mot. at 14.

ii.    **Defendant Violates CIPA Section 638**

Defendant asserts Plaintiff does not allege it collected "addressing information" because "IP addresses" are "information about a communication" rather than "information *within* a communication," Mot. at 16 (quotation omitted). But that merely recycles its argument that Pixel collected mere "record information" and not "content," *see id.* (citing case regarding "[r]ecord information" (citation omitted)).

19

It also misses the mark because Section 638 does not require that "contents" be intercepted, only that "a person . . . install or use a pen register or a trap and trace device without first obtaining a court order," Cal. Penal Code § 638.51(a). A pen register is "a device or process that records and decodes dialing, routing, addressing or signaling information," and a trap and trace device is "one that captures incoming electronic or other impulses to identify the originating number or other dialing, routing, addressing or signaling information reasonably likely to identify the source of a wire or electronic communication." Compl. ¶¶ 157-58 (citing Cal. Penal Code §§ 638.50(b)-(c)). "[T]he Meta Pixel falls under the definition of a pen register or trap and trace device" because it "is a device or process . . . that identifies consumers," and "gathers data, including addressing information (such as IP addresses[] [and] PII . . . )," *id.* ¶ 159. *See In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1155 (N.D. Cal. 2025) ["*Tax Filing Cases II*"] (plaintiffs plausibly alleged Meta Pixel was a pen register); *Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *7 (S.D. Cal. Nov. 18, 2025) ("most cases in this and other districts have also recognized that website-based trackers can plausibly constitute a pen register" (collecting cases)); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (plaintiffs plausibly alleged "TikTok Software . . . embedded in the Website" was a pen register or trap and trace device).

Defendant next argues that "if . . . 'content information' is collected, such as health or financial information, then the Meta Pixel software 'is not a [pen register or] trap and trace device," Mot. at 16 (quotation omitted)). Courts have rejected this interpretation of § 632, which would create a loophole for defendants to exploit, as contrary to CIPA's purpose.

"[T]here is no doubt that the California Legislature, in enacting CIPA, intended 'to protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society.'" *Tax Filing Cases II*, 793 F. Supp. 3d at 1153 (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002)). Thus, the "Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests." *Id.* (citation modified and quotation omitted).

> Given CIPA's purpose to protect Californians' privacy, it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications. Under Meta's interpretation of the statute, an entity could escape liability under CIPA's pen register provisions by combining the

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

functionality of a wiretap with that of a pen register. That entity could also escape liability under CIPA's wiretap provisions by utilizing only the information tracked by pen registers and not "read[ing], or attempt[ing] to read . . . the contents" of communication. Cal. Penal Code § 631(a). Such an entity could engage in the very conduct that CIPA proscribes—using a pen register without a court order—while escaping liability through a statutory loophole that is available only because that entity collects even more sensitive information (the content of Californians' communications) along with the information recorded by pen registers. In contravention of the California Legislature's intent in enacting CIPA, Meta's proposed loophole would allow any entity to avoid CIPA's pen register provisions simply by employing more intrusive forms of technology.

*Id.* at 1153-54. !!

Given CIPA's purpose to protect Californians against the privacy intrusions that can result from either wiretaps or pen registers, the better interpretation of Section 638.51 is that it defines a pen register as any device that "records dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted," but not a device that records *only* "the contents of communications."

*Id.* at 1154-55 (emphasis added). This Court should join the many other courts holding similarly. *See*, *e.g.*, *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *12 (N.D. Cal. Aug. 29, 2025); *Drummer v. CoStar Grp., Inc.*, 2025 WL 3190656, at *5 (C.D. Cal. Oct. 22, 2025).

**C.    Plaintiff Plausibly Alleges Defendant's Intrusion Upon His Seclusion**

Defendant argues Plaintiff's common law invasion of privacy claim should be dismissed because he "plead[s] no reasonable expectation of privacy in the type of information allegedly disclosed and do[es] not plausibly allege that any such information was linked to [him]," and "describe[s] only the tracking of standard website user information that is not highly offensive." Mot. at 17.

