**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
DANIEL E. SACHS (SBN 361027)
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiffs***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATASSIA TIMOTHEE, TOMMY DIEP, ESPERANZA REYES, MARIAELENA BURCIAGA, and STACY PENNING on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., SACRAMENTO FOOD BANK AND FAMILY SERVICES, LOS ANGELES REGIONAL FOOD BANK, CENTRAL CALIFORNIA FOOD BANK, and SAN FRANCISCO FOOD BANK d/b/a SAN FRANCISCO-MARIN FOOD BANK,<br><br>Defendants. | Case No. 3:25-cv-05106-LB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT LOS ANGELES REGIONAL FOOD BANK'S MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE**<br><br>**[Dkt. No. 45]**<br><br>Judge: Hon. Laurel Beeler<br>Date: March 26, 2026<br>Time: 9:30 a.m.<br>Dept.: Courtroom B, 15th Floor |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

STATEMENT OF ISSUES TO BE DECIDED ..... 1

INTRODUCTION ..... 1

FACTS ..... 2

ARGUMENT ..... 5

I. PLAINTIFF ADEQUATELY ALLEGES A REASONABLE EXPECTATION OF PRIVACY ..... 5

II. DEFENDANT HAS NOT SHOWN PLAINTIFF CONSENTED TO ITS USE OF THE PIXEL ..... 6

III. PLAINTIFF STATES CLAIMS AGAINST DEFENDANT ..... 8

A. The Complaint Adequately Alleges when Plaintiff Used Defendant's Website ..... 8

B. Plaintiff Plausibly Alleges Defendant Violated the CIPA Section 631(a) ..... 9

i. Plaintiff Adequately Alleges Meta Intercepted His Data ..... 10

ii. Plaintiff Adequately Alleges Meta's Interception of "Contents" ..... 10

iii. Plaintiff Adequately Alleges Meta Read or Attempted to Read His Communications with Defendant ..... 13

C. Plaintiff Adequately Pleads Defendant's Violation of CIPA Section 638.51 ..... 14

D. Plaintiff Plausibly Alleges Defendant Violated His California Common Law and Constitutional Privacy Rights ..... 15

E. Plaintiff Plausibly Alleges Defendant Was Negligent ..... 17

IV. PLAINTIFF'S CLASS ALLEGATIONS SHOULD NOT BE STRICKEN ..... 17

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Cases**

*Ahringer v. LoanDepot, Inc.*,
715 F. Supp. 3d 1274 (C.D. Cal. 2024) .......... 19

*Alexandria Real Estate Equities, Inc. v. RUNLABS (UK) Ltd.*,
2019 WL 4221590 (N.D. Cal. Sep. 5, 2019) .......... 1

*Application of U.S. of Am. for an Order Authorizing Use of a Pen Reg. Device*,
407 F. Supp. 398 (W.D. Mo. 1976) .......... 12

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
2016 WL 3543699 (S.D. Cal. June 29, 2016) .......... 19

*Brown v. Hain Celestial Grp., Inc.*,
913 F. Supp. 2d 881 (N.D. Cal. 2012) .......... 17

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 7

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 7

*Camplisson v. Adidas Am., Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) .......... 15

*Doe v. Eating Recovery Ctr. LLC*,
--- F. Supp. 3d ----, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 10, 12, 17

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 18

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. Sep. 7, 2023) .......... 18

*Doe v. Post Acute Med., LLC*,
2025 WL 511069 (M.D. Pa. Feb. 14, 2025) .......... 11, 13

*Drummer v. CoStar Grp., Inc.*,
2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) .......... 14

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 15, 16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 16

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ........ 15, 16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 10, 15, 16

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 10, 13

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ........ 16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 6, 7, 8

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ........ 15

*In re Path Network, Inc.*,
703 F. Supp. 3d 1046 (N.D. Cal. 2023) ........ 12, 13

*In re Pharmatrak*,
329 F.3d 9 (1st Cir. 2003) ........ 11, 12

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 10, 11, 12

*Jackson v. LinkedIn Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) ........ 14

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 19, 20

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022) ........ 20

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........ 15

*Krantz v. Old Copper Co., Inc.*,
794 F. Supp. 3d 724 (C.D. Cal. 2025) ........ 19, 20

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ 13

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sep. 23, 2016) ........ 6

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 14

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 15

*Nguyen v. Elsevier Inc.*,
2025 WL 2901059 (N.D. Cal. Oct. 7, 2025) .......... 7

*Oman v. Delta Air Lines, Inc.*,
889 F.3d 1075 (9th Cir. 2018) .......... 18

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......... 7

*Popa v. Microsoft Corp.*,
153 F.4th 784, 791 (9th Cir. 2025) .......... 5

*Price v. Carnival Corp.*,
2024 WL 221437 (S.D. Cal. Jan. 19, 2024) .......... 10, 11

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 17

*Robichaud v. Speedy PC Software*,
2013 WL 818503 (N.D. Cal. Mar. 5, 2013) .......... 20

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) .......... 6

*Romero v. Securus Techs., Inc.*,
216 F. Supp. 3d 1078 (S.D. Cal. 2016) .......... 6

*Sanchez v. Cnty. of San Diego*,
2003 WL 25655642 (S.D. Cal. Mar. 10, 2003) .......... 6

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .......... 20

*Schmitt v. SN Servicing Corp.*,
2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .......... 18

*Shleffar v. Super. Ct.*,
178 Cal. App. 3d 937 (1986) .......... 6

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) .......... 15, 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 6

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ........ 18

*Sys. Prods. & Sols., Inc. v. Scramlin*,
2014 WL 3894385 (E.D. Mich. Aug. 8, 2014) ........ 11

*Valentine v. NebuAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ........ 18

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009) ........ 17

*W.A. Call Mfg. Co., Inc. v. WiLine Networks Inc.*,
2025 WL 2624967 (N.D. Cal. Sep. 11, 2025) ........ 17

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229, at *14 (N.D. Cal. Oct. 16, 2025) ........ 16

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ........ 10, 12

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) ........ 12

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ........ 20

**Rules**

Cal. R. Ct. 8.1115(a) ........ 14

N.D. Cal. Civ. L.R. 7-2(b) ........ 1

N.D. Cal. Civ. L.R. 7-4(a)(3) ........ 1

**Statutes**

18 U.S.C. § 2510(8) ........ 10, 12

Cal. Penal Code § 631(a) ........ 1, 18

Cal. Penal Code § 638.50(c) ........ 15

Cal. Penal Code § 638.51(a) .......... 1, 15
Cal. Penal Code § 638.51(b) .......... 14
Cal. Penal Code § 638.50(b) .......... 15
Cal. Welf. & Inst. Code § 10850 .......... 6, 16
Cal. Welf. & Inst. Code § 10850(b) .......... 6, 17

**Other Authorities**

2 U.S. Code Cong. & Admin. News, 90th Cong., 2d Sess. (1968) .......... 12

## STATEMENT OF ISSUES TO BE DECIDED[1]

1. Whether Plaintiff Tommy Diep has alleged a sufficient privacy interest for standing and to state claims, where he alleges Meta intercepted sensitive information concerning his food insecurity and use of social services.

