Michael W. M. Manoukian, Bar No. 308121
michael.manoukian@lathropgpm.com
LATHROP GPM LLP
70 South First Street
San Jose, CA 95113

**Mailing Address:**
P.O. Box 1469
San Jose, CA 95109-1469
Telephone: 408.286.9800
Facsimile: 408.998.4790

Attorneys for Defendant
SACRAMENTO FOOD BANK
AND FAMILY SERVICES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

NATASSIA TIMOTHEE, TOMMY DIEP, ESPERANZA REYES, MARIAELENA BURCIAGA, and STACY PENNING on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

v.

META PLATFORMS, INC., SACRAMENTO FOOD BANK AND FAMILY SERVICES, LOS ANGELES REGIONAL FOOD BANK, CENTRAL CALIFORNIA FOOD BANK, and SAN FRANCISCO FOOD BANK d/b/a SAN FRANCISCO-MARIN FOOD BANK,

Defendants.

Case No. 3:25-cv-05106-LB

**DEFENDANT SACRAMENTO FOOD BANK AND FAMILY SERVICES' REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT AND REQUEST FOR JUDICIAL NOTICE**

**[Dkt. No. 43]**

Judge: Hon. Laurel Beeler
Date: March 26, 2026
Time: 9:30 a.m.
Dept.: Courtroom B, 15th Floor

## TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ........ 1
I. INTRODUCTION ........ 1
II. ARGUMENT ........ 2
A. The Court May Take Judicial Notice of Screenshots of the SFBFS Website........ 2
B. Timothee's Consent is Fatal to Each of the Privacy Claims Against SFBFS........ 4
C. Each of Plaintiffs' Claims Fails for Additional Reasons. ........ 5
1. Plaintiffs Lack Standing to Bring a Claim Under CIPA and Fail to Allege that "Contents" of Communication Were Intercepted as Required to State a CIPA Claim. ........ 5
2. Plaintiffs' Common Law and Constitutional Privacy Claims Fail Because There Was No Reasonable Expectation of Privacy and the Data Collection Was Not "Highly Offensive." ........ 8
3. Plaintiffs Fail to Plausibly Allege a Duty or Injury to Support Their Claim for Negligence. ........ 9
III. CONCLUSION ........ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. v. SelectQuote Ins. Servs.*, No. 3:23-CV-02258-RBM-MSB, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .......... 3

*In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) .......... 3

*Copelan v. Techtronics Indus. Co.*, 95 F. Supp. 3d 1230 (S.D. Cal. 2015) .......... 3, 4

*Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 7

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 8, 9

*In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 5

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 6

*Heeger v. Facebook, Inc.*, No. 18-CV-06399-JD, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) .......... 8

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994) .......... 9, 11

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .......... 3, 4

*King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 2:24-CV-01119-DC-CKD, 2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 7

*Kleiman v. Equable Ascent*, No. CV 12-9729 CAS AJWX, 2013 WL 49754 (C.D. Cal. Jan. 3, 2013) .......... 8

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 10

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 9

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 7

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) .......... 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 6

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 7

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 10

*Saeedy v. Microsoft Corp.*,
No. 23-cv-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......... 8

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 5

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .......... 10

*Stark v. Patreon, Inc.*,
656 F. Supp. 3d 1018 (N.D. Cal. 2023) .......... 3

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. 2024) .......... 8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 7

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 6, 7

**Statutes**

California Invasion of Privacy Act, Cal. Penal Code § 631(a) .......... 2, 5, 6

California Invasion of Privacy Act, Cal. Penal Code § 632(a) .......... 6

California Invasion of Privacy Act, Cal. Penal Code § 635 .......... 6

California Invasion of Privacy Act ("CIPA") .......... *passim*

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

California Welfare and Institutions Code § 10850(b) ........ 10

**Rules**

Fed. R. of Civ. P. Rule 12(b)(6) ........ 5

Fed. R. of Evid. 201 ........ 3, 4

**Other Authorities**

California Constitution ........ 1, 2, 4

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether this Court may consider the SFBFS website under the doctrines of judicial notice and/or incorporation by reference.

