LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Marissa Alter-Nelson (*pro hac vice*)
*marissa.alter-nelson@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice* forthcoming)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

NATASSIA TIMOTHEE, TOMMY DIEP, ESPERANZA REYES, MARIAELENA BURCIAGA, and STACY PENNING on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

v.

META PLATFORMS, INC., SACRAMENTO FOOD BANK AND FAMILY SERVICES, LOS ANGELES REGIONAL FOOD BANK, CENTRAL CALIFORNIA FOOD BANK, and SAN FRANCISCO FOOD BANK d/b/a SAN FRANCISCO-MARIN FOOD BANK,

Defendants.

Case No. 3:25-cv-05106-LB

**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Hearing: March 26, 2026
Time: 9:30 a.m.
Location: Courtroom B—15th Floor
Judge: Hon. Laurel Beeler

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs Fail To Adequately Allege Meta Even Received Their Information ..... 2

B. Plaintiffs' Claims Are All Barred By Consent ..... 3

C. Plaintiffs Do Not Allege Meta Intended To Acquire Their Information Or Affirmatively Acted To Do So ..... 5

D. Plaintiffs' Statutory Claims Fail For Additional, Independent Reasons ..... 8

1. Plaintiffs Fail To State Their Federal Wiretap Act Claim ..... 8

2. Plaintiffs Fail To State Their CIPA Section 631 Claim ..... 10

3. Plaintiffs Fail To State Their CIPA Section 632 Claim ..... 10

4. Plaintiffs Fail To State Their CIPA Section 635 Claim ..... 12

5. Plaintiffs Fail To State Their CIPA Section 638.51 Claim ..... 13

E. Under Plaintiffs' Erroneous Interpretations Of The Wiretap Act And CIPA, Those Statutes Are So Capacious They Fail To Provide Fair Notice ..... 14

F. Plaintiffs Fail To State Their Invasion of Privacy Claim ..... 15

G. Plaintiffs Fail To State Their Unjust Enrichment Claim ..... 15

III. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 11

*Bailey v. United States*,
516 U.S. 137 (1995) .......... 11

*Briskin v. Shopify Inc.*,
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) .......... 7

*Butcher v. Knudsen*,
38 F.4th 1163 (9th Cir. 2022) .......... 14

*Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*,
556 F.3d 1021 (9th Cir. 2009) .......... 14

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .......... 8

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 7

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 7, 10, 14

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 9

*Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*,
2021 WL 5707741 (N.D. Cal. Oct. 21, 2021), *report and recommendation adopted*, 2021 WL 5707740 (N.D. Cal. Nov. 16, 2021) .......... 4

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .......... 14

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 12

*Frasco v. Flo Health Inc.*,
2025 WL 2680068 (N.D. Cal. Sep. 17, 2025) .......... 7

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) .......... 11

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025) .......... 3

*Giles v. Nat. Collegiate Athletic Ass'n*,
2025 WL 2551093 (C.D. Cal. Aug. 18, 2025)........................................................... 7

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)........................................................... 10

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023)........................................................... 11

*Guido v. Mount Lemmon Fire Dist.*,
859 F.3d 1168 (9th Cir. 2017)........................................................... 9

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024)........................................................... 5, 15

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)........................................................... 15

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)........................................................... 8, 9

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019)........................................................... 9

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025)........................................................... 11, 13

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)........................................................... 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)........................................................... 9

*Lakes v. Ubisoft*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025)........................................................... 5

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)........................................................... 9

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023)........................................................... 10

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024)........................................................... 5

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022)........................................................... 6

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .......... 9

*People v. Hyatt*,
109 Cal. App. 5th 735 (2025) .......... 8

*People v. Super. Ct. of Los Angeles Cnty.*,
70 Cal. 2d 123 (1969) .......... 5, 6

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 2

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......... 10

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019) .......... 3

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 11, 14

*Rodriguez v. Ink America Int'l Grp. LLC*,
2025 WL 4034985 (Cal. Super. Dec. 10, 2025) .......... 14

*Rojas v. HSBC Card Servs. Inc.*,
93 Cal. App. 5th 860 (2023) .......... 3

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 5

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... 13, 15

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 1, 6, 7, 13

*Weston v. Lefiti*,
2024 WL 4579237 (9th Cir. Oct. 25, 2024) .......... 3, 8

## STATUTES

18 U.S.C. § 2510 .......... 2, 14

18 U.S.C. § 2511 .......... 2, 14

Cal. Civ. Code § 3515 .......... 3

Cal. Penal Code § 631 .......... 2, 3, 10, 14

Cal. Penal Code § 631(a) .......... 10, 11, 14

Cal. Penal Code § 632 .......... passim
Cal. Penal Code § 632(a) .......... 14
Cal. Penal Code § 632(c) .......... 12
Cal. Penal Code § 635(a) .......... 12, 14
Cal. Penal Code § 637.2 .......... 2
Cal. Penal Code § 638.50(b) .......... 13
Cal. Penal Code § 638.50(c) .......... 13
Cal. Penal Code § 638.51 .......... 13, 14
Cal. Penal Code § 638.51(a) .......... 14

**RULES**

Fed. R. Civ. P. 9(b) .......... 7

## I. INTRODUCTION

Plaintiffs' opposition confirms they are complaining about Meta's purported *receipt* and *use* of data that third-party food banks sent. Even if that receipt and use were plausibly alleged (they are not), that alleged conduct does not support Plaintiffs' wiretapping, eavesdropping, or privacy claims against Meta. Those claims require that Meta acted affirmatively and intentionally to *acquire* certain data in certain ways. There is no valid basis to stretch Plaintiffs' statutory or tort claims to reach the conduct they allege. The complaint should be dismissed.

