UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| NATASSIA TIMOTHEE, et al., | Case No. 25-cv-05106-LB |
| Plaintiffs, | **ORDER GRANTING MOTIONS TO DISMISS** |
| v. | Re: ECF Nos. 43, 44, 45, 46, 49 |
| META PLATFORMS, INC., et al., | |
| Defendants. | |

**INTRODUCTION**

The plaintiffs (Ms. Timothee, Mr. Diep, Ms. Reyes, Ms. Burciaga, and Mr. Penning) in this putative class action visited the websites of four nonprofit Food Banks (Sacramento Food Bank and Family Services, Los Angeles Regional Food Bank, Central California Food Bank, and San Francisco-Marin Food Bank) and allege that the Food Banks violated their privacy rights by disclosing their financial and medical information to Meta Platforms, Inc., through its Meta Pixel tool, which captures user data and associates it with the users' Meta accounts. Meta then targeted advertisements at the plaintiffs using their data. The plaintiffs assert claims against all defendants for violations of the California Invasion of Privacy Act (CIPA), Cal. Penal Code §§ 631(a), 632(a), 635, and 638 (claim one), common law invasion of privacy (claim three), and violations of the right to privacy under Cal. Const. art. 1 § 1 (claim four); claims against Meta for violations of the Federal Wiretap Act, 18 U.S.C. § 2511(1) (claim two) and unjust enrichment (claim seven);

ORDER – No. 25-cv-05106-LB

claims against all Food Banks for negligence (claim five); and a claim against the San Francisco-Marin Food Bank for violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.115 (claim six).

Generally, the Food Banks and Meta assert that the claims against them should be dismissed because the plaintiffs (1) consented to sharing their information and (2) did not plausibly plead their claims. The Food Banks also contend that the plaintiffs have not plausibly pleaded a concrete injury establishing standing. The plaintiffs respond that (1) they suffered concrete injuries through the disclosure of their sensitive medical and financial information and the alleged CIPA violations, (2) they did not consent to the Food Banks' disclosing their information or Meta's receiving it, and (3) they plausibly pleaded their claims. The Los Angeles Regional Food Bank moves to strike the class definition as overbroad. The plaintiffs respond that addressing class allegations is premature at this stage.

The order dismisses the plaintiffs' claims with leave to amend by May 25, 2026, with a blackline of the changes (in color) attached. The plaintiffs consented to Meta's receiving their information and lack standing to sue the Food Banks because they have not plausibly pleaded that they provided sensitive information on the websites. The court strikes the class definition as overbroad.

## STATEMENT

Meta offers website developers its Meta Pixel code, which allows web developers to track users' actions on their websites (e.g., the information users input and the buttons they click) and measure the effectiveness of advertising. The Meta Pixel sends that data to Meta and links it with the users' personal identities.[1]

The Food Bank defendants are non-profit organizations that distribute food to low-income people in their respective areas.[2] They run websites that provide users resources, including a "Find Food" map to locate local food banks (requiring the user to enter their address) and links for

---

[1] Compl. – ECF No. 1 at 2 (¶¶ 3–5).

[2] *Id.* at 6–10 (¶¶ 36, 41, 47, 56).

United States District Court
Northern District of California

accessing the Food Banks' policies, applying to programs (like CalFresh), and learning about becoming a donor or volunteer.[3] Users of the Find Food map on the San Francisco-Marin website must choose San Francisco or Marin County as their county of residence (or enter a corresponding zip code), or the search button will be disabled, preventing the user from using the map and submitting information about age, disability status, mobility issues, or lack of food access.[4] The Food Banks incorporated the Meta Pixel code into their websites, allowing Meta to intercept the plaintiffs' information.[5]

The plaintiffs visited the Food Banks' websites (Sacramento for Ms. Timothee, Los Angeles for Mr. Diep, Central California for Ms. Reyes and Ms. Burciaga, and San Francisco-Marin for Mr. Penning) on many occasions and used the Find Food map.[6] Ms. Burciaga also used the Central California Food Bank website to help determine her eligibility for CalFresh, which included "answering multiple questions to determine the severity of her financial hardship."[7] Mr. Penning (a resident of Contra Costa County) answered "multiple questions related to his location, age, disability status, mobility status, and urgency of his need for food assistance."[8]

The Food Banks allowed Meta to intercept this data without the plaintiffs' knowledge, which Meta then associated with the plaintiffs' Meta accounts to target them with advertisements.[9] After visiting the Food Banks' websites, the plaintiffs received several targeted advertisements related to "their sensitive financial information or status" that reminded them "of their hardship and further stigmatized" them.[10]

---

[3] *Id.* (¶¶ 37, 42, 47, 57).