Defendant's first argument is wrong for the reasons discussed above with respect to Plaintiff's Article III standing: Plaintiff and other Class Members have a reasonable expectation of privacy in information concerning their disability status, sensitive financial status, and need for social services. *See supra* pp. 7-9. Plaintiff also alleges the information was personally identifiable. Compl. ¶¶ 4-5, 23, 30, 65, 71-75, 79. And "[c]ourts have held that plaintiffs have a reasonable expectation of privacy where data is collected without their consent." *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *14 (N.D. Cal. Oct. 16, 2025) (quoting *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021)); *see also Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994) ("[T]he presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant."). That is the allegation here. *See* Compl. ¶ 58.

Defendant's second argument is also wrong. "Determining offensiveness requires consideration of all the circumstances of the intrusion, including its degree and setting and the intruder's motives and objectives." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 201 (1998). "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Gabrielli*, 2025 WL 2494368, at *8 (quoting *Facebook*, 402 F. Supp. 3d at 797). Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests" can the "question of [a serious or highly offensive] invasion . . . be adjudicated as a matter of law." *Hill*, 7 Cal. 4th at 40. Allegations plausibly "showing [defendant's] cavalier disregard for ordinary citizens' rights of privacy," by contrast, satisfy the "highly offensive" element. *See Shulman*, 18 Cal. 4th at 236 (quotation omitted). Moreover, "conduct is more likely to be 'highly offensive' where the defendant 'surreptitious[ly]' collects sensitive information," *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (quotation omitted); *see also Gabrielli*, 2025 WL 2494368, at *9 (finding "highly offensive" invasion plausible where, "even after [Plaintiff] rejected all cookies, [Defendant] continued to . . . . permit[] the Third Parties to track and collect Plaintiff's private communications as Plaintiff browsed the websites." (record citation omitted; citation modified)).

Here, Plaintiff alleges Defendant surreptitiously collects highly-personal, sensitive, and protected information, then shares it with Meta without giving users fair notice or an opportunity to opt out. Ultimately, whether Defendant's "tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage," but "Plaintiffs have identified sufficient facts to survive a motion to dismiss." *See Facebook Tracking Litig.*, 956 F.3d at 606.

### D. Plaintiff Plausibly Alleges Defendant Was Negligent

"For negligence, a plaintiff must plausibly allege: (1) the defendant had a duty, or an 'obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks,' (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) damages." *In re San Francisco 49ers Data Breach Litig.*, 2024 WL 3849336, at *2 (N.D. Cal. Aug. 15, 2024) (quoting *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009)). Defendant challenges only the first and third elements: duty and damages.

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

"As for the first element, '[a] duty of care may arise through statute or by contract,'" or "may also be based on 'the general character of the activity in which the defendant engaged.'" *Dent v. Nat'l Football League*, 902 F.3d 1109, 1118 (9th Cir. 2018) (quoting *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979)). Here, as discussed above, *supra* Section II.B.i, CIPA establishes Defendant's duty not to aid another in reading, attempting to read, using, or attempting to use the contents or meaning of any communication in transit. *See* Cal. Penal Code § 631(a); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *22-23 (N.D. Cal. Apr. 11, 2024) (denying motion to dismiss negligence claim based on violation of "state wiretapping laws"). And California Welfare and Institutions Code § 10850 establishes Defendant's duty not to reveal the identity of those receiving public social services. *See* Cal. Welf. & Inst. Code § 10850; *cf. R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 897 (C.D. Cal. 2024) ("a duty may arise from HIPAA and serve as the basis for a negligence claim under California law").

Additionally, the character of the activity in which Defendant is engaged—operating a website that collects highly sensitive and personally identifying location, financial, and medical information from those experiencing food insecurity—gives rise to a duty to safeguard the sensitive, highly-personal, and protected information it collects. *See supra* Sections I.A, II.C; *Facebook*, 402 F. Supp. 3d at 799 ("Facebook had a responsibility to handle its users' sensitive information with care." (citing *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038-39 (N.D. Cal. 2019) (plaintiff "plausibly plead[ed] duty of care" because "the information . . . was private," "plaintiff plausibly placed trust in Facebook to employ appropriate data security" and "[t]he lack of reasonable care in the handling of personal information can foreseeably harm the individuals providing the information"))); *cf. In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1017 (N.D. Cal. Mar. 25, 2024) ["*Tax Filing Cases I*"] ("That Meta not only instructs website developers not to share sensitive data, . . . but also has systems in place to monitor and filter out potentially sensitive information . . . suggests that it is foreseeable . . . that those developers will use the tools to transmit sensitive information"). Defendant further assumes and acknowledges this duty when it promises it "will not sell or rent the information [users] provide to us in any way that has not been specified in our privacy policy," Compl. ¶ 59, and that the limited information it does collect "will not reveal, nor is it associated with your personal identity," *id.* ¶ 60.