2. Whether Defendant has proven that Mr. Diep consented to the specific practices he challenges, such that the Court should find his claims barred by consent.

3. Whether the Complaint adequately alleges that Mr. Diep used Defendant's website, and that Defendant's website used Meta Pixel, during the statutory period.

4. Whether the Complaint pleads a plausible violation of Section 631(a) of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a), because it adequately alleges Meta intercepted and read or attempted to read the contents of Mr. Diep's communications with Defendant.

5. Whether the Complaint adequately alleges the Meta Pixel is a pen register or trap and trace device in violation of CIPA Section 638.51(a), Cal. Penal Code § 638.51(a).

6. Whether the Complaint adequately pleads a serious intrusion so as to state plausible claims for invasion of Mr. Diep's common law and California Constitutional rights to privacy.

7. Where state law requires Defendant to maintain the confidentiality of information concerning Mr. Diep's use of social services, and Defendant has further promised to maintain the confidentiality of that information, whether Mr. Diep has sufficiently alleged a duty of care so as to state a plausible claim for negligence against Defendant.

8. Whether the Court should resolve class certification issues now, such as the proper scope of the Class, whether individualized issues predominate, and whether Mr. Diep may represent non-resident Class Members, if any exist.

## INTRODUCTION

The Court should deny Defendant Los Angeles Regional Food Bank's motion to dismiss. Because information about food insecurity and the use of social services is highly personal and sensitive, and

---

[1] In violation of N.D. Cal. Civ. L.R. 7-2(b) and 7-4(a)(3) , Defendant's Motion fails to include a notice of motion and statement of issues within its 25-page brief. *See Alexandria Real Estate Equities, Inc. v. RUNLABS (UK) Ltd.*, 2019 WL 4221590, at *1 n.1 (N.D. Cal. Sep. 5, 2019) (Koh, J.) (admonishing defendant that "[f]uture briefs that fail to comply . . . will be stricken").

protected under state law, Plaintiffs adequately allege Plaintiff Tommy Diep, who used Defendant's website, had a reasonable expectation of privacy for purposes of standing, and to state invasion-of-privacy claims. Defendant asserts Mr. Diep consented, but its argument fails to meet its heavy burden at this stage. It also argues he fails to allege certain circumstances of his use of Defendant's website, but in doing so ignores allegations elsewhere in the Complaint. As for Plaintiff's statutory claim under CIPA Section 631(a), Defendant asserts Plaintiff fails to allege certain technical aspects of a violation, but when the Complaint is fairly read, Defendant is wrong. Plaintiff also plausibly alleges the Meta Pixel is a pen register or trap and trace device, such that Defendant violated CIPA Section 638 by installing it on its website without first obtaining a court order. Plaintiff has also adequately pleaded that Defendant's eavesdropping is sufficiently serious to state plausible claims for invasion of his California common law and Constitutional rights to privacy. And because state law protects information about Plaintiff's use of social services, and Defendant has further promised not to share such information, Plaintiff has adequately alleged a duty of care so as to state a plausible claim for negligence against Defendant. Finally, Defendant asks the Court to resolve several fact-intensive, class certification issues now under the guise of a Rule 12(b)(1) request to strike unidentified "class allegations." Especially because some of Defendant's speculative complaints may become mooted by discovery, the Court should reject its invitation to engage in early Rule 23 analysis. As a result, the Court should deny Defendant's motion entirely.

## FACTS

Defendant "is a non-profit organization founded in 1977 that serves over 900,000 people in Los Angeles County each month." Compl. ¶ 41. "Its primary customers are low-income families and persons who are financially vulnerable and facing food insecurity, often including those who are single mothers, elderly, or disabled." *Id.* "In connection with providing access to food," Defendant operates a website providing resources like "maps to locate local food banks and food distribution centers," and "links for users to apply to programs such as CalFresh," the "Commodity Supplemental Food Program," and "the Woman, Infants & Children Program." *Id.* ¶ 42. "In violation of" several privacy laws, however, Defendant "incorporate[s] Meta's tracking technology, the Meta Tracking Pixel ('Pixel'), on [its] website[]," which Defendant "know[s] allows Meta to contemporaneously intercept, and subsequently sell, vast quantities of users' sensitive financial and personal information . . . without their knowledge or consent." *Id.* ¶ 2; *see also*

*id.* ¶ 6 (Defendant "ha[s] incorporated the Pixel onto [its] website[]," which has "caused Plaintiff['s] and other Class Members' confidential communications, [personally identifying information ('PII')], and sensitive financial information to be intercepted by and sent to Meta," and Defendant "knew that by embedding [its] website with the Pixel, [it] w[as] permitting Meta to intercept and use Plaintiff['s] and other Class Members' PII, including sensitive financial information."); *id.* ¶ 44 (Defendant "allow[s] the Pixel to contemporaneously intercept and transmit users' communications on the . . . website").

Meta's "primary function is to deliver personalized advertisements to users by analyzing their browsing patterns and interactions." *Id.* ¶ 67. Thus, "[t]he vast majority of Meta's revenue, approximately 98%, comes from advertising." *Id.* ¶ 66. Pixel "is a snippet of code that Meta offers for free which is then embedded on a third-party website" and "tracks a user's activity in real-time," *id.* ¶ 68. "As soon as a user takes any action on a webpage" embedded with Pixel, its code "re-directs the contents of the user's communications to Meta while the communication between the user and website provider is still occurring." *Id.* As a result, "Meta receives the content of website communications as the website user enters or generates the information, but before the website owner receives it." *Id.* ¶ 69.

With Pixel, "Meta intercepts each page a user visits, what buttons they click, as well as specific information they input into the website, and what they searched," sending "each of these pieces of information to Meta in real time with users' PII." *Id.* ¶ 72. And "if a user is logged into their Facebook or Instagram account when they visit a Food Bank Defendant's website, Meta receives third-party cookies allowing Meta to link the data . . . to the specific Facebook or Instagram user." *Id.* ¶ 73. The data is then "used to create 'custom audiences' to target the user, as well as other Facebook and Instagram users who match that audience's criteria." *Id.* ¶ 78.