2. Whether Plaintiffs' CIPA, California Constitution Invasion of Privacy, and Common Law Invasion of Privacy claims fail because Timothee consented to the challenged data collection.

3. Whether Plaintiffs lack standing to bring a CIPA claim against SFBFS.

4. Whether Plaintiffs have sufficiently alleged that the "contents" of a communication, rather than mere record information, were intercepted as required for their CIPA claim.

5. Whether Timothee had a reasonable expectation of privacy in the information allegedly intercepted, and whether disclosure of such information was "highly offensive" as required to state a claim for common law and constitutional invasion of privacy.

6. Whether Plaintiffs have sufficiently alleged a legal duty and concrete injury as required to state a negligence claim.

## I. INTRODUCTION

Plaintiffs' vague, largely conclusory allegations against Defendant Sacramento Food Bank and Family Services ("SFBFS") amount to this: that Plaintiff Natassia Timothee ("Timothee") visited the website for SFBFS, a non-profit organization serving individuals facing food insecurity in Sacramento County. Plaintiff used her home address to search the website's "Find Food" map. Data related to those actions was purportedly captured by co-defendant Meta Platform, Inc.'s ("Meta") Pixel product, which is embedded on the SFBFS website, and then shared with Meta for marketing purposes. On those allegations, Timothee and the other named Plaintiffs assert a slew of privacy and tort claims against SFBFS.

Each of Plaintiffs' claims against SFBFS fails. As an initial matter, Timothee was on notice of and consented to the challenged data collection by virtue of the Privacy Policy posted on the SFBFS website, which is heavily referenced and quoted in the complaint, and which this Court may consider in connection with its disposition of this motion under the doctrines of both judicial notice

and incorporation-by-reference. Her consent is fatal to Plaintiffs' claims against SFBFS. However, even putting aside consent, each of Plaintiffs' claims against SFBFS fails for additional, independent reasons. First, Plaintiffs confirm that the scope of their CIPA claim is narrow, alleging liability against SFBFS only under the fourth clause of § 631(a). But Plaintiffs lack standing to bring that claim, and, regardless, the claim fails because the generalized, record information purportedly intercepted (Timothee's address) is not "contents" of a communication as required under CIPA. Both of Plaintiffs' remaining privacy claims against SFBFS—their common law privacy claim and their claim brought pursuant to the California Constitution—fail because Plaintiff had no reasonable expectation of privacy and, further, because the purported invasion was not "highly offensive," especially when considered in light of the important, socially beneficial purpose served by SFBFS in collecting that information. Finally, with respect to their negligence claim, Plaintiffs attempt to impose a legal duty on SFBFS where there is none, and their conclusory, speculative allegations are insufficient to adequately plead a basis for damages.

For these reasons and the reasons set forth more fully in SFBFS's opening brief, SFBFS respectfully requests that the Court grant its motion and dismiss it from this action.

## II. ARGUMENT

### A. The Court May Take Judicial Notice of Screenshots of the SFBFS Website.

SFBFS's website is the central figure in Plaintiffs' allegations against SFBFS. SFBFS has asked the Court to take judicial notice of the contents of three discrete screenshots of limited portions of that website, attached to its motion as Exhibits A, B, and C: its homepage, its Privacy Policy, and the page containing the "Find Food" map and CalFresh forms.[1] Each of those pages was heavily referenced—and, in the case of the Privacy Policy, quoted—by Plaintiffs in their complaint. *See* Doc. 1 ¶¶ 24, 37–39, 84. In opposing SFBFS's request, Plaintiffs' position thus appears to be that, while they can cherry pick portions of SFBFS's website that support their claims,

[1] Plaintiffs mischaracterize the scope of SFBFS's request. SFBFS is not asking the Court to take judicial notice of the entirety of its website, as Plaintiffs suggest, nor is SFBFS asking the Court to take judicial notice of its statements in its motion to dismiss regarding the website's operability and functionality. *See* Doc. 60 at 12–15. Rather, SFBFS asks the Court to take judicial notice of the contents of three discrete pages from its website—Exhibits A, B, and C—which are referenced heavily and quoted in Plaintiffs' complaint.

SFBFS is not permitted to present the entirety of those pages for context.