*First*, Plaintiffs fail to allege that any information they input into the food banks' websites was ever sent to Meta at all. The source on which they rely makes clear that *developers* decide what data to send, but Plaintiffs do not allege anything about how the food banks purportedly configured Pixel code on their websites, or identify any other facts showing their data was actually sent to Meta. And even if they did, Plaintiffs' opposition makes clear that they are challenging conduct that their claims do not reach—Meta's purported *receipt* of information from a third party.

*Second*, Plaintiffs' claims fail on consent grounds because Meta's policies clearly disclosed the conduct Plaintiffs challenge—that Meta could receive information about "websites you visit," and "[h]ow you use [third parties'] products and services." Dkt. 47-4 at 5-6. Plaintiffs vaguely urge the Court to disregard Meta's policies, but provide no factual basis to suggest Plaintiffs did not agree to them or to dispute their authenticity. And Plaintiffs provide no reason to read Meta's disclosures regarding activity from other websites to exclude the data at issue here.

*Third*, Plaintiffs' claims fail because Plaintiffs do not allege facts showing that Meta acted "purposefully and deliberately" to acquire the alleged data. *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015). Plaintiffs' own allegations assert only that Meta *received* certain information because the *food banks* installed and configured Pixel code, and allegedly transmitted purportedly sensitive information (in violation of Meta's Business Tools Terms). This Court should reject Plaintiffs' nonprecedential cases applying a lower "awareness of receipt" standard.

*Finally*, Plaintiffs' responses to the independent, claim-specific deficiencies fare no better. Plaintiffs seek to impose liability for conduct that fundamentally does not fit the criminal statutes or tort doctrines they invoke. Plaintiffs must show, for example, that Meta willfully "read[]" or

"learn[ed]" "contents" of communications "in transit," Cal. Penal Code § 631, or intentionally "used" a "device" to "record," *id.* § 632; *see* 18 U.S.C. §§ 2510-11, and that Meta intentionally invaded their privacy. But Plaintiffs allege only that Meta *received* data the *food banks* chose to send through publicly available code. Under Plaintiffs' sweeping interpretations, these statutes would not afford Meta fair notice of the conduct they prohibit and would therefore be unconstitutionally vague as applied here. Because they do not apply by their plain terms, the complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiffs Fail To Adequately Allege Meta Even Received Their Information

Plaintiffs' claims fail out of the gate because they do not plausibly allege that the food banks used Pixel code in such a way that any data they entered into any website was improperly shared with Meta. Mot. 8-9. Plaintiffs' claims cannot be based solely on the fact that they visited the food banks' sites, as disclosure of that fact does not state any cognizable injury. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025); *see* Mot. 7-8.[1] Rather, Plaintiffs must allege facts showing that particular sensitive information about them was shared. They fail to do so.

Plaintiffs repeat their allegations that Pixel code "sent all website interactions to Meta." Opp. 3. But as Meta explained, the very source Plaintiffs cite explains that *developers* choose what information to send to Meta. Mot. 8. Developers must "install[]" the "Pixel's base code" on a particular page to send any data, and must "call" a particular function to transmit particular data to Meta. Dkt. 47-1 at 1. Accordingly, the "interactions each Plaintiff alleges," Opp. 2-3, are only half the equation: Plaintiffs must plausibly allege that information was actually sent *to Meta* to state their claims against Meta.[2] None of Plaintiffs' allegations about Meta's alleged downstream use of data, *see* Opp. 2, fill this gap if they cannot plausibly allege Meta received data in the first place.

Plaintiffs also point to their allegation that they received advertisements "related to their

---

[1] Plaintiffs suggest elsewhere that "CIPA violations, without more, constitute injury in fact," Dkt. 58 at 7, but *Popa* squarely rejects such a "categorical" standing rule. 153 F.4th at 792-93.

[2] Plaintiffs contend that some of their claims do not require them to allege that Meta received their information. Opp. 1-2 n.2. But only someone who is "injured by" a violation of CIPA may sue, Cal. Penal Code § 637.2; *see Popa*, 153 F.4th at 791 (Article III injury), and Plaintiffs' theory of injury is based on Meta's receipt of their communications.

sensitive financial information or status" after visiting the food banks' websites. Opp. 3 (quoting Compl. ¶ 30). But Plaintiffs fail to plausibly connect the ads *to Meta*, and an advertisement that "relate[s]" to "sensitive financial status" could be anything—including a discount code or a sale. That is a far cry from Plaintiffs' cited case, where the plaintiff allegedly received ads "related to the very conditions he had searched." *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *2 (C.D. Cal. Jan. 30, 2025). Further, ads could stem merely from visiting the food bank websites (which is not itself sensitive) or even other websites. S*ee* Mot. 8. Because Plaintiffs fail to plausibly allege Meta received "sensitive" information, their claims should be dismissed.