[4] Thomas Decl. – ECF No. 44-2 at 2–3 (¶¶ 5–7).

[5] Compl. – ECF No. 1 at 3 (¶¶ 6–7).

[6] *Id.* at 5 (¶¶ 24–29).

[7] *Id.* (¶ 27).

[8] *Id.* (¶¶ 22, 28–29).

[9] *Id.* at 5–6 (¶ 30).

[10] *Id.* at 5–6 (¶ 30), 18 (¶ 100).

The plaintiffs all have Facebook or Instagram accounts.[11] When Facebook or Instagram users sign up for an account, they agree to Meta's terms of service, privacy policy, and cookies policy.[12] Under Meta's terms of service, users agree that continued use of Meta's products binds them to updated terms.[13] Meta's terms of service state that Meta does not "sell [users'] personal data to advertisers."[14] Instead, "businesses . . . pay [Meta] to show [users] ads for their products," and Meta "use[s] [users'] personal data to help determine which personalized ads to show" them.[15]

Meta's privacy policy explains that third parties "collect your information when you visit their site or app or use their services." The privacy policy states that Meta "collect[s] and receive[s] information" from those third parties "about a variety of your information and activities on and off [Meta's] Products," including "device information," "[p]urchases and transactions you make," "[h]ow you use [third parties'] products and services," and "[w]ebsites you visit and cookie data." Meta also discloses that it receives identifying information like "advertising device ID" and "cookies" that "help[] [Meta] match your activities with your account," and that Meta may "connect information from partners to your account." Businesses can use tools like the Meta Pixel to "advertise or support their products" and "understand and measure how people are using their [] services and how well their ads are working." Meta uses "activity on and off our Products, including information we receive through cookies and similar technologies," to "show you ads."[16]

---

[11] *Id.* at 5 (¶ 23).

[12] The court deems Meta's privacy and cookies policies incorporated by refence. *See infra* § 2, Meta's Motion.

[13] Terms of Service, Ex. 2 to Blunschi Decl. – ECF No. 47-2 at 6; Terms of Service, Ex. 3 to Blunschi Decl. – ECF No. 47-3 at 10.

[14] Terms of Service, Ex. 2 to Blunschi Decl. – ECF No. 47-2 at 2.

[15] *Id.*

[16] Dec. 2025 Privacy Policy, Ex. 4 to Blunschi Decl. – ECF No. 47-4 at 6–7, 14, 17; *see* Nov. 2024 Privacy Policy, Ex. 5 to *id.* – ECF No. 47-5 at 6–7, 14, 17; June 2024 Privacy Policy, Ex. 6 to *id.* – ECF No. 47-6 at 8–9, 20, 24; Dec. 2023 Privacy Policy, Ex. 7 to *id.* – ECF No. 47-7 at 15; June 2023 Privacy Policy, Ex. 8 to *id.* – ECF No. 47-8 at 6–7, 15, 18.

Meta's cookies policy states that third parties may use Meta Pixel code to share information about "your interactions with them."[17] The policy also explains that Meta "use[s] cookies" "to store and receive identifiers" if a user "ha[s] a Facebook or Instagram account" or "visit[s] other websites and apps that use the Meta Products" and "use[s] cookies" to "deliver ads to people who have previously visited a business's website . . . to recommend products and services based on that activity."[18]

Meta's business tools terms require organizations using Meta's Pixel code to represent that they (1) "have provided robust and sufficiently prominent notice" "on each web page where [Meta's] pixels are used," (2) "have all of the necessary rights and permissions and a lawful basis (in compliance with applicable laws, regulations and industry guidelines) for the disclosure and use" of any data they share, and (3) "will not share Business Tool Data with [Meta] that [they] know or reasonably should know . . . includes health, financial information or other categories of sensitive information."[19]

## STANDARD OF REVIEW

### 1. Rule 12(b)(1)

A complaint must contain a short and plain statement of the ground for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The plaintiffs have the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's

---

[17] Dec. 2023 Cookies Policy, Ex. 9 to Blunschi Decl. – ECF No. 47-9 at 11–12; June 2023 Cookies Policy, Ex. 10 to *id.* – ECF No. 47-10 at 11.