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT

"In violation of that duty . . . Defendant[] negligently . . . permitted Meta to access Plaintiff['s] and other Class Members' PII[,]" and "sensitive financial and . . . medical information," Compl. ¶ 191, and "[a]s a direct and legal result," Mr. Penning "and other Class Members have sustained foreseeable harm and damages in a sum to be determined at trial," *id.* ¶ 192; *see also supra* Sections I.A., II.C (discussing Mr. Penning's privacy injury). Mr. Penning thus sufficiently alleges he suffered damages as a result of Defendant's negligence. *See Facebook*, 402 F. Supp. 3d at 799 (denying motion to dismiss negligence claim because "the plaintiffs have alleged present and non-speculative privacy injuries" and "that Facebook breached a duty to them"); *Tax Filing Cases I*, 724 F. Supp. 3d at 1019 ("Plaintiffs plead that they were injured as a result of Meta's negligence," "includ[ing] . . . the loss of privacy of Plaintiff's protected financial information"). Defendant's attempt to reduce Mr. Penning's privacy injury to merely "receiving 'several targeted advertisements,'" Mot. at 23, ignores that the invasion of privacy occurred with or without Meta subsequently using the data to send targeted advertisements, and that CIPA imposes a statutory duty not to aid even mere *attempts* to read confidential communications.

Nor is Plaintiff's negligence claim barred by the economic loss doctrine. *See* Mot. at 22 n.10. "'Economic' loss in this context means an injury to 'a plaintiff's interest in *prospective* economic advantage.'" *Tax Filing Cases I*, 724 F. Supp. 3d at 1020 (quoting *J'Aire Corp.*, 24 Cal. 3d at 803 (emphasis added)). But Mr. Penning's "allegations are retrospective rather than prospective" because "[t]hey focus on 'loss of privacy' . . . that has already occurred." *See id.* Further, Mr. Penning "ha[s] a proprietary interest in [his] personal data, so harms to that interest may extend beyond disappointed future expectations." *See id.* Defendant thus "fails to show that [P]laintiff['s] alleged injuries are solely economic." *See id.*; *see also Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 913 (S.D. Cal. 2020) (economic loss doctrine did not bar negligence claims where plaintiffs "allege they suffered 'a privacy injury by having their sensitive medical information disclosed,'" and "noticed an increase in spam/phishing e-mails and/or calls . . . which is harm that is also not necessarily 'economic' in nature" (record quotations omitted)).

Finally, it is not fatal to Mr. Penning's negligence claim that he "characterize[s] the challenged conduct as intentional tracking," Mot. at 23, since he can plead intentional and negligent conduct in the alternative. *See C.M. v. United States*, 699 F. Supp. 3d 809, 834 n.17 (D. Ariz. 2023) ("The United States contends that Plaintiffs cannot recover under both their IIED claims and negligence claims for the same

24

conduct. . . . But Plaintiffs may pursue both causes of action when the government's intent is in dispute[.]" (citation omitted)).

**CONCLUSION**

The Court should deny Defendant's motion, but if the Court is inclined to grant the motion in any respect, Plaintiffs request dismissal be without prejudice and with leave to amend.


Dated: January 7, 2026                    Respectfully Submitted,

                                          /s/ Melanie R. Monroe
                                          **FITZGERALD MONROE FLYNN PC**
                                          JACK FITZGERALD
                                          *jfitzgerald@fmfpc.com*
                                          MELANIE R. MONROE
                                          *mmonroe@fmfpc.com*
                                          TREVOR FLYNN
                                          *tflynn@fmfpc.com*
                                          ALLISON FERRARO
                                          *aferraro@fmfpc.com*
                                          DANIEL E. SACHS
                                          *dsachs@fmfpc.com*
                                          2341 Jefferson Street, Suite 200
                                          San Diego, California 92110
                                          Phone: (619) 215-1741

                                          ***Counsel for Plaintiffs***

*Timothee et al. v. Meta Platforms, Inc. et al.*, Case No. 3:25-cv-05106-LB
PLAINTIFFS' OPPOSITION TO SAN FRANCISCO-MARIN FOOD BANK'S MOTION TO DISMISS THE COMPLAINT