Before filing the Complaint, Plaintiff Tommy Diep "visited the Los Angeles Regional Food Bank website on many occasions and used the website to access the 'Find Food' map," including "entering his home address." *Id.* ¶ 25. He also "made calls to the Los Angeles Regional Food Bank through its website and entered his personal information into the website in order to receive emails from the Defendant." *Id.* In doing so, he "communicated [his] intent to receive nutrition assistance with only [Defendant] as the intended recipient[] of such communications." *Id.* ¶ 29.

On Defendant's website, Pixel "tracks and intercepts when users browse the food bank locator interactive map or visit a food distribution location's listing," and "intercepts transmissions a user makes, including their sensitive information, when filling out a form to determine their eligibility for CalFresh," or "when making appointments to determine program eligibility." *Id.* ¶ 85. It was "[u]nbeknownst to" Mr. Diep, however, that Defendant "allowed Meta to intercept this data, revealing [his] sensitive financial condition[]," and allowing Meta to "associate[] the data with [his] Meta account[] and other personal information to target [him] with advertisements." *Id.* ¶ 30. As a result of this intrusion, "after visiting [Defendant's] website[]," Mr. Diep "received several targeted advertisements relating to [his] sensitive financial information or status." *Id.*

People who are "food insecure [are] more likely to experience poor emotional health, including depression, anxiety, and stress," which can cause them "to face social stigma and shame," putting them "in uniquely vulnerable positions within wider society, which is why those facing food insecurity are often suggested by behavioral health professionals to be treated with special dignity and discretion." *Id.* ¶ 99. But Mr. Diep "was reminded of [his] hardship and further stigmatized when [he] was repeatedly targeted with ads directed at exploiting [his] financial hardship[] after visiting [Defendant's] website[]." *Id.* ¶ 100.

Defendant's website "contains a small pop-up on the bottom left of the page purporting to allow users to consent to or decline cookies." *Id.* ¶ 43. "However, whether a user allows cookies, *declines them*, or does not interact with the pop-up at all, the Pixel starts tracking and transmitting information to Meta as soon as the user visits any page . . . beyond the site's landing page." *Id.*

Defendant did not require Plaintiff or others to "opt-in or opt-out for the Pixel's data collection . . . before it began tracking and intercepting user data." *Id.* ¶ 90. And Plaintiff "had no way of knowing" Defendant was "disclosing, and Meta was intercepting, [his] user data including sensitive financial . . . information, when [he] engaged with" Defendant's "website, including using the food locator maps[ and] making appointments . . . because the software is . . . inconspicuously incorporated in the background." *Id.* ¶ 91. Moreover, Defendant's Privacy Policy "touts itself as being 'committed to respecting the privacy of online . . . donors, visitors, volunteers, agency partners and other constituents,'" and Defendant "claims its 'privacy policy demonstrates the Food Bank's commitment to transparency.'" *Id.* ¶ 44.

The Privacy Policy further represents Defendant "'do[es] not trade, share, rent, or sell any information, personal or otherwise, collected on [its] website or through any other means,' and that '[it] will also never send electronic or physical communications of any kind on behalf of any other organization.'" *Id.* But it "omits Meta's exploitation of [users'] sensitive data to sell targeted advertisements." *Id.* These "representations and omissions reinforced Plaintiff's and other Class Members['] reasonable belief and expectation that their data related to their personal and sensitive financial information would remain confidential." *Id.* ¶ 45; *see also id.* ¶ 93 ("Plaintiff[] and other Class Members would not expect this information to be disclosed or intercepted without their consent," especially "[g]iven [Defendant's] representations that this information would remain private and confidential.").

## ARGUMENT

### I. PLAINTIFF ADEQUATELY ALLEGES A REASONABLE EXPECTATION OF PRIVACY

Defendant argues all claims against it should be dismissed with prejudice because "[n]one of th[e] information" Mr. Diep alleges was intercepted "is confidential or sensitive," asserting "none of this information reveals anything regarding Plaintiff Diep's financial status or nutritional needs." Mot. at 3-4. Alternatively, Defendant frames this argument as a standing defect. *See id.* at 9 ("[B]ecause Plaintiff Diep failed to allege the disclosure of any information . . . that is traditionally protected under the common law, he has not suffered an injury in fact and lacks standing to pursue his claims in this Court.").

Whether an alleged privacy invasion is actionable depends on whether "plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). This occurs where the "kind of harm" alleged is "similar to the 'highly offensive' inferences or disclosures that were actionable at common law," though "an 'exact duplicate' is not required"; rather "a match only in the kind of harm and not the degree" is required. *Id.* A plaintiff carries this burden by alleging the disclosure of "embarrassing, invasive, or otherwise private information collected by" a tracking cookie. *See id.* ("To the extent Microsoft's tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information), Popa does not plausibly allege the infringement of any such privacy interest.").

Defendant argues Plaintiff does not allege it "disclosed any such private or sensitive information about Diep." Mot. at 9 (citing *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926-27 (C.D. Cal.

2025) ("Whether the right to privacy is implicated depends on the sort of information revealed . . . . [T]he information must be sufficiently personal or sensitive that its disclosure is harmful.")). But information indicating food insecurity has long been considered personal and sensitive.

"[T]hose facing food insecurity," like Mr. Diep, often "face social stigma and shame" and are "targeted with predatory ads related to their financial status," Compl. ¶ 99; *see also id.* ¶ 100 (Mr. Diep was "reminded of [his] hardship and further stigmatized when [he] w[as] repeatedly targeted with ads directed at exploiting [his] financial hardships"). To help protect against such consequences, California's Welfare and Institutions Code establishes comprehensive confidentiality protections for information concerning individuals receiving public social services. With limited exceptions that maintain the confidentiality of the information, "a person shall not publish or disclose or permit or cause to be published or disclosed a list of persons receiving public social services." Cal. Welf. & Inst. Code § 10850(b). Disclosure of Mr. Diep's efforts in seeking food assistance is thus precisely the type of information traditionally protected against disclosure. *Cf. Sanchez v. Cnty. of San Diego*, 2003 WL 25655642, at *15 (S.D. Cal. Mar. 10, 2003) ("because the identity of the welfare applicant is information contained within the county's files, a person's identity as a welfare applicant constitutes confidential information under § 10850"), *aff'd*, 464 F.3d 916 (9th Cir. 2006); *Shleffar v. Super. Ct.*, 178 Cal. App. 3d 937, 944 n.6 (1986) ("welfare benefits" are "confidential records protected from scrutiny" (citing Cal. Welf. & Inst. Code § 10850)).