Plaintiffs' primary argument against judicial notice is their contention that Exhibits A, B, and C were not adequately authenticated and, as such, "it is not even clear these are the versions that were in effect when Ms. Timothee used the website." Doc. 60 at 13. However, Plaintiffs do not submit any evidence supporting this theory, and the Privacy Policy itself provides an effective date of August 19, 2024 (*see* Doc. 43 at Ex. B), well prior to the filing of this lawsuit. *See A.S. v. SelectQuote Ins. Servs.*, No. 3:23-CV-02258-RBM-MSB, 2024 WL 3881850, at *4 n.4 (S.D. Cal. Aug. 19, 2024) (considering privacy policy on motion to dismiss and rejecting plaintiffs' attempt to dispute authenticity of the policy where plaintiffs made unsupported claim that website had been changed since filing of lawsuit). Regardless, the allegations in the complaint undercut this argument. Indeed, the Privacy Policy language quoted in the complaint (*see* Doc. 1 ¶ 39) is reflected word-for-word in Exhibit B. Plaintiffs cannot credibly cast doubt on the authenticity of Exhibits A, B, and C when the validity of those exhibits is supported by the allegations in the complaint itself.

For these reasons, and the reasons discussed in SFBFS's opening brief, judicial notice is proper under Federal Rule of Evidence 201. But even if the Court declines to take judicial notice of the proffered screenshots, the Court may nonetheless consider Exhibits A, B, and C under the incorporation-by-reference doctrine, which permits consideration on a motion to dismiss of documents identified in the complaint whose authenticity is not questioned by the parties—including a website's privacy policy. *See Copelan v. Techtronics Indus. Co.*, 95 F. Supp. 3d 1230, 1236–37 (S.D. Cal. 2015); *see also Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018, 1023 (N.D. Cal. 2023) (incorporating privacy policy by reference for the purpose of showing what defendant's website disclosed to its users); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1207 (N.D. Cal. 2014) (incorporating privacy policy referenced in the complaint); *A.S.*, 2024 WL 3881850, at *4 (incorporating privacy policy by reference where plaintiffs reference privacy policy throughout complaint).

As discussed above, Plaintiffs do not credibly dispute the authenticity of Exhibits A, B, and C. Nor could Plaintiffs make any argument that those materials were not embraced by the pleadings. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (holding that a

document may be deemed incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"). Again, the complaint relies heavily on these pages, describing their contents and quoting from the Privacy Policy. *See* Doc. 1 ¶¶ 24, 37–39, 84. And "the court may consider the full text of those documents even when the complaint quotes only selected portions." *Copelan*, 95 F. Supp. 3d at 1237. This "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002.

Plaintiffs' complaint walks through SFBFS's website, from the homepage, to the Privacy Policy, to the Food Map. Exhibits A, B, and C provide context for the selective, cherry-picked portions of those pages quoted and described by Plaintiffs. Considering those materials in connection with the disposition of SFBFS's motion to dismiss is proper under both Rule 201 and the incorporation-by-reference doctrine.

**B. Timothee's Consent is Fatal to Each of the Privacy Claims Against SFBFS.**

As a threshold matter, each of Plaintiffs' "privacy claims" against SFBFS—their claim under the California Invasion of Privacy Act ("CIPA") (Count I), their claim for common law invasion of privacy (Count III), and their claim for invasion of privacy under the California Constitution (Count IV)—fails for the simple reason that Timothee consented to the alleged collection of her data.

In their opposition, Plaintiffs argue that the Privacy Policy does not disclose the specific conduct challenged in this case and therefore Timothee could not have consented. Doc. 60 at 16–19. But the Privacy Policy expressly discloses that the SFBFS website "uses data analytics to analyze usage trends, administer the site, [and] track our users' movements across our site for aggregate use and for marketing purposes." Doc. 43 at Ex. B. And the cherry-picked excerpts from the Privacy Policy quoted in Plaintiffs' opposition omit important information regarding its disclosures related to third party use. Contrary to Plaintiffs' assertion that SFBFS makes no mention of marketing as it relates to third parties (*see* Doc. 60 at 17), the Privacy Policy specifically provides that "SFBFS does not . . . share . . . personal information with any third parties <u>other than for marketing purposes</u> and if compelled by a legal action." Doc. 43 at Ex. B (emphasis added). The

Privacy Policy thus clearly advises the user that the SFBFS website uses data analytics, that those analytics track users' movements on the site, and that this data is used for marketing purposes—including through disclosure of that data to third parties, which is the specific conduct Plaintiffs challenge here.