### B. Plaintiffs' Claims Are All Barred By Consent

Plaintiffs' claims also fail because Plaintiffs consented to Meta's receipt of information from third-party websites that use Meta Pixel code. Mot. 9-13. Plaintiffs all "have Meta accounts." Compl. ¶ 23. And Meta's policies, to which all users must agree when they create an account, disclose that Meta will receive information from third-party websites, including about "[h]ow [users] use [third parties'] products and services," and "match [those] activities" to users. Mot. 12.

***Plaintiffs must allege lack of consent.*** Plaintiffs claim that *Meta* must show consent. Opp. 8. But "lack of consent is a required element" of their CIPA claims. *Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 889 (2023) (analyzing whether *plaintiff* showed lack of consent); Mot. 10. CIPA integrates lack of consent into its core description of the wrongful conduct. *See* Cal. Penal Code §§ 631, 632.[3] Thus, Plaintiffs must plausibly allege lack of consent. Mot. 10; *see Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019). And although consent is a statutory exception under the Wiretap Act, it is still grounds for dismissal where, as here, it is "obvious on the face of the complaint" and judicially noticeable materials. *See Weston v. Lefiti*, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024) (citation omitted). Courts regularly dismiss CIPA and Wiretap Act claims on consent grounds at the pleading stage. Mot. 9-10 (collecting cases).

***The Court should consider Meta's policies.*** Plaintiffs urge this Court to disregard Meta's policies, Opp. 9, but Plaintiffs do not challenge the authenticity of the policies, which are

---

[3] Plaintiffs suggest consent does not apply to CIPA §§ 635 and 638.51, Opp. 8, but again, only a person "injured by a violation" may bring a claim under CIPA, *id.* § 637.2(a), and a "person who consents to an act is not wronged by it," Cal. Civ. Code § 3515.

incorporated by reference and judicially noticeable. *See* RJN Reply. Plaintiffs also suggest, with no supporting facts, that Meta's Terms and policies may not be "applicable" to them. But Plaintiffs allege they are Facebook and Instagram users, Compl. ¶ 23, and as other courts have recognized, to create such accounts, users *must* agree to Terms of Service and incorporated policies. Mot. 10 (collecting cases); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 2021 WL 5707741, at *1 (N.D. Cal. Oct. 21, 2021), *report and recommendation adopted*, 2021 WL 5707740 (N.D. Cal. Nov. 16, 2021) ("Anyone who uses Facebook or Instagram must electronically agree to terms of service[.]"). Further, Plaintiffs allege they "accessed their [Meta] accounts" and "were logged in[]" when they visited the food banks' websites. Compl. ¶¶ 23, 79. Meta's Terms provide that such continued use constitutes agreement to updates to the Terms and incorporated policies. Dkt. 47-3 at 9. Meta submitted versions of its Terms and policies dating back two years from the filing of the complaint, *longer* than the one-year class period, and as Meta explained, those policies "contained materially identical language throughout" that time. Mot. 3 n.2. Plaintiffs' vague objections do not justify ignoring Meta's policies disclosing the precise conduct at issue. Nor does Plaintiffs' argument that Pixel code "began" to run "the moment each Plaintiff visited a Food Bank website," Opp. 8, matter, as each Plaintiff agreed to Meta's Terms and policies *before* visiting the food bank websites. Compl. ¶ 79.

***Meta's policies explicitly disclosed the conduct at issue.*** As to the actual content of Meta's policies, Plaintiffs contend Meta did not "explicitly notify Plaintiffs that their sensitive financial, health, and disability information will be collected from the Food Banks' websites." Opp. 10. But most Plaintiffs do not actually allege that they provided any financial, health, or disability information. *See* Mot. 12. And even if their activities on the sites are construed as sensitive, Meta's disclosures were clear: Meta disclosed that it would receive information about "[h]ow [users] use [third parties'] products and services" and "match [those] activities with [a user's] account." *Id.* As Plaintiffs ultimately acknowledge, the relevant question for consent is whether a reasonable user who viewed Meta's disclosures would have understood that Meta was collecting the information at issue. Opp. 10. As the Ninth Circuit has twice concluded, the answer to that question is yes. Meta's policies clearly disclose that Meta will "collect[] its users' data from third party sites

and [] later us[e] the data for advertising purposes." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (health-related browsing data); *see also Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024).