[18] Dec. 2023 Cookies Policy, Ex. 9 to Blunschi Decl. – ECF No. 47-9 at 2, 6; June 2023 Cookies Policy, Ex. 10 to *id.* – ECF No. 47-10 at 2, 6.

[19] Business Tools Terms, Ex. 11 to Blunschi Decl. – ECF No. 47-11 at 2.

allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014).

Under a facial attack, the court "accept[s] all allegations of fact in the complaint as true and construe[s] them in the light most favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). In a factual attack, the court "need not presume the truthfulness of the plaintiff's allegations" and "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

If the defendant mounts a factual attack, he may rely on "affidavits or any other evidence properly before the court," in which case it "becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In such cases, "[t]he district court obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes." *Id.*

The Food Banks contend that the plaintiffs lack standing. Standing pertains to the court's subject-matter jurisdiction and thus is properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010) (cleaned up).

Dismissal of a complaint without leave to amend should be granted only if the jurisdictional defect cannot be cured by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### 2. Rule 12(b)(6)

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It may fail by lacking a cognizable legal theory or sufficient facts under one. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). The court accepts factual allegations as true and construes them favorable to

United States District Court
Northern District of California

plaintiffs. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). But allegations must state a plausible claim. *Twombly*, 550 U.S. at 570. Threadbare recital of the elements of a claim, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**ANALYSIS**

The issues are whether (1) the plaintiffs have plausibly pleaded facts establishing standing to sue the Food Banks, (2) the plaintiffs consented to Meta's receiving their information, and (3) the class definition is overbroad. On this record, the plaintiffs lack standing to sue the Food Banks, they consented to Meta's policies, and the allegations defining the putative class as "all persons in the United States" who "used one of the Food Bank Defendants' websites" are overbroad.

## 1. Standing

Article III standing requires (1) a concrete and particularized injury-in-fact, (2) fairly traceable to the defendant's conduct, and (3) likely redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). For an injury to be concrete, it "must be 'de facto'; that is, it must actually exist" and be "'real,' and not 'abstract.'" *Id.* (citing dictionaries). "'Concrete' is not . . . necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete." *Id.* at 340 (cleaned up). Courts must "assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). This occurs in the privacy context where the alleged harm is "similar to the highly offensive interferences or disclosures that were actionable at common law." *Id.* (cleaned up). "An exact duplicate is not required" but rather "a match only in the kind of harm and not the degree." *Id.* (cleaned up).

### 1.1    Plaintiffs Timothee, Diep, and Reyes

The Food Banks assert facial challenges that plaintiffs Timothee, Diep, and Reyes have not established a particularized injury-in-fact because they failed to explain the harm they suffered.[20] The plaintiffs respond that they have showed injury-in-fact because (1) disclosure of the plaintiffs' using the Food Bank websites (by interacting with the Find Food map and entering their addresses) communicated their "intent to receive nutrition assistance," which revealed their "sensitive financial condition," (2) receiving targeted advertisements reminded them of their hardships and stigmatized them, and (3) CIPA violations constitute injury with nothing more.[21] The Food Banks reply that (1) disclosure of the plaintiffs' using the websites alone is not traditionally protected or highly offensive, (2) disclosure of basic contact information (like an address) is not an injury, and (3) the plaintiffs' alleged CIPA violations do not support concrete injuries.[22]

The complaint states that the plaintiffs entered their home addresses while using the Find Food map on the Food Banks' websites (Sacramento for Timothee, Los Angeles for Diep, and Central California for Reyes), "electronically communicated their intent to receive nutrition assistance," and were "repeatedly targeted with ads directed at their financial hardships," which reminded them of their hardships and stigmatized them.[23]

These allegations are insufficient to plausibly plead injury-in-fact. The plaintiffs do not cite any case where disclosing a plaintiff's accessing a food-assistance website or sending targeted advertisements were considered traditionally actionable or highly offensive. Instead, they compare the Food Banks' alleged conduct to that prohibited by Cal. Welf. & Inst. Code § 10850(b), which states that "a person shall not publish or disclose or permit or cause to be published or disclosed a list of persons receiving public social services." *See Sanchez v. County of San Diego*, No. 00 CV 1467 JM(JFS), 2003 WL 25655642, at *15 (S.D. Cal. Mar. 10, 2003) ("[B]ecause the identity of the welfare applicant is information contained within the county's files, a person's identity as a

---

[20] Mot. – ECF No. 43 at 14–15; Mot. – ECF No. 45 at 17–19; Mot. – ECF No. 49 at 13–14.