Finally, courts that have carefully considered the issue and analyzed it under *Spokeo* have held that "CIPA violations, without more, constitute injury in fact." *See Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1088 (S.D. Cal. 2016) (citing *Matera v. Google Inc.*, 2016 WL 5339806 (N.D. Cal. Sep. 23, 2016) (Koh, J.)). In *Romero*, following the analysis set forth in *Spokeo*, the court held that, "[r]ather than being a 'bare procedural violation,' a CIPA violation is 'the violation of a procedural right granted by statute . . . sufficient . . . to constitute injury in fact.'" 216 F. Supp. 3d at 1089 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016)).

## II. DEFENDANT HAS NOT SHOWN PLAINTIFF CONSENTED TO ITS USE OF THE PIXEL

Defendant argues "all of Plaintiff['s] privacy claims" against it "must be dismissed if Plaintiff Diep consented to the use of the Pixel." Mot. at 6. But "such generalized notice is not sufficient to establish consent." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022). Rather, "for consent

to be actual, the disclosures must 'explicitly notify' users of the practice at issue." *Id.* (quoting *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021)); *see also Campbell v. Facebook, Inc.*, 77 F. Supp. 3d. 836, 847-78 (N.D. Cal. 2014) (to find consent, disclosures must have given users notice of the "specific practice" at issue). Here, "[t]he test is whether a reasonable user who viewed [Defendant's] disclosures would have understood that Meta was collecting the information at issue." *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793 (citing *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014)). Defendant "has the burden to show consent." *See id.* (citing *Calhoun*, 526 F. Supp. 3d at 620). And "determining whether Plaintiffs consented . . . is a 'fact-intensive inquiry' inappropriate for a motion to dismiss" because it "would require the resolution of too many facts not presently before the Court." *See Nguyen v. Elsevier Inc.*, 2025 WL 2901059, at *3 (N.D. Cal. Oct. 7, 2025) (discussing consent under the Video Privacy Protection Act).

Defendant argues Mr. Diep's allegations he did not consent are both "conclusory and general," and "directly contradict[ed]" by "other allegations" that "establish Plaintiff Diep was on notice of and consented to the use of tracking technologies on the [Defendant's] website." Mot. at 7. That is wrong.

First, while there is not much to say when the allegation is a party did not act, the Complaint contains straightforward allegations that Mr. Diep, "did not consent to the [Defendant] sharing [his] sensitive information with Meta . . . ." Compl. ¶ 6; *see also id.* ¶¶ 89-94. Mr. Diep further alleges Defendant's "website contains a small pop-up on the bottom left of the page purporting to allow users to consent to or decline cookies," but "whether a user allows cookies, *declines them*, or does not interact with the pop-up at all, the Pixel starts tracking and transmitting information to Meta as soon as the user visits any page . . . beyond the site's landing page." Compl. ¶ 43. And he alleges Defendant's Privacy Policy suggested his information would *not* be shared, by representing Defendant "do[es] not trade, share, rent, or sell any information, personal or otherwise, collected on our website or through any other means," *id.* ¶ 44, which "reinforced" Mr. Diep's "belief and expectation that [his] data related to [his] personal and sensitive financial information would remain confidential," *id.* ¶ 45.

Second, nothing contradicts Mr. Diep's allegation he did not consent to the challenged practices. Defendant's motion includes a screenshot it suggests, but does not actually claim—much less in an appropriate manner, such as through a declaration or request for judicial notice—is the "small pop-up on

the bottom left of the page" alleged in paragraph 43 of the Complaint. Mot. at 7. Even if the Court considered this naked evidence outside the Complaint to prematurely resolve factual disputes, it demonstrates Mr. Diep must have *affirmatively selected "Accept All"* to have "consent[ed] to [Defendant's] use of cookies." *See id.* (emphasis added). Because no such allegation is in the Complaint, Defendant is wrong that Mr. Diep was "on notice . . . that *by continuing to use the website*, he consented to the use of [tracking] technology." *Id.* (emphasis added).

But even if Mr. Diep had "Accept[ed] All," there would still be no clear consent to *sharing his sensitive financial information with Meta*. Rather, all the notice says is that Defendant uses cookies to "enhance your browsing experience, serve personalized ads or content, and analyze our traffic[.]" *Id.* Contrary to Defendant's assertion, this does not disclose "the precise conduct at issue here," *id.* In the absence of any mention of third parties, and especially when read together with the representation in its privacy policy that Defendant "do[es] not trade, share, rent, or sell any information, personal or otherwise," it is highly plausible a "reasonable user who viewed [Defendant's] disclosures" would not "have understood that *Meta* was collecting the information at issue." *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793 (emphasis added).

Likely aware its own pop-up notice is an insufficient disclosure, Defendant invokes "Meta's Privacy Policy and Cookie Policy" in hopes of demonstrating consent, Mot. at 7, even purporting to "incorporate[] by reference Meta's argument that Plaintiff's consented . . . by virtue of being Facebook account holders," *id.* at 8 n.4. As Plaintiffs argue in response to Meta's Motion to Dismiss and related Request for Judicial Notice, however, Meta's materials are not properly before the Court, and even if they were, they do not demonstrate Plaintiff's consent at this stage sufficiently to bar his claims.

Finally, Defendant also briefly frames its consent argument as a standing defect, *see* Mot. at 9-10, but that contention is wrong for the same reasons.

## III. PLAINTIFF STATES CLAIMS AGAINST DEFENDANT

### A. The Complaint Adequately Alleges when Plaintiff Used Defendant's Website

Defendant argues "there is no basis" in the Complaint "upon which to determine whether the claims against [it] are time-barred." Mot. at 10. It further claims "Plaintiffs do not allege when Plaintiff Diep used the [Defendant's] website." *Id.* That is wrong.

The Complaint alleges Mr. Diep "has visited the . . . website on many occasions," Compl. ¶ 25, that Defendant's "representations and omissions reinforced" his "belief and expectation that [his] data . . . would remain confidential," *id.* ¶ 45, and that "[a]s a result of the . . . incorporation of Pixel on [Defendant's] website[], [Defendant] disclosed, and Meta intercepted, [his] and other Class Members' interactions . . . including communications containing their sensitive personal and financial information," *id.* ¶ 88. He seeks to represent a Class of persons "who, at any time during the year preceding the date of the filing of th[e] Complaint to the time a class is notified . . . used" Defendant's website, *id.* ¶ 109, and alleges his "claims are typical of the Class's claims because they are based on the same underlying facts, events, and circumstances," *id.* ¶ 113. Plaintiff further alleges he "will fairly and adequately represent and protect the interests of the Class" and has "no interests incompatible with the interests of the Class," *id.* ¶ 114. Thus, taking all reasonable inferences in Plaintiffs' favor, Mr. Diep adequately alleges he used Defendant's website within the past year.[2]

Moreover, because he alleges he interacted with Defendant by providing his personal information, *see id.* ¶ 25, Defendant is in possession of the information it claims is missing from the Complaint, and thus on fair notice under Rule 8. If the Court finds Mr. Diep's use of the website during the Class Period inadequately pleaded, however, Plaintiffs could amend the Complaint to allege that, before filing the Complaint, Mr. Diep visited the website as late as April 2025.