Timothee was also on notice of the challenged conduct via Meta's terms of service and privacy policy, which Timothee agreed to when she signed up for her Facebook and/or Instagram account, and which were presented in connection with Meta's pending motion to dismiss. *See* Doc. 46 at 12. Those policies "contain numerous disclosures related to information collection on third-party websites" and thus expressly disclose the specific conduct challenged here: that third parties such as SFBFS may use tools like Pixel to collect information from Meta users when users visit their sites, and, importantly, that Meta may use that data for advertising purposes. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018) (in considering Meta's terms and policies, noting that "[a] reasonable person viewing those disclosures would understand that [Meta] maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes"); *see also* Doc. 46 at 12.

Timothee was on notice of the challenged data collection. Under these circumstances, her consent to that collection may be implied. *See In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2014) (consent may be implied where the party whose communication was intercepted was on notice that the communication would be intercepted).

### C. Each of Plaintiffs' Claims Fails for Additional Reasons.

Even if the Court disagrees regarding the issue of consent, each of Plaintiffs' claims against SFBFS suffer additional, fatal deficiencies, which, standing alone, justify dismissal under Federal Rule of Civil Procedure 12(b)(6).

#### 1. Plaintiffs Lack Standing to Bring a Claim Under CIPA and Fail to Allege that "Contents" of Communication Were Intercepted as Required to State a CIPA Claim.

SFBFS first addresses Plaintiffs' statutory privacy claim, brought under CIPA. Plaintiffs' opposition confirms that they are proceeding only on § 631(a) against SFBFS and only on the fourth

avenue of relief under that section, abandoning all other claims and theories of liability against SFBFS under CIPA.[2]

As discussed in SFBFS's opening brief, Plaintiffs' CIPA claim fails because Timothee consented to the alleged collection of her data. Plaintiffs' arguments against consent are unpersuasive and are addressed above. But Plaintiffs' CIPA claim also fails for additional, independent reasons. First, Plaintiffs lack standing to bring a claim under CIPA, because they fail to allege a concrete and particularized injury with respect to SFBFS. Plaintiffs' opposition only reinforces this fatal deficiency. Indeed, Plaintiffs are still unable to articulate what "concrete and particularized" and "actual and imminent" injury Timothee suffered as a result of her limited interactions with SFBFS's website. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) ("To have standing, plaintiff must have suffered an 'injury in fact' that is both 'concrete and particularized' and 'actual or imminent.'"). Plaintiffs discuss the data that was allegedly collected—which was limited to Timothee's address (*see* Doc. 1 ¶ 24)—but they do not explain <u>how</u> that alleged collection <u>injured</u> Timothee. *See* Doc. 60 at 19. As in the complaint, Plaintiffs offer only vague, conclusory allegations regarding the injuries purportedly suffered by Timothee, which are insufficient to establish the injury-in-fact necessary to confer standing.

Plaintiffs' CIPA claim also fails because they do not plausibly allege that the "contents" of a communication—as opposed to mere "record information"—were intercepted. In their opposition, Plaintiffs do not dispute that the "contents" of a communication generally do not include "record information," such as an individual's name and address. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092–93 (N.D. Cal. 2022) ("Generally, customer information such as a person's name, address, and subscriber number or identity is record information, but it may be contents when it is part of the substance of the message conveyed to the recipient."); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (holding that "contents" under CIPA does not

---

[2] In their opposition, Plaintiffs do not address any of the arguments raised by SFBFS in favor of dismissal of their claims under the first three clauses of § 631(a), effectively conceding that their sole theory of liability against SFBFS is under clause four. Plaintiffs likewise fail to address SFBFS's arguments regarding §§ 632(a) and 635 of CIPA. As such, to the extent the complaint is even construed as asserting claims against SFBFS under those sections, those claims must be dismissed.

include customer record information such as name or address). Rather, Plaintiffs argue that the information allegedly shared with Meta is "content" under the circumstances because it is the "subject" of the communication, citing a slew of inapposite cases discussing, for example, detailed travel information entered into a website's text box, *see Price v. Carnival Corp.*, 712 F. Supp. 3d 1347 (S.D. Cal. 2024), detailed URLs that include search terms, *see Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025), and personal medical information entered into a sign-up form, *see In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003), among others.