No "more granular" disclosure is required. *Lakes v. Ubisoft*, 777 F. Supp. 3d 1047, 1056 (N.D. Cal. 2025), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025). To the contrary, the Ninth Circuit has repeatedly rejected arguments that disclosures should be interpreted more narrowly than their language indicates. *Smith*, 745 Fed. App'x at 9; *Hammerling v. Google, LLC*, 2024 WL 937247, at *1-2 (9th Cir. Mar. 5, 2024); Mot. 12. The Privacy Policy makes no distinction between purportedly "sensitive" and non-sensitive actions on third-party websites, and Plaintiffs cannot alter its terms by reading in such a limitation. Mot. 12-13. Nor does the policy make any specific promises relating to health information, as Plaintiffs claim. Opp. 10. Instead, the Privacy Policy merely notes that information users provide to Meta via its own products "*could* have special protections under the laws of [the user's] jurisdiction." Dkt. 47-4 at 4 (emphasis added). That language does not alter the Policy's clear disclosure that "[i]nformation" Meta *receives* "from . . . third parties" is used "to tailor the ads you see." *Id.* at 60.

Finally, contrary to Plaintiffs' assertion, Meta's Business Tools Terms are irrelevant to consent. While those terms prohibit websites from sending sensitive information, *see* Mot. 14-15, that restriction on developers is not a promise to *users* and cannot alter the scope of users' express consent based on policies they agreed to. Nor does that language guarantee to users that developers will always abide by Meta's restrictions. Plaintiffs' claims should therefore be dismissed.

### C. Plaintiffs Do Not Allege Meta Intended To Acquire Their Information Or Affirmatively Acted To Do So

Plaintiffs' claims also fail because Plaintiffs do not (and cannot) allege that Meta intended to acquire allegedly sensitive data. Mot. 13. While Plaintiffs repeatedly suggest that intent is a question of fact, Opp. 4, 6, 7, that does not absolve Plaintiffs of their pleading burden to *allege* facts that plausibly show Meta's intent to engage in the prohibited conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009) ("conclusory" allegations of intent insufficient).

Plaintiffs must allege that Meta acquired the data at issue "*purposefully and deliberately*

and not as a result of accident or mistake." *Christensen*, 828 F.3d at 790 (emphasis added); Opp. 7. Plaintiffs do not even try to argue they meet this standard. Plaintiffs instead attempt to lower the bar, arguing that Meta acted "intentionally" if it merely "knows that" it is *receiving* allegedly sensitive information. Opp. 5; *see id.* at 7 (arguing that Meta is "aware it is receiving these confidential communications"). That standard is entirely untethered from the statutory text of CIPA and the Wiretap Act. Those statutes prohibit intentionally *reading or learning in transit*, *intercepting*, or *using a device to eavesdrop*—not receiving data sent by a third party. Nor is mere awareness the same as intent in any event. Indeed, the California Court of Appeal rejected an "awareness" standard in the Section 632 context, holding that a party did not act with intent to record where it was merely "aware that equipping police cars with recording devices *could* record 'sensitive personal communications between employees.'" *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 727-28 (2022) (emphasis added).

Plaintiffs invoke California cases holding that Section 632's intent element requires, at least, "knowledge *to a substantial certainty* that [the defendant's] use of the equipment will result in the recordation of a confidential conversation." *People v. Super. Ct. of Los Angeles Cnty.* 70 Cal. 2d 123, 134 (1969) (emphasis added) ("*Smith*"). But Plaintiffs don't allege that *Meta* equipped the food bank websites with Pixel code, knowing that Meta *would* receive confidential information; they allege that Meta made the code *generally available* for third parties to use and that some third parties failed to secure adequate consent before sending Meta purportedly sensitive data. That does not come close to showing the type of knowledge required under *Smith*—which, in any event, applies when the defendant's *own* first-party "use of the equipment," not third-party use, "result[s] in the recordation." *Id.*

Plaintiffs fail to allege anything beyond Meta's mere awareness that it might receive sensitive information. Plaintiffs argue that "by design," Pixel code sends the contents of website communications and that Meta "has not taken action" against the food banks. Opp. 4-5. But "[t]here is nothing inherently unlawful about" Meta "offering" Pixel code to website developers, and Meta's alleged failure to detect and prevent all misuse of Pixel code does not "reveal[] an intent to receive" sensitive information, *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 841 (N.D. Cal.

2024) ("*Google Pixel*"), much less show that Meta intentionally intercepted or eavesdropped upon that information. Plaintiffs also argue that Meta "has no way to limit or prohibit the use of data collected through the Pixel," Opp. 4-5, but neither the alleged failure to "prevent[] the inadvertent transmission of private information," nor the mere retention of information, demonstrates an "intent to *obtain* the information" improperly in the first instance. *Google Pixel*, 741 F. Supp. 3d at 840 (emphasis added). Nor does Meta's "personal gain" from third parties' use of Pixel code, Opp. 4 (quoting Compl. ¶ 152), show Meta itself "purposefully and deliberately" recorded sensitive communications. Merely making a lawful (and commonplace) advertising tool available to third parties does not establish Meta's intent to receive "sensitive" information via that tool. *See Briskin v. Shopify Inc.*, 2026 WL 161441, at *5 (N.D. Cal. Jan. 21, 2026) (alleged failure of third-party merchants to obtain consent did not adequately show Shopify's intent under CIPA).