[21] Opp'n – ECF No. 59 at 13; Opp'n – ECF No. 60 at 19; Opp'n – ECF No. 61 at 12.

[22] Reply – ECF No. 62 at 10–12; Reply – ECF No. 63 at 11–13; Reply – ECF No. 66 at 8–11.

[23] Compl. – ECF No. 1 at 5–6 (¶¶ 24–26, 29–30), 18 (¶ 100).

welfare applicant constitutes confidential information under § 10850."), *aff'd*, 464 F.3d 916 (9th Cir. 2006). But disclosing that someone accessed food-resource information on a public website is not similar to revealing that someone applied for welfare and does not establish an injury-in-fact.[24] *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ("These pages contain general health information that is accessible to the public at large. The same pages are available to every computer, tablet, smartphone, or automated crawler that sends GET requests to these URLs.").

The plaintiffs cite *Price v. Carnival Corp.* for the proposition that even a home address may constitute protected information.[25] 712 F. Supp. 3d 1347, 1354 & n.3 (S.D. Cal. 2024). But the case is distinguishable because the plaintiff in *Price* also alleged that the defendant collected the plaintiff's passport number, driver's license number, date of birth, phone number, email address, and payment information.[26] *Id.* at 1354. Here, the plaintiffs do not allege that the Food Banks collected similar information.

The plaintiffs' contention that "CIPA violations, without more, constitute injury in fact" is unpersuasive. *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1088 (S.D. Cal. 2016). While CIPA violations may constitute an injury-in-fact, an analysis of standing is still "particularized to a plaintiff's circumstances and benchmarked to a specific tort."[27] *Popa*, 153 F.4th at 790–91 (no concrete injury under a Pennsylvania wiretapping statute prohibiting conduct that acquires "the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device" (citing 18 Pa. Cons. Stat. §§ 5702, 5725)). Here, alleged CIPA violations based on disclosing the plaintiffs' addresses and using the Food Banks' websites do not constitute a concrete injury. *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1182 (N.D.

---

[24] Reply – ECF No. 62 at 12; Reply – ECF No. 66 at 11.

[25] Opp'n – ECF No. 61 at 12 n.1.

[26] Reply – ECF No. 66 at 10 (making this point).

[27] Reply – ECF No. 62 at 11–12; Reply – ECF No. 63 at 11; Reply – ECF No. 64 at 11 n.4; Reply – ECF No. 66 at 9.

United States District Court
Northern District of California

Cal. 2025) (no concrete privacy injury for "allegations of a violation of CIPA that, even if true, do not amount to a cognizable privacy injury under Article III").

Thus, plaintiffs Timothee, Diep, and Reyes have not established injury-in-fact and lack standing to sue the Food Banks.

### 1.2    Plaintiffs Burciaga and Penning

In addition to pleading that they used the Food Banks' websites (San Francisco-Marin for Mr. Penning and Central California for Ms. Burciaga), Ms. Burciaga pleaded that she answered "multiple questions to determine the severity of her financial hardship," and Mr. Penning pleaded that he answered questions related to his "location, age, disability status, mobility status, and urgency of his need for food assistance."[28] The San Francisco-Marin and Central California Food Banks contend that these allegations lack sufficient detail to show an injury-in-fact.[29] At the hearing, the San Francisco-Marin food bank also argued that disclosing information like mobility status is not highly offensive because it would be revealed by a plaintiff's going to a food bank. The plaintiffs respond with the same arguments as above, invoking Cal. Welf. & Inst. Code § 10850 to show that their information was sensitive and stating that the plaintiffs were stigmatized by receiving targeted advertisements.[30] These arguments are unpersuasive for the same reasons addressed above. *See Popa*, 153 F.4th at 791 (tracking interactions with a website was not highly offensive because it was "similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales").

The San Francisco-Marin Food Bank also asserts a factual challenge (supported by declaration), contending that its Find Food map is only accessible by users who enter a San Francisco or Marin County zip code and that Mr. Penning alleges that he resides in Contra Costa County.[31] Mr. Penning did not submit any evidence showing otherwise, instead asking that the

---

[28] Compl. – ECF No. 1 at 5 (¶¶ 27–28).

[29] Mot. – ECF No. 44 at 17–18; Mot. – ECF No. 49 at 13–14; Reply – ECF No. 64 at 10–11; Reply – ECF No. 66 at 9–10.