**B. Plaintiff Plausibly Alleges Defendant Violated CIPA Section 631(a)[3]**

Plaintiff alleges Defendant violates the fourth clause of CIPA Section 631(a) by "aid[ing]" Meta's violation of the second and third clauses, which impose liability on anyone who "reads or attempts to read, or to learn the contents or meaning of any . . . communication while the same is in transit" or "uses, or attempts to use . . . any information so obtained," Compl. ¶ 127; *see also id.* ¶ 138 (Defendant "gave substantial assistance to Meta in violating Plaintiff['s] and other Class Members' privacy rights.").

---

[2] Some of Plaintiff's claims have a two-year statute of limitations period, but Plaintiff inadvertently alleged a one-year class period. *See* Compl. ¶ 109. Plaintiff, however, "reserv[ed] the right to redefine or amend the class definition prior to or as part of a motion seeking class certification," *id.*, and will likely seek certification of a two-year class period.

[3] Plaintiffs do not bring CIPA Section 632 or 635 against any Food Bank Defendant, only Meta. *Compare* Compl. ¶¶ 145-55, *with* Mot. at 15-16 (arguing Plaintiffs fail to state claims under these Sections).

Defendant does not contest its role in aiding Meta, instead arguing only that Plaintiff has not alleged Meta's underlying violations of Section 631(a), *see generally* Compl. ¶¶ 126-44, for three reasons. Mot. at 11. Each is incorrect.

**i. Plaintiff Adequately Alleges Meta Intercepted His Data**

Defendant first argues "Plaintiff[] fail[s] to allege that the Pixel was utilized on the [Defendant's] website at the time Diep visited the website or that Diep's data was specifically transferred to Meta[.]" *Id.* That is wrong. Plaintiff alleges Defendant "incorporated the Pixel onto [its] website," and its "inclusion of the undisclosed Pixel . . . caused [his] and other Class Members' confidential communications, PII, and sensitive financial information to be intercepted by and sent to Meta." Compl. ¶ 6. And as discussed above, Plaintiff has also sufficiently alleged "during what time [Defendant] used the Pixel," and that "Diep engaged in the . . . activities that the Pixel allegedly tracked." *See* Mot. at 12. Finally, contrary to Defendant's claim, *see id.*, Mr. Diep has alleged what data Meta intercepted. *See* Compl. ¶¶ 5, 25, 72.

**ii. Plaintiff Adequately Alleges Meta's Interception of "Contents"**

"Contents" means "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8).[4] Thus, while "contents" generally "does not include record information, such as the name, address, and subscriber number or identity of a subscriber or customer, when such information is merely generated in the course of the communication," what might otherwise be "record information may constitute 'contents' where the record is the subject of a communication . . . ." *Price v. Carnival Corp.*, 2024 WL 221437, at *6 (S.D. Cal. Jan. 19, 2024) (citation modified) (record citation omitted) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) ["*Zynga*"]); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("If an address, phone number, or URL is . . . part of the substantive information conveyed to the recipient, then by definition it is 'content.'"). Thus, for example, "detailed URLs that reveal the specific document, product, or service that a user is viewing count as contents of communications." *Eating Recovery Ctr.*, 2025 WL 2971090, at *4 (citations omitted); *see also Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal.

---

[4] "According to the Ninth Circuit, the term 'contents' of a communication under CIPA has the same meaning as the parallel term in the federal Wiretap Act." *Doe v. Eating Recovery Ctr. LLC*, --- F. Supp. 3d ----, ----, 2025 WL 2971090, at *4 (N.D. Cal. Oct. 17, 2025) ["*Eating Recovery Ctr.*"] (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ["*Facebook Tracking Litig.*"]).

Dec. 17, 2025) ("the alleged tracking of 'website interactions,' 'user input data,' 'shopping behaviors,' and potentially 'referring URLs' could convey, among other things, what users were searching for or what they wanted to do on UMG's websites," which "would likely entail queries or clicks from users and as a result involve the 'contents' of users' communications with UMG's websites").

Here, Mr. Diep alleges "Meta intercepts each page a user visits, what buttons they click, as well as specific information they input into the website, and what they searched." Compl. ¶ 72. He alleges he "used [Defendant's] website to access the 'Find Food' map, which included entering his home address," "made calls to [Defendant] through its website," and "entered his personal information into the website in order to receive emails from the Defendant." Compl. ¶ 25.[5] Because Mr. Diep was communicating this information directly to Defendant—it was not just stored record information "generated in the course of the communication," *see Price*, 2024 WL 221437, at *6, akin to "[m]etadata associated with electronic communications," *see Sys. Prods. & Sols., Inc. v. Scramlin*, 2014 WL 3894385, at *8 (E.D. Mich. Aug. 8, 2014)—the information was "contents" within the meaning of CIPA; *cf. Zynga*, 750 F.3d at 1106 ("[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information *regarding the characteristics of the message* that is *generated in the course of the communication*." (emphasis added)); *Doe v. Post Acute Med., LLC*, 2025 WL 511069, at *5 (M.D. Pa. Feb. 14, 2025) ["*Post Acute Med.*"] ("When assessing claims under wiretapping statutes, many courts distinguish between the 'contents of' a communication—i.e., the intended message conveyed by the communication—and metadata (sometimes called 'record information' or 'routing information'), which describe the characteristics of the message." (internal quotation marks and citations omitted)).

In *In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003), for example, "the First Circuit correctly concluded that the defendant was disclosing the contents of a communication," where the allegation was that "an entity intercepted the content of the sign-up information customers provided to pharmaceutical websites, which included their 'names, addresses, telephone numbers, email addresses, dates of birth,'" and other information that might otherwise qualify as record information. *See Zynga*, 750 F.3d at 1107 ("the

[5] If necessary, Plaintiffs could amend the Complaint to allege that the URL of Defendant's "Find Food" page, www.lafoodbank.org/find-food/pantry-locator, "reveal[s] enough information to be deemed contents of communications," *see Eating Recovery Ctr.*, 2025 WL 2971090, at *4.

users had communicated with the websites by entering their personal medical information into a form provided by the website" (citing *In re Pharmatrak, Inc.*, 329 F.3d at 15, 18-19)).