But the information in those cases is nothing like what is at issue here, which, again, with respect to Timothee, is entirely limited to her inputting her address into SFBFS's Find Food map. Doc. 1 ¶ 24. Plaintiffs do not allege that she provided any additional information or engaged in any other searches on SFBFS's website. Plaintiffs reference the website's CalFresh inquiry form and the sites linked from that form, but they do not allege that Timothee ever filled out such a form or otherwise provided the information requested on that form or the linked sites.[3] *Id.* ¶ 84. Timothee's address is record information, and her interactions with the Find Food map via "button clicks" likewise do not constitute "contents" of a communication. *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (citing *In re Zynga Priv. Litig.*, 750 F.3d at 1106) (holding that "button clicks" are "more akin to the 'record' information that the Ninth Circuit has held not to be contents of a communication"); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (explaining that "mouse clicks" do not constitute "message content in the same way that the words of a text message or an email do" for purposes of CIPA). These communications are akin to routing information designed to help individuals—such as Timothee—navigate SFBFS's website to locate food distribution sites. And "although 'descriptive URLs that reveal specific information about a user's queries' may reflect the 'contents' of communications under CIPA," *see King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 2:24-CV-01119-DC-CKD, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025), Plaintiffs do not include any

[3] And, regardless, the information requested by that form, as alleged in the complaint (*see* Doc. 1 ¶ 84), would likewise qualify as non-content "record" information.

allegations describing Timothee's search queries, if any, on SFBFS's website.

**2. Plaintiffs' Common Law and Constitutional Privacy Claims Fail Because There Was No Reasonable Expectation of Privacy and the Data Collection Was Not "Highly Offensive."**

SFBFS addresses Plaintiffs' common law and constitutional privacy claims in tandem because they have similar elements and, as such, suffer the same deficiencies.[4] Again, as argued in SFBFS's opening brief and as discussed above, Timothee did not have a reasonable expectation of privacy because she was aware of and consented to the collection of data analytics through SFBFS's Privacy Policy. And, "[g]enerally, the internet is not a place where users have a reasonable expectation of privacy." *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *1–2 (S.D. Cal. 2024); *see also Saeedy v. Microsoft Corp.*, No. 23-cv-1104, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (stating that "mouse movements, clicks, keystrokes, keywords, URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections to a shopping cart, and website browsing activities" are not the types of information in which plaintiffs could have "a reasonable expectation of privacy").

But, even if the Court finds that Timothee had a reasonable expectation of privacy in her generalized record information, disclosure of such information is not "highly offensive" as required to state a claim for common law and constitutional invasion of privacy. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (in analyzing common law and constitutional privacy claims, courts "ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive"). Plaintiffs' arguments on this point are unpersuasive. The "highly offensive" requirement provides "an important limit on the tort of invasion of privacy because it prevents this tort from becoming an all-encompassing and always litigable assertion of individual right." *Kleiman v. Equable Ascent*, No. CV 12-9729 CAS AJWX, 2013 WL 49754, at *3 (C.D. Cal. Jan. 3, 2013) (internal quotations omitted). "While analysis of a

[4] Although "these are distinct claims with different elements[,] [w]hen brought together on the same factual basis . . . it is appropriate to assess the two claims together and examine 'the largely parallel elements' of these two claims." *Heeger v. Facebook, Inc.*, No. 18-CV-06399-JD, 2019 WL 7282477, at *3 (N.D. Cal. Dec. 27, 2019).

reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606. As the California Supreme Court recognized in *Hill*:

> Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest. Legitimate interests derive from the legally authorized and socially beneficial activities of government and private entities. Their relative importance is determined by their proximity to the central functions of a particular public or private enterprise. Conduct alleged to be an invasion of privacy is to be evaluated based on the extent to which it furthers legitimate and important competing interests.