Meta's Business Tools Terms further belie Plaintiffs' conclusory intent allegations, because they show Meta "purposefully acted so as *not* to receive" sensitive information. *Google Pixel*, 741 F. Supp. 3d at 840. Plaintiffs argue that these terms do "not reflect Meta's true intentions." Opp. 6. If Plaintiffs intend to allege that Meta's terms are a sham, that contention is subject to Rule 9(b)—which Plaintiffs do not even try to meet. *Google Pixel*, 741 F. Supp. 3d at 841-42. And the mere possibility that some *third parties* could fail to abide by Meta's terms does not equate to "conscious[] and deliberate[]" action by Meta. *Christensen*, 828 F.3d at 791.[4]

In short, Plaintiffs' arguments are inconsistent with *Christensen* and California law. And, to the extent these intent requirements are ambiguous, courts must "resolve [those] ambiguities in favor of the narrower interpretation" under the rule of lenity and constitutional avoidance principles. *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1, *3 (N.D. Cal. Oct. 17, 2025); *see People v. Hyatt*, 109 Cal. App. 5th 735, 747 (2025). Failing to do so would impermissibly expand criminal wiretapping laws to cover even inadvertent receipt of expressly

[4] Rather than rely on their own allegations, Plaintiffs point to findings in another case. Opp. 7 (citing *Frasco v. Flo Health Inc.*, 2025 WL 2680068 (N.D. Cal. Sep. 17, 2025)). The conclusions in that case were legally and factually erroneous, but regardless, findings in a different case, concerning a different time period, different data, and different Meta Business Tool, do not absolve Plaintiffs of their obligation to *plead* facts demonstrating Meta's intent here. *Cf. Giles v. Nat. Collegiate Athletic Ass'n*, 2025 WL 2551093, at *7 (C.D. Cal. Aug. 18, 2025) ("The Court cannot rely upon the factual findings of another court, even where the facts are similarly situated.").

unwanted information, and transform a third party's alleged breach of Meta's terms into an "intentional" act *by Meta*—raising serious constitutional concerns. *See infra* at 14-15.

**D. Plaintiffs' Statutory Claims Fail For Additional, Independent Reasons**

In addition to the reasons noted above, Plaintiffs' statutory claims also fail because Meta's alleged conduct does not fall within the statutory prohibitions they invoke.

**1. Plaintiffs Fail To State Their Federal Wiretap Act Claim**

***Food banks' consent.*** The Wiretap Act requires only one-party consent, and here, the food banks plainly consented to Meta's receipt of information by installing Pixel code on their websites. Mot. 16-17. Plaintiffs contend that the "crime-tort exception" vitiates that consent because Meta acquired Plaintiffs' communications for the "improper purpose[]" of "invasion of Plaintiffs' privacy." Opp. 21 (quoting Compl. ¶ 165). But that improperly collapses the interception with the purported crime or tort. Plaintiffs must allege that "the interception was done 'for the purpose of facilitating some *further* impropriety.'" *Weston*, 2024 WL 4579237, at *2 (emphasis added). And Meta's further alleged purpose—use of information for advertising—is not independently criminal or tortious. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023).[5]

***Not a device.*** Plaintiffs fail to allege that Pixel code is a "device" as that term is used in the Wiretap Act. Mot. 17. Plaintiffs point to cases suggesting software must be a "device" because it cannot operate without hardware. Opp. 16. But concluding that software must *run on* a device to function simply confirms that software code is not itself a "device" under the Wiretap Act.

Nor do Plaintiffs engage with the text and structure of the statute to explain why intangible code qualifies as a "device." Plaintiffs cite several cases purportedly holding that software is a "device." Opp. 16. But these cases rest on a misreading of *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015), which analyzed an entirely different question. There, the defendant argued that its software was not a "device" under the Wiretap Act only based on a specific exception for a "telephone or telegraph instrument, equipment or facility, or any component thereof." *Id.* at 1084. The court rejected the argument that the software was a "component" (an argument Meta does not

[5] *Castillo v. Costco Wholesale Corp.*, is inapposite because it concerned "health data that could implicate HIPAA." 2024 WL 4785136, at *6 (W.D. Wash. Nov. 14, 2024).

make here) because the exception applied only in particular circumstances. *Id.* Based on *that* analysis, the court concluded that "Plaintiffs have sufficiently alleged that the Carrier IQ software is a 'device' for purposes of the Wiretap Act." *Id. Doe v. Meta Platforms, Inc.* and the other cases Plaintiffs cite mistakenly seize on that inapposite sentence to hold that software is a "device," contrary to the plain meaning of that term. *See* 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023).

Plaintiffs attempt to distinguish *Moreno* and *In re Google Location History*, both of which concluded that software was not a device, because those cases involved Section 637.7 of CIPA, which requires that the device be "attached to a vehicle or other movable thing." Opp. 17. But both cases also looked to the "plain meaning" of the term "device" to conclude it refers to physical equipment. *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *4-5 (N.D. Cal. Dec. 14, 2017); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193-94 (N.D. Cal. 2019). That plain meaning applies equally here. Mot. 16-17. Plaintiffs' suggestion that "device" could mean a "scheme to trick or deceive" does not even try to make sense of the statute, which refers to an "electronic, mechanical, or other device," defined as a "device or apparatus." *See* Mot. 17-18. In short, Plaintiffs disregard the statutory text. Opp. 17.