[30] Opp'n – ECF No. 58 at 15–17; Opp'n – ECF No. 61 at 12.

[31] Thomas Decl. – ECF No. 44-2 at 2–3 (¶¶ 5–6); Compl. – ECF No. 1 at 5 (¶ 22).

court infer that he used his work zip code in San Francisco or Marin County. While the plaintiff's inference is perhaps reasonable, he needs evidence to rebut a factual attack.

Thus, plaintiffs Burciaga and Penning have also failed to show injury-in-fact and lack standing to sue the Food Banks.

### 1.3   Injunctive Relief

The parties dispute whether the plaintiffs have standing to assert injunctive relief. To have such standing, they plaintiffs must "show that [they] face[] a 'real or immediate threat . . . that [they] will again be wronged in a similar way.'" *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Speculation about future harm is insufficient. *Id.* Where "a plaintiff vaguely alleges that he may purchase the product in the future, the Ninth Circuit and district courts have found this 'someday intention' insufficient to satisfy Article III standing" for injunctive relief. *Rodriguez v. Just Brands USA, Inc.*, No. 2:20-CV-04829-ODW (PLAx), 2021 WL 1985031, at *4 (C.D. Cal. May 18, 2021) (cleaned up) (collecting cases).

The plaintiffs have only alleged that they "would like to use the Food Bank Defendants' websites again" but that "they cannot currently trust the websites with their confidential information."[32] These allegations are "someday intentions" that do not show a real or immediate threat, and the plaintiffs lack standing to sue the Food Banks for injunctive relief.

### 2.   Meta's Motion

This section addresses the parties' dispute over whether the plaintiffs consented to Meta's receiving their information from the Food Banks. The parties' remaining arguments are better addressed after amendment.

The parties dispute (1) who bears the burden of showing a lack of consent, (2) whether Meta's privacy policies should be incorporated by reference, (3) if so, whether the plaintiffs agreed to Meta's policies, and (4) whether those policies cover the alleged conduct. The parties both cite

---

[32] Compl. – ECF No. 1 at 18 (¶ 101).

ORDER – No. 25-cv-05106-LB                    11

authority supporting that the other party bears the burden of showing consent.[33] *See Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024) ("On a motion to dismiss, the burden of proof to show consent rests with defendants."); *Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 887 (2023) (analyzing whether plaintiff showed lack of consent). The following analysis assumes (without deciding) that Meta bears the burden on consent.

First, Meta's privacy policies are incorporated by reference. Meta requests that the court deem its privacy policies incorporated by reference because they cover the alleged conduct and, therefore, form the basis of the plaintiffs' complaint.[34] The plaintiffs object because the complaint makes no mention of Meta's policies and they have nothing to do with the plaintiffs' using the Food Banks' websites.[35]

Although a court generally is confined to the pleadings on a Rule 12(b) motion, "[a] court may, however, consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Ninth Circuit has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

The court incorporates Meta's privacy policies by reference because the plaintiffs do not dispute the authenticity of the documents and the plaintiffs' claims depend on them: CIPA §§ 631–32 require the wrongful conduct be done "without the consent of all parties," and Meta's privacy policies cover the conduct at issue. To the extent that CIPA §§ 635 or 638.51 do not requiring a showing of lack of consent (the plaintiffs do not dispute that all other claims against

---

[33] Opp'n – ECF No. 57 at 18; Reply – ECF No. 67 at 9.

[34] Req. Judicial Notice – ECF No. 48 at 5–6.

[35] Opp'n to Judicial Notice – ECF No. 57-1 at 8–10.

Meta require a lack of consent),[36] the court may consider consent as an affirmative defense at this stage where consent is "obvious on the face of a complaint." *Weston v. Lefiti*, No. 24-541, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024); *see* Cal. Civ. Code § 3515 ("A person who consents to an act is not wronged by it."); CIPA § 638.51(b)(5) (exemption where user consents); *Silver v. Stripe Inc.*, No. 4:20-cv-08196-YGR, 2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021) ("Section 635 also depends on consent.").