Defendant acknowledges that in the context of inputting his personal information into forms, Mr. Diep conveyed content, but argues "he does not allege that Meta . . . intercepted the content of the information he typed in (as opposed to, for instance, just a pageview or URL of the 'Find Food' page)." Mot. at 13. That is wrong. Plaintiff alleges that, "[t]hrough the Pixel, Meta collects information such as visited websites *and user interaction with content* . . . ." Compl. ¶ 4 (emphasis added); *see also id.* ¶ 5 ("Pixel can track and log each page a user visits, what buttons they click, and the specific information they input into the website, such as user-generated inputs into forms"). "The pixel *contemporaneously* takes each of these pieces of information and sends it to Meta . . . ." *Id.* ¶ 5 (emphasis added). "Meta's interceptions . . . occurred concurrently as Plaintiff[] . . . used the [Defendant's] website[]." Compl. ¶ 166. "These allegations plausibly state the interception element." *See Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 894 (S.D. Cal. 2025) ("Plaintiff alleges the tracking software . . . intercepted her electronic communications 'contemporaneously' and 'simultaneously' and redirected them to third-parties, including Meta." (record citation omitted)). Moreover, even Meta's capture of a pageview is contents "when it 'conveys far more than basic identification and address information,'" *see Wiley*, 2025 WL 3654085, at *7 (quoting *Eating Recovery Ctr.*, 2025 WL 2971090, at *4).

In addition, "the definition broadly includes 'the communication or reception of knowledge or intelligence' that is 'relating to' 'a person's intended message to another (i.e., the "essential part" of the communication, the "meaning conveyed," and the "thing one intends to convey").'" *In re Path Network, Inc.*, 703 F. Supp. 3d 1046, 1069 (N.D. Cal. 2023) (construing "any information" in 18 U.S.C. § 2510(8) (citing *Webster's Third New International Dictionary* 470, 1160 (1981))); *cf. Application of U.S. of Am. for an Order Authorizing Use of a Pen Reg. Device*, 407 F. Supp. 398, 406 (W.D. Mo. 1976) (Noting the legislative history of § 2510(8) states:

> Paragraph (8) defines "contents" in reference to wire and oral communication to include all aspects of the communication itself. No aspect, including the identity of the parties, the substance of the communication between them, or the fact of the communication itself, is excluded. The privacy of the communication to be protected is intended to be comprehensive. (quoting 2 U.S. Code Cong. & Admin. News, 90th Cong., 2d Sess. (1968) p. 2179)).

Thus, the statute is violated—not just when a third party intercepts a communication—but also when they obtain knowledge or intelligence about the communication. And "[t]he context of the definition of 'content' . . . indicates that there exists an indiscriminate number of classes or varieties of 'information' that constitute 'content' so long as that 'information' 'concerns' or 'relates to' a 'person's intended message to another.'" *In re Path Network, Inc.*, 703 F. Supp. 3d at 1069. Where, as here, Plaintiff alleges he communicated his personal information to Defendant in filling out a "Find Food" form, information relating to that message—such as the nature of the form he was filling out—is also "content" within the statute. *Cf. Post Acute Med.*, 2025 WL 511069, at *5 ("the line between contents and metadata is not abstract but contextual with respect to each communication," making "the 'content' inquiry a[n] inherently relative and a case-specific one," where "categories of content and non-content overlap and are not mutually exclusive," and "the acquisition of at least some 'content' may be properly inferred from a complaint . . . plausibly demonstrating a broad scheme in which defendants generally acquired and tracked the plaintiffs' internet usage." (citation modified) (citing *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 137)).

**iii. Plaintiff Adequately Alleges Meta Read or Attempted to Read His Communications with Defendant**

Defendant asserts Plaintiffs allegation that Meta "read or attempted to read" the contents of Mr. Diep's communications is conclusory. Mot. at 14 (citing Compl. ¶ 136). It argues that is because, despite alleging Meta is capable of profiling, "[n]owhere do Plaintiffs allege that Plaintiff Diep was served with any targeted advertisements from Meta following his visits to the [Defendant's] website relating to content he allegedly viewed on that website." *Id.* (emphasis omitted). That is wrong. Mr. Diep alleges that, shortly after using Defendant's website, he was "targeted with ads directed at exploiting [his] financial hardships," Compl. ¶ 100; *see also id.* ¶ 30 (Defendant "allowed Meta to intercept this data, revealing [Plaintiff's] sensitive financial condition[], and Meta then associated the data with Plaintiff['s] Meta account[] and other personal information to target [him] with advertisements. Indeed, after visiting [Defendant's] website[], Plaintiff[] received several targeted advertisements related to [his] sensitive financial information or status."). Plaintiff has pleaded exactly what Defendant argues is necessary. *Cf. L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (alleging "recei[pt of] any targeted advertising after interacting with the challenged websites . . . would strengthen the inference that [defendant] learned about

Plaintiffs from reading their communications”). Further, because the statute imposes liability for merely “attempting” to read communications, Defendant is wrong that Plaintiff’s receipt of targeted ads is necessary in the first instance. *See Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) (“allegations regarding the manner in which the Insight Tag operates are sufficient to plausibly allege that LinkedIn at least ‘read’ or ‘learned’ the information”); *Drummer v. CoStar Grp., Inc.*, 2025 WL 3190656, at *4 (C.D. Cal. Oct. 22, 2025) (“the harm Plaintiffs allege—the surreptitious collection and transmission of their economically valuable IP addresses for purposes of targeted tracking—is not dependent on whether they actually received targeted advertisements”).

### C. Plaintiff Adequately Pleads Defendant’s Violation of CIPA Section 638.51

Defendant argues Plaintiff’s claim against it under CIPA Section 638.51 must be dismissed “because Plaintiffs have failed to adequately allege that [Defendant’s] use of the Pixel violates this CIPA Section and because Plaintiff Diep consented to the use of the Pixel.” Mot. at 16. Defendant’s consent argument is wrong for the reasons discussed above, and because Defendant has not shown that the limited consent exception of CIPA Section 638 even applies to it. *See Mirmalek v. Los Angeles Times Commc’ns LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (consent exception in “section 638.51(b) does not apply because Defendant fails to establish that it is a ‘provider of electronic or wire communication service’” (quoting Cal. Penal Code § 638.51(b))); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *12 (N.D. Cal. July 14, 2025) (“Motorola has not established that it is a ‘provider of electronic or wire communication service’”). Defendant’s substantive argument is also wrong.