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 38 (1994) (emphasis added).

SFBFS is a non-profit organization serving vulnerable and hard-to-reach groups facing food insecurity in Sacramento County. Doc. 1 ¶ 36. Plaintiffs do not dispute the "critical" role that SFBFS (and the other defendant food banks) plays in providing "access to local, affordable food assistance." *Id.* ¶ 101. SFBFS collected a minimal amount of personal information from Timothee in connection with the important, socially beneficial purpose of providing access to food. "[C]ourts have a role to play in 'weed[ing] out claims that involve so insignificant or de minimus an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1140 (E.D. Cal. 2021) (quoting *Hill*, 7 Cal. 4th 1, 37). This is the very type of case that warrants dismissal.

### 3. Plaintiffs Fail to Plausibly Allege a Duty or Injury to Support Their Claim for Negligence.

Plaintiffs' negligence claim against SFBFS must be dismissed because Plaintiffs fail to plausibly allege either a legal duty or any concrete injury.

With respect to duty, the complaint simply alleges that SFBFS owed an unspecified "duty of care" to Plaintiffs. Doc. 1 ¶ 190. Plaintiffs now attempt to supplement their theory of relief, alleging for the first time that SFBFS's duty arises under CIPA, which Plaintiff argues confers upon SFBFS a duty "not to aid Meta's eavesdropping and subsequent use of confidential communications." Doc. 60 at 26. Plaintiffs alternatively argue that SFBFS has a duty under

§ 10850(b) of the California Welfare and Institutions Code. *Id.* Neither of these theories were alleged by Plaintiffs in their complaint. Regardless, Plaintiffs do not cite any authority supporting their argument that SFBFS owes Plaintiffs a duty under either statute.

Indeed, one of the cases cited by Plaintiffs, *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024), actually supports SFBFS's arguments for dismissal. In that case, the plaintiffs asserted four separate duties owed by the defendant—one of which was raised for the first time in the dismissal briefing. *Id.* at 895. The Court declined to consider that theory of relief, "only consider[ing] the parties' arguments concerning the duties actually referenced in the [complaint]." *Id.* And with respect to one of the other duties alleged by the plaintiffs—which stemmed from an unspecified "special relationship" between the parties—the Court found that, because the plaintiffs had failed to allege the source of that relationship, their allegations were insufficient to support their negligence claim on that theory. *Id.* at 896. Here, as in *R.C.*, the Court should decline to consider the newly posited "duties" under CIPA and the California Welfare and Institutions Code. The Court should likewise find that Plaintiffs have failed to adequately allege a duty of care owed to them by SFBFS.

As to injury, Plaintiffs argue that they have adequately pleaded a basis for damages. But Plaintiffs have not pleaded any "appreciable, nonspeculative, present harm" caused by the purported disclosure of Timothee's personal information to Meta. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962–63 (S.D. Cal. 2012) ("The breach of a duty causing only speculative harm or the threat of future harm does not normally suffice to create a cause of action for negligence."). Their conclusory statement that Timothee "sustained foreseeable harm and damages" (Doc. 1 ¶ 192) and their speculative allegations regarding the value of her personal data (*id.* ¶¶ 102–108)—based on amounts Meta is purportedly considering charging for ad-free products in the EU—are insufficient to support their negligence claim against SFBFS. And the alleged loss of personal information, absent specific allegations of misuse or actual harm, is insufficient to sustain Plaintiffs' claim under California law. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (holding that plaintiff failed to "articulate a nonspeculative theory of actual harm" where LinkedIn allegedly disclosed personal information).

## III. CONCLUSION

"No community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy." *Hill*, 7 Cal. 4th 1, 37. For the reasons set forth above and in SFBFS's opening brief, SFBFS respectfully requests that the Court grant its motion and dismiss it from this action.

Dated: February 17, 2026

LATHROP GPM LLP

By: */s/ Michael W. M. Manoukian*
Michael W. M. Manoukian
Attorneys for Defendant
SACRAMENTO FOOD BANK AND FAMILY SERVICES