Finally, Plaintiffs appeal to the "purpose" of the Wiretap Act, but that general purpose does not override the plain statutory text. *See Guido v. Mount Lemmon Fire Dist.*, 859 F.3d 1168, 1174-75 (9th Cir. 2017). To the extent the Wiretap Act is ambiguous, "any ambiguity in the statute" must be interpreted in Meta's "favor." *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004).

***Plaintiffs fail to plausibly allege interception of (1) their communications, (2) "during transmission."*** Plaintiffs do not explain how "event data" generated in response to button clicks qualifies as *Plaintiffs' own* communications. Mot. 18. Nor do Plaintiffs point to any factual allegations that explain how Meta acquired communications sent to the food banks "during transmission." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiffs' allegations that communications are sent "in real time" and "as the website user enters or generates the information," Opp. 14 (citing Compl. ¶¶ 72, 68), are "conclusory allegations" that do not suffice. *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023).

***Not "contents."*** Plaintiffs effectively concede that some of the information Meta allegedly

received, like "IP addresses" and "clicks to food … map[s]," were not "contents" of any communication. Mot. 18-19; Opp. 12 (claiming that such information is collected "together with" contents). This Court should "dismiss[] the claim to the extent that it is predicated on non-content information." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (Beeler, J.).

**2. Plaintiffs Fail To State Their CIPA Section 631 Claim**

***No plausible allegation that Meta read or learned contents "in transit."*** Plaintiffs' Section 631 claim requires them to allege that Meta "read" or "learn[ed]" the contents of their communications "while the same [were] in transit." Cal. Penal Code § 631(a). While Plaintiffs contend Meta *ultimately* "learned the contents of their communications," Opp. 15, they point to no allegation suggesting that Meta "views or reads the information *while* it is in transit." *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (emphasis added). "'While' is the key word here." *Id*. Plaintiffs' contentions that Meta "use[s] this information" to "build user profiles" and "sell targeted advertisements," Opp. 15, do not suggest *when* Meta processes the information or that it does so while the information is in transit. As for Plaintiffs' contention that they need only allege Meta "attempt[ed]" to read or learn the contents of their communications, Judge Chhabria recently rejected a similar argument, explaining that one "must do something more than just *intercept* the communication while it is in transit to be held liable" for "attempt[ing]" to read or learn contents. *Eating Recovery Ctr.*, 2025 WL 2971090, at *6 (emphasis added). And because CIPA "is a criminal statute," "the rule of lenity" applies. *Id.*

***Non-"contents" information.*** Plaintiffs' argument that this Court should not differentiate between "contents" and non-content information, *supra* at 9-10, fares no better for this claim.

**3. Plaintiffs Fail To State Their CIPA Section 632 Claim**

***Not a "device."*** Like the Wiretap Act, CIPA Section 632 requires use of a "device." Mot. 21. And, like the Wiretap Act, Section 632's reference to an "amplifying or recording device" belies Plaintiffs' proposed definition of "device" as a "scheme to trick or deceive." *Moreno*'s conclusion that the plain meaning of device requires physical equipment should apply consistently across the statutory scheme. Mot. 21. Further, Section 632's own language, which refers to tangible objects, confirms that "device" is limited to physical objects and does not encompass code

like the Pixel. *Supra* at 8-9. As with the Wiretap Act, CIPA's general purpose does not support adopting an atextual interpretation of the device requirement. *See Ribas v. Clark*, 38 Cal. 3d 355, 359-60 (1985) (explaining that each CIPA provision is directed to a different "aspect of the privacy problem" and must be construed according to its "operative language").

***No "use" of device to "eavesdrop upon" or "record" in real time.*** Plaintiffs fail to allege facts showing that *Meta* "use[d]" Pixel code to "eavesdrop" or "record," as the statute requires. Plaintiffs suggest their bare assertion is enough, pointing to *In re Meta Pixel Tax Filing Cases*. Opp. 17-18 (citing 793 F. Supp. 3d 1147, 1151 (N.D. Cal. 2025) ("*Tax*")). But whether Meta "use[d]" something, within the meaning of the statute, is a legal conclusion, and Plaintiffs cannot meet their pleading burden simply by parroting the statutory language. *Iqbal*, 556 U.S. at 678. Plaintiffs' factual allegations belie the notion that Meta "used" the alleged "device" to record. "[P]rovid[ing]" code to third parties, Opp. 18, is not the same as "us[ing]" a device oneself. The term "use" requires "active employment" of the object. *See Bailey v. United States*, 516 U.S. 137, 143 (1995).[6] Otherwise, Section 632 would penalize passive conduct, and punish Meta for third parties' acts—raising serious constitutional concerns. *Infra* at 14-15. While the *Tax* court relied on an analogy in which a prosecutor tells an officer to use a recording device, that analogy is misplaced. Even if that were a viable theory under the statute, Plaintiffs do not, and could not, allege that *Meta* made the food banks—independent third parties—use Pixel code. As Plaintiffs themselves allege, *web developers* choose whether to use Pixel code and what to send. *E.g.*, Compl. ¶¶ 6, 63. Nor does Meta's alleged use of "*information* from the Pixel" suffice. Opp. 18 (quoting *Tax*, 793 F. Supp. 3d at 1151-52) (emphasis added). Section 632 prohibits "use" of a "device," not use of data. *Contra* Cal. Penal Code § 631(a) (penalizing "use[]" of improperly obtained data).