Second, the plaintiffs agreed to Meta's policies. The plaintiffs assert that Meta has failed to meet its burden to show consent because it has not established which privacy policy applies to which plaintiff.[37] Meta counters that it provided its policies reaching past the one-year class period and that users of its products agree to its terms through continued use.[38] Here, the plaintiffs' agreement is established by their using Facebook or Instagram accounts.[39]

Third, Meta's policies cover the alleged conduct. The parties agree that a privacy policy must "explicitly notify" users of the practice at issue to establish consent. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023). Meta asserts that its policies cover the alleged conduct of "receiv[ing] information from websites about Plaintiffs' activities on those sites and us[ing] that information for advertising."[40] The plaintiffs counter that (1) Meta cannot establish consent because a reasonable person would not understand Meta's policies as allowing the collection of their financial or medical information and (2) Meta's business tool terms negate a finding of consent because they require developers to promise that they will not share "Business Tool Data with Meta that they know or reasonably know includes health, financial, or other

---

[36] Opp'n – ECF No. 57 at 18.

[37] *Id.* at 19.

[38] Reply – ECF No. 67 at 10 (citing Terms of Service, Ex. 3 to Blunschi Decl. – ECF No. 47-3 at 10).

[39] Compl. – ECF No. 1 at 5 (¶ 23).

[40] Mot. – ECF No. 46 at 21–22.

categories of sensitive information."[41] Meta replies that its Business Tools Terms are irrelevant because they apply to the actions of the developers and is not a promise to users.[42]

The plaintiffs cite *In re Meta Pixel Healthcare Litigation* as an analogous case where a court determined that the plaintiffs had not consented to Meta's policies because the policies did not notify users that Meta would collect health data and the complaint described at least five protected health information identifiers sent to third parties. 647 F. Supp. 3d 778, 791 (N.D. Cal. 2022). But while the plaintiffs may be correct that they did not consent to the sharing of their financial and medical information, they have not plausibly pleaded that Meta received or shared sensitive information of any kind.[43] Allegations that the plaintiffs "did not consent to the interception or disclosure of their confidential communications, including sensitive financial and medical information, to Meta" are conclusory and do not show a lack of consent.[44] Meta's Business Tools Terms do not negate consent for the same reasons and because they apply to third parties and not the plaintiffs. *See Smith*, 745 F. App'x at 9 (rejecting argument "that Facebook could not have gained consent because the healthcare websites' privacy policies promised not to share data with third parties" because "Facebook's Terms and Policies make no such assurance, and Facebook is not bound by promises it did not make").

Having consented to Meta's receiving their information, the plaintiffs' claims against Meta are dismissed.

## 3. Motion to Strike Class Allegations

A court may strike allegations that are redundant, immaterial, impertinent, or scandalous. Fed. R. Civ. P. 12(f); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). Motions to strike class allegations are generally disfavored at the pleading stage unless it is clear that class treatment is not viable. *Cashatt v. Ford Motor Co.*, No. C19-5886, 2020 WL 1987077, at

---

[41] Opp'n – ECF No. 57 at 20–21.

[42] Reply – ECF No. 67 at 11.

[43] *See supra* § 1, Standing; Reply – ECF No. 67 at 10 (making this point).

[44] Compl. – ECF No. 1 at 5–6 (¶ 30), 16 (¶ 89).

United States District Court
Northern District of California

*3 (W.D. Wash. Apr. 27, 2020) (collecting cases); *see Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *In re Wal–Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007). Nonetheless, a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained. *See, e.g.*, *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009).

The plaintiffs allege a class of "all persons in the United States who, at any time during the year preceding the date of the filing of this Complaint to the time a class is notified, used one of the Food Bank Defendants' websites."[45] The Los Angeles Regional Food Bank asserts that this is overbroad because people can use the Food Banks' websites without transmitting sensitive information, California laws do not protect out-of-state plaintiffs, and the plaintiffs' claims are inherently individualized.[46] The plaintiffs respond that striking class allegations is premature when discovery has not begun and CIPA and California common law claims can apply to non-California residents.[47]

The class definition is facially overbroad because someone who uses the Food Banks' websites has not necessarily entered information implicating one of the plaintiffs' claims.[48] The court strikes this allegation.

### CONCLUSION

The court dismisses all claims against the defendants: the plaintiffs have not plausibly pleaded standing to sue the Food Banks and consented to Meta's receiving their information. The court strikes the class definition as overbroad. The plaintiffs must file an amended complaint by May 25, 2026, with a blackline of the changes (in color) attached.

**IT IS SO ORDERED.**

Dated: April 27, 2026

LAUREL BEELER
United States Magistrate Judge

---

[45] *Id.* at 20 (¶ 109).

[46] Mot. – ECF No. 45 at 30–31.

[47] Opp'n – ECF No. 59 at 24–27.

[48] *See supra* Analysis.