Defendant contends that because Section 638.51 “prohibits the installation or use of” a device or process “that collects ‘dialing, routing, addressing, or signaling information,’” Plaintiff’s “Section 638.51 claim can be based only on . . . allegations related to IP address,” but “IP address, alone, is not sufficient to give rise to a Section 638.51 claim.” *Id.* (citations omitted). Defendant reads both the Complaint and statute too narrowly, and to support its argument, resorts to citing three cases in violation of California Rule of Court 8.1115(a) (*Aviles*, *Casillas v. BOP*, and *Casillas v. Transitions Optical*).[6] Mot. at 16.

[6] The Rule provides that “[a]n opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action.” Cal. R. Ct. 8.1115(a).

California Penal Code Section 638.51(a) prohibits a person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order," Cal. Penal Code § 638.51(a). A pen register is "a device or process that records and decodes dialing, routing, addressing or signaling information," and a trap and trace device is "one that captures incoming electronic or other impulses to identify the originating number or other dialing, routing, addressing or signaling information reasonably likely to identify the source of a wire or electronic communication." Compl. ¶¶ 157-58 (citing Cal. Penal Code §§ 638.50(b)-(c)). "[T]he Meta Pixel falls under the definition of a pen register or trap and trace device" because it "is a device or process . . . that identifies consumers, gathers data, including addressing information (such as IP addresses[] [and] PII . . . )," *id.* ¶ 159. *See In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1155 (N.D. Cal. 2025) (plaintiffs plausibly alleged Meta Pixel was a pen register); *Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *7 (S.D. Cal. Nov. 18, 2025) ("most cases in this and other districts have also recognized that website-based trackers can plausibly constitute a pen register" (collecting cases)); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (plaintiffs plausibly alleged "TikTok Software . . . embedded in the Website" was a pen register or trap and trace device"). The only citable case Defendant points to is not contrary. In *Khamooshi v. Politico LLC*, the court did not address whether the Pixel is plausibly a pen register or trap and trace device within the meaning of Section 638.51, but instead found that where "the only specific category of information Plaintiffs identify" was being intercepted was "IP addresses for their devices," they had not alleged a privacy invasion. *See* 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025).

### D. Plaintiff Plausibly Alleges Defendant Violated His California Common Law and Constitutional Privacy Rights

"Claims for intrusion upon seclusion and invasion of privacy under the California Constitution have 'similar elements,' and courts therefore 'consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive.'" *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *8 (N.D. Cal. Aug. 29, 2025) (quoting *Facebook Tracking Litig.*, 956 F.3d at 601); *accord Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998) (intrusion upon seclusion); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994) (invasion of Constitutional right to privacy).

"A particular class of information is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Hill*, 7 Cal. 4th at 35. The first element is thus satisfied by alleging a defendant "obtained unwanted access to data about[] the plaintiff," so long as "the plaintiff had an objectively reasonable expectation of seclusion or solitude in the . . . data source." *Shulman*, 18 Cal. 4th at 232. Moreover, "the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant." *Hill*, 7 Cal. 4th at 37.

Defendant argues Plaintiff Diep's invasion of privacy claims fails because he inadequately alleges both a reasonable expectation of privacy and a sufficiently serious intrusion. Mot. at 17-18. Not so.

As noted above, California has established comprehensive confidentiality protections for information concerning individuals receiving public social services, like food assistance. *See* Cal. Welf. & Inst. Code § 10850. This means Mr. Diep had a reasonable expectation of privacy in his browsing behavior and communications that would reveal this sensitive information. That expectation was bolstered through Defendant's own representations and promises not to share his data. Compl. ¶ 44.

In addition, "[c]ourts have held that plaintiffs have a reasonable expectation of privacy where data is collected without their consent." *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *14 (N.D. Cal. Oct. 16, 2025) (quoting *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021)), and "conduct is more likely to be 'highly offensive' where the defendant 'surreptitious[ly]' collects sensitive information," *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (quotation omitted); *see also Gabrielli*, 2025 WL 2494368, at *9 (finding "highly offensive" invasion plausible where, "even after [Plaintiff] rejected all cookies, [Defendant] continued to . . . . permit[] the Third Parties to track and collect Plaintiff's private communications as Plaintiff browsed the websites." (record citation omitted; citation modified)). That is the allegation here, that "whether a user allows cookies, *declines them*, or does not interact with [a] pop-up at all, the Pixel starts tracking and transmitting information to Meta as soon as a user visits any page, such as the Find Food page, beyond the sites' landing page." Compl. ¶ 43.

Ultimately, whether Defendant's "tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage," but "Plaintiffs have identified sufficient facts to survive a motion to dismiss." *See Facebook Tracking Litig.*, 956 F.3d at 606.

**E. Plaintiff Plausibly Alleges Defendant Was Negligent**

Defendant argues Plaintiff's Negligence claim should be dismissed because he fails to allege Defendant had a duty of care. Mot. at 18. As discussed above, however, California law prohibits Defendant from "publish[ing] or disclos[ing] or permit[ting] or caus[ing] to be published or disclosed a list of persons receiving public social services." Cal. Welf. & Inst. Code § 10850(b). *Cf. R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 897 (C.D. Cal. 2024) ("a duty may arise from HIPAA and serve as the basis for a negligence claim under California law"). Defendant further assumes and acknowledges this duty when it promises it is "'committed to respecting the privacy of online . . . visitors," and "'do[es] not trade, share, rent, or sell any information, personal or otherwise, collected on [its] website or through any other means,' and that '[it] will also never send electronic or physical communications of any kind on behalf of any other organization.'" Compl. ¶ 44. Transmitting users' behavior on Defendant's website, such as entering information to seek out food assistance, breaches Defendant's duty because it "conveys a significant possibility that [Mr. Diep] had [public assistance] at the time [he] visited the [Defendant's] website." *See Eating Recovery Ctr.*, 2025 WL 2971090, at *4.