***No "confidential" communication.*** Section 632 defines a "confidential communication" to "exclude[] a communication made" in circumstances "in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code

---

[6] For the same reason, Plaintiffs' case relying on allegations that a defendant "created" software, "provide[d]" it, or "recommend[ed]" certain uses is not persuasive. *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 973 (C.D. Cal. 2023). And *Fregosa v. Mashable, Inc.* concerned use by a website that *itself* "deliberately embedded" trackers. 2025 WL 2886399, at *8 (N.D. Cal. Oct. 9, 2025).

§ 632(c). Plaintiffs argue that they did not know their interactions with the food bank websites would be recorded *by Meta*. Opp. 18-19. But the statute does not require an expectation that the communication will be recorded *by the defendant*. Mot. 22. And there is no objectively reasonable expectation that a website user's actions are not being recorded by the website when, as Plaintiffs allege, the websites disclose that they "store" and "collect[]" information from users. Mot. 22. Plaintiffs' argument that "the nature of the information collected" generates an expectation that the information will be "kept private" misunderstands the legal standard—the question is not whether a user expects information to be kept private but whether she expects it to be recorded. Opp. 19. That inquiry turns on the circumstances of the communication, not just the content of the communication. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002).

**4. Plaintiffs Fail To State Their CIPA Section 635 Claim**

***No private right of action.*** As multiple courts have held, Plaintiffs have no right of action under Section 635 because they allege injury only from "use" of Pixel code, Opp. 20, not Meta's "manufacture" or "furnishing" of that code.

***Not a "device."*** Like Section 632 and the Wiretap Act, Section 635 applies only to "device[s]." Text and context confirm that term does not encompass code. Mot. 23; *supra* at 8-9.

***Not "primarily or exclusively" designed for eavesdropping.*** Section 635 prohibits manufacturing or furnishing devices that are "primarily or exclusively designed or intended for eavesdropping." Cal. Penal Code § 635(a). Plaintiffs' contention that Meta need only know that a device "could" be used "unlawfully" contradicts the statutory text. Opp. 19 (citation omitted). Indeed, Plaintiffs' reliance on the "potential" for developers to "*mis*use" the code by failing to secure consent, *id*. 20 (emphasis added), confirms that Meta's code is *not* designed to be used that way, much less "primarily or exclusively" so. Meta's own terms disclose to all users that Meta can receive data from third-party websites that use Pixel code, *supra* at 4-5, and Meta requires developers to provide notice before transmitting information to Meta. *See* Dkt. 47-11 at 1. The fact that information may be "valuable," Opp. 19, does not show that Meta intended to obtain such information surreptitiously. *Supra* at 6-7. Nor are Plaintiffs' cases persuasive. *Christensen* interpreted a federal provision that asks whether a defendant had "reason to know that the design

of [the] device rendered it primarily useful" for surreptitious interception. 828 F.3d at 792. Section 635, by contrast, asks whether the creator of the "device"—here, Meta—affirmatively designed or intended its code for eavesdropping. The answer to that question is no.

**5. Plaintiffs Fail To State Their CIPA Section 638.51 Claim**

***Meta did not "install or use" the Pixel.*** Plaintiffs' allegations that Meta made Pixel code available to others, and used data sent via Pixel code, fail to allege that Meta itself "install[ed] or use[d]" the code, as required for liability. Cal. Penal Code § 638.51; *supra* at 11.

***The Pixel is not a pen register or trap and trace device.*** Section 638.51 prohibits installing or using a device or process that collects (1) "dialing, routing, addressing, or signaling information," (2) "but not the contents" of communications. Cal. Penal Code § 638.50(b), (c).

Plaintiffs contend that "PII" and "sensitive financial information" are addressing information "because this information includes users' home addresses and current locations." Opp. 21. But "addressing" information, especially when read in context with "dialing," "routing," and "signaling," means information used to transmit a particular communication. A user's physical address or location is not used to transmit the electronic communications at issue here. *See Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *6 (N.D. Cal. Jan. 12, 2026) (dismissing pen register claim based on geolocation data where there was "no allegation that this information is *used for* 'dialing, routing, addressing, or signaling'" (emphasis added)). Nor do Plaintiffs even attempt to explain why any other information allegedly transmitted fits the statutory definition.

Plaintiffs also specifically allege that Meta's Pixel code *does* collect contents, Compl. ¶ 159, so under their own allegations it cannot be a pen register. *See* Mot. 24 (citing cases); *see also Tsering*, 2026 WL 89320, at *6. Plaintiffs contend that this straightforward consequence, which flows from the statute's language, somehow creates a "loophole" for entities to "avoid" liability by "employing more intrusive forms of technology." Opp. 20 (citing *Tax*, 793 F. Supp. 3d at 1154). But CIPA *separately* penalizes "more intrusive" conduct in other provisions. *See, e.g.,* Cal. Penal Code § 631. Nothing in Section 638.51's text, context, or history suggests this provision was intended to encompass every conceivable privacy violation. Rather, each provision of CIPA is confined to its own "operative language." *Ribas*, 38 Cal. 3d at 359-60; *see Rodriguez v. Ink*

*America Int'l Grp. LLC*, 2025 WL 4034985, at *3 (Cal. Super. Dec. 10, 2025) (construing Section 638.51 narrowly because, as a penal statute, it may reach only conduct that "come[s] clearly within … [its] language"). That dooms Plaintiffs' pen-register claim.

### E. Under Plaintiffs' Erroneous Interpretations Of The Wiretap Act And CIPA, Those Statutes Are So Capacious They Fail To Provide Fair Notice

As detailed above, Plaintiffs advance drastically overbroad interpretations of the criminal wiretapping and eavesdropping statutes they invoke—across nearly every element. If CIPA and the Wiretap Act in fact covered Meta's alleged conduct here of *receiving* information through a third party's use of code that Meta created and made generally available, those laws would be unconstitutional, as they do not give "fair notice" of such a broad sweep. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see also Butcher v. Knudsen*, 38 F.4th 1163, 1178 (9th Cir. 2022) (law unconstitutionally vague where it gave individuals no "reasonable opportunity to know" their activities were covered (citation omitted)). Meta could not have known that such receipt of information, sent by someone else using commonplace technology, could constitute *Meta* "intentionally" "us[ing]" a "device" to "eavesdrop," Cal. Penal Code § 632(a), *see also* 18 U.S.C. §§ 2510-11 (similar); "install[ing] or us[ing] a pen register," Cal. Penal Code § 638.51(a); or "willfully" "read[ing]" or "learn[ing]" the contents of communications "in transit," *id.* § 631(a). *See Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1029 (9th Cir. 2009) (sustaining as-applied vagueness challenge where liability turned on factors beyond the party's control). Nor could Meta have known that designing code and requiring developers to provide robust notice of their use of that code would amount to furnishing a "device … primarily or exclusively designed or intended for eavesdropping." Cal. Penal Code § 635(a).

As one court has observed, "it's [now] often borderline impossible to determine whether a defendant's online conduct fits within the language of [CIPA]." *Eating Recovery Ctr.*, 2025 WL 2971090, at *1. The fact that private plaintiffs have gone after food banks trying to assist those in need underscores that Plaintiffs' broad interpretations would make virtually *any* website that uses analytics technology, and any company that develops such technologies, vulnerable. This Court should not countenance such a breathtaking expansion of liability under criminal statutes.

Plaintiffs' interpretations are wrong on the text. *Supra* at 5-14. And to the extent there is ambiguity, this Court should read the statutes narrowly under principles of lenity and constitutional avoidance.

**F. Plaintiffs Fail To State Their Invasion of Privacy Claim**

The invasion of privacy claim also fails. Plaintiffs cannot have an expectation of privacy in information they agreed Meta could receive. Mot. 23.[7] Plaintiffs also fail to allege highly offensive conduct. Contrary to Plaintiffs' suggestion, Opp. 22, 24, courts "do in fact[] decide the 'highly offensive' issue … at the pleading stage when appropriate." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (citation omitted); *see Tsering*, 2026 WL 89320, at *7. This is such a case. Meta's alleged *receipt* of information does not clear the high bar for highly offensive conduct. And Plaintiffs' allegations that the food banks implemented Pixel code such that it "immediately begins tracking" and sends information even when a user "decline[s]" cookies, Opp. 24, do not show any highly offensive intrusion *by Meta*. Meta secured users' consent independently, before any visit to the food banks' websites, and required all website developers using Pixel code to secure consent. *Supra* at 4-5, 7; Dkt. 47-11 at 1-2. At most, Plaintiffs' allegations suggest the *food banks* may fail to obtain consent to share some information; that does not render Meta's purported *receipt* of that information highly offensive.

**G. Plaintiffs Fail To State Their Unjust Enrichment Claim**

Plaintiffs' unjust enrichment claim "cannot lie where the defendant has not committed some predicate actionable wrong." *Hammerling*, 2024 WL 937247, at *3 n.3. Plaintiffs contend they conferred a benefit on Meta because Meta allegedly used data the food banks sent about them. Opp. 25. But Plaintiffs must allege that Meta was *unjustly* enriched through "mistake, fraud, coercion, or request." Mot. 25. Plaintiffs allege no misrepresentation by Meta—to the contrary, Meta required web developers to warrant they had obtained consent to send data. Dkt. 47-11 at 1. Nor do Plaintiffs allege any expectation that they would be compensated for any data. Mot. 25.

## III. CONCLUSION

Meta respectfully requests dismissal of the complaint with prejudice.

---

[7] Plaintiffs suggest each food bank sent extensive personal details, *see* Opp. 23, but the complaint's allegations as to each Plaintiff are far more limited. *See* Mot. 12 (detailing allegations).

Dated: February 17, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By <u>*/s/ Melanie M. Blunschi*</u>
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Marissa Alter-Nelson (*pro hac vice*)
*marissa.alter-nelson@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice* forthcoming)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*