**IV. PLAINTIFF'S CLASS ALLEGATIONS SHOULD NOT BE STRICKEN**

Defendant asks the Court to analyze and resolve class certification issues now, such as whether Plaintiff's "claims are inherently individualized," Mot. at 22, and whether his "proposed class is facially overbroad," *id.* at 21. But "[c]lass allegations generally are not tested at the pleadings stage and instead are tested after one party has filed a motion for class certification." *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012) (Beeler, J.) (citations omitted). Here, the Court should decline Defendant's invitation to resolve such complex, fact-intensive questions at this early stage, under the rubric of a Rule 12(b)(1) motion to strike. *See W.A. Call Mfg. Co., Inc. v. WiLine Networks Inc.*, 2025 WL 2624967, at *4 (N.D. Cal. Sep. 11, 2025) (Beeler, J.) (denying motion to strike class allegations based on defendant's argument that "individualized inquiries . . . will predominate over common questions"). Because "often the pleadings alone will not resolve the question of class certification and . . . some discovery will be warranted," the Ninth Circuit has opined that, while certification issues may be resolved early, "the better and more advisable practice . . . is to afford litigants an opportunity to present evidence as to whether a class action [is] maintainable." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).

Here, Plaintiff has not yet moved to certify a class, and the Complaint "reserv[es] the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, including by creating different or additional subclasses," Compl. ¶ 109. Prior to any discovery, it is premature to address whether, and to what extent it matters to a future hypothetical class definition, for example, that some people "may have visited the website for reasons other than to seek out food service" or "did not have a Facebook or Instagram account[.]" *See* Mot. at 21.

Defendant further argues the Court should strike the "First and Fourth Causes of Action on behalf of the purported nationwide class," because "only California Plaintiffs may bring claims for alleged violations of the CIPA and the California Constitution . . . ." Mot. at 21. That is wrong. As a threshold matter, because Defendant's website is designed to provide local assistance, *see* Compl. ¶ 41, it is unlikely a substantial portion of the class will be out-of-state residents.

But even if discovery reveals some class members reside out of state, "[i]f the conduct that 'creates liability' occurs in California, California law properly governs that conduct." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) (quoting *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)). CIPA applies to intercepted communications "in transit or passing over any wire, line, or cable . . . being sent from, or received at any place within this state[.]" Cal. Penal Code § 631(a). The statute's legislative declaration in Section 630 "to protect the right of privacy of the people of this state," *id.* § 630, by contrast, does not explicitly limit application to California residents only. "A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents." *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) (non-resident subscribers had standing to assert CIPA claims against California defendants).

Because CIPA establishes territorial jurisdiction based on where a communication originates, terminates, or passes through rather than the residency of those involved, California companies like Defendant can be subject to CIPA liability for invading the privacy of out-of-state residents when the wrongful conduct occurs in California. *See Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078-79 (N.D. Cal. Sep. 7, 2023) (citations omitted); *cf. Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *3 (N.D. Cal. Aug. 9, 2021) (data breach

allegations regarding California defendant "sufficient to allow out-of-state plaintiffs to seek recovery under California law").

In a case Defendant cites, *Ahringer v. LoanDepot, Inc.*, the court held CIPA may apply to "non-California residents," but relied on the legislature's declaration of intent in Section 630 to limit its application to such persons "who were in California when the alleged CIPA wrong occurred," *see* 715 F. Supp. 3d 1274, 1284 (C.D. Cal. 2024). There is no analytical or legal need for such a limitation, which the court seemingly imposed based on a mistaken reading of a case it cited as support for its conclusion, *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699 (S.D. Cal. June 29, 2016).

In *Bona Fide Conglomerate*, the defendant-counterclaimant alleged the plaintiff-counterdefendant made recordings in violation of CIPA while "located in California," and the court found the defendant-counterclaimant had "statutory standing to bring a CIPA claim to the extent the relevant conduct (recordings) took place in California." *Id.*, at *6. Because the nominal plaintiff was located in California, the *Ahringer* court seemed to have read a "located in California" requirement *for plaintiffs* into CIPA Section 631(a), but *Bona Fide Conglomerate* demonstrates just the opposite: when the complained of conduct occurred in California, it is actionable under CIPA.

Finally, Defendant argues that:

> to the extent that Plaintiffs also seek to pursue claims for common law invasion of privacy and negligence (their Third and Fifth Causes of Action) on behalf of their defined class, they, as California residents, lack standing to bring claims on behalf of a nationwide class whose claims would be resolved under the laws of different states.

Mot. at 21 (citing *Krantz v. Old Copper Co., Inc.*, 794 F. Supp. 3d 724, 746 (C.D. Cal. 2025)). Defendant misreads the Complaint and misunderstands California's choice of law analysis.

Plaintiff is not "seek[ing] to assert claims" against Defendant "based on the laws of other states," *see Krantz*, 794 F. Supp. 3d at 746. Rather, he is asserting California common law claims on behalf of the Class. *See* Compl. ¶¶ 109, 170-79, 189-92. If, as here, a plaintiff asserts a claim for "intrusion upon seclusion . . . under California common law," including on behalf of out-of-state residents, "'a federal court sitting in diversity must look to the forum state's choice of law rules,' thus requiring the court to apply California's 'governmental interest approach' to determine questions of choice of law." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 946 (N.D. Cal. 2023) (alteration omitted) (quoting *Zinser v. Accufix Rsch. Inst., Inc.*,

253 F.3d 1180, 1187 (9th Cir. 2001)). "This is a three-step process." *Id.* And given its complexity, even where a "Defendant explains that significant differences exist . . . that render it inappropriate to apply California law," its "choice of law analysis is too sparse to fulfill its burden," and "such analysis is premature at the pleading stage" anyway. *See id.* As a result, "district courts in this Circuit have often deferred choice-of-law issues until the class certification stage." *Id.*; *see also Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 894 (N.D. Cal. 2022) (deferring choice of law analysis until class certification); *Robichaud v. Speedy PC Software*, 2013 WL 818503, at *15 (N.D. Cal. Mar. 5, 2013) (Beeler, J.) (denying motion to strike class allegations where defendant argued "differences in state law preclude certification").

Here, Defendant does not even go that far, only asserting in a single conclusory sentence that the Class's "claims would be resolved under the laws of different states." Mot. at 21. As a result, unlike in *Krantz* and *Katz-Lacabe*, where the courts elected to perform a choice of law analysis at the pleading stage, here Defendant has not shown "it is evident from the complaint that 'any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed.'" *See Krantz*, 794 F. Supp. 3d at 748 (quoting *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009)). Especially because it is unclear there will be a substantial number of Class members—or any—who were not California residents when they used Defendant's website, the Court should reserve for class certification the question of the proper scope of the Class's claims.

**CONCLUSION**

The Court should deny LAFB's motion, but if the Court is inclined to grant the motion in any respect, Plaintiffs request dismissal be without prejudice and with leave to amend.

Dated: January 7, 2026

Respectfully Submitted,

/s/ Melanie R. Monroe

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*

DANIEL E. SACHS
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